**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

        Plaintiffs,

    v.

SERGEANT HERNANDEZ, *et al.*,

        Defendants.

                              /

## PLAINTIFFS' RESPONSE TO DEFENDANTS DUNN, BURNEY, AND YATES' MOTION TO DISMISS

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, in his individual capacity, by and through their counsel, respond in opposition to Defendants Thomas Dunn, Dennis Burney, and Clifton Yates' Motion to Dismiss as follows:

### INTRODUCTION

Cody White was found dead, wrapped in a blanket and stuffed under his prison cell bunk. He had been stabbed through each of his eyes and stripped to his underwear. His wrists and ankles were bound, and a ligature was tight around his neck. By the time Defendant Dennis Burney found Cody, he had been dead for as many as three days. Cody's death was not some unforeseeable act of violence. Rather, it was the predictable culmination in a series of attacks by Cody's killer, Justin Settle—a violent, notorious prisoner with an extensive disciplinary history.

Indeed, three weeks before murdering Cody, Settle attacked a correctional officer in the dining hall and was sentenced to disciplinary confinement. Even though prison policy requires prisoners sentenced to disciplinary confinement to be celled alone, Settle was not. Just over two

weeks after his attack on the officer, Settle struck again and stabbed his cellmate, Matthew Flash, repeatedly in the face.

Still, Defendants Yates, Dunn, and Burney did not change course. Even though all three Defendants knew about (1) Settle's extensive disciplinary history, (2) his attack on the correctional officer, and (3) his attack on Flash, they *still* did not cell Settle alone. Instead, they chose to place him in the cell with Cody and failed to monitor him and the prisoners under their care to check whether Cody was safe. Their disregard for Cody was a death sentence.

One day after being moved into the cell, Settle killed Cody with the same blade used on Flash and stuffed him under the bunk. Cody's lifeless, mutilated body remained there until three days later—at the urging of incarcerated individuals housed near Settle—Defendants Dunn and Burney finally checked the cell and found Cody's corpse.

This grisly sequence of events plainly states an Eighth Amendment claim against Yates, Dunn, and Burney. They move to dismiss anyway, but none of their arguments are persuasive. They argue that Plaintiff fails to allege each Defendant's conduct with specificity, even though Plaintiffs allege that all three Defendants knew about Settle's prior conduct, that Yates and Dunn elected to cell Cody and Settle together, and that Defendants Yates, Dunn and Burney abdicated their responsibility in conducting cell checks, leaving Cody vulnerable to Settle's violence.

Moreover, that Eighth Amendment violation is clearly established. The Eleventh Circuit's decisions in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), followed by *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014), and reaffirmed by *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), settled this constitutional question decades ago.

Their remaining arguments fare no better. Plaintiffs' wrongful death claim must proceed because the same allegations amounting to an Eighth Amendment violation eviscerate any

2

immunity Defendants might have enjoyed under state law. Defendants' arguments in support of dismissal of Plaintiffs' substantive due process claim is similarly meritless: the decision to house Cody with Settle—combined with the failure to conduct cell checks—left Cody foreseeably vulnerable to being brutally murdered and mutilated in his sleep. That failure shocks the conscience.

The Court should deny Defendants' motion to dismiss.[1]

## BACKGROUND

Justin Settle was a notorious prisoner at the Okeechobee Correctional Institution ("OCI"), having accumulated numerous disciplinary infractions over a three-year span, including infractions for battery, weapons possession, narcotics possession, and disobeying orders. Dkt. 1, Plaintiff's Complaint ("Compl.") ¶ 24. His disciplinary history was well-known to correctional staff—including Defendants Thomas Dunn, Dennis Burney, and Clifton Yates. *Id*. ¶ 24.

On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller, in the dining hall, pushing the officer onto a table, and then to the floor. *Id*. ¶¶ 25-26. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. *Id*. ¶ 25. Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash. *Id*. ¶ 26.

On January 27—just 17 days after Settle's attack on Sergeant Miller—Settle used a blade that he had fashioned from a light fixture in his cell to stab Flash repeatedly in the head, tricep, and cheek before bludgeoning him with a food tray. *Id*. ¶ 27.

Yet even after Settle's attack on Flash—despite the obvious risk Settle posed to anyone unfortunate enough to be housed with him—Defendants Yates and Dunn failed to house Settle

---

[1] Plaintiffs concede that dismissal of their conspiracy claim is appropriate.

alone. *Id.* ¶¶ 30-33. Instead, three days after Settle's attack on Flash, Defendants Yates, Burney, and Dunn decided to place Settle in a cell with Cody White—failing to even confiscate the weapon Settle had used to attack Flash. *Id.* ¶¶ 34, 39.

Defendants Dunn and Yates were assigned to conduct cell checks in the housing unit where Cody and Settle were housed together. *Id.* ¶ 36. And all three Defendants knew that Settle had attacked Sergeant Miller and that Settle had stabbed his prior cellmate just days earlier. *Id.* ¶ 32. And thus, the three Defendants also knew that Settle was a danger to anyone he was housed with— including Cody. *Id.* Yet no Defendant took any action to separate Cody and Settle. *Id.* ¶ 33. To the contrary, charged with conducting cell checks to ensure the safety of the incarcerated individuals under their care, Dunn and Yates failed to conduct their cell checks or otherwise take action to ensure Cody's safety. *Id.* ¶¶ 36, 39.

On January 31, one day after being celled with Cody, the predictable unfolded: just four days after violently attacking his prior cellmate, Settle brutally murdered Cody in his sleep. *Id.* ¶ 34. With the same knife he had used just days earlier, Settle stabbed Cody through each of his eyes, strangled him with a piece of cloth, bound Cody's hands and feet, and stuffed him facedown underneath the lower bunk of his cell. *Id.* ¶¶ 34-35, 40. Cody's body was so badly beaten that there was significant discoloration on his chest, thighs, and arms along with swelling on Cody's eye. *Id.* ¶ 40. There was also a notable indentation in Cody's skull. *Id.*

Cody lay dead underneath his bunk for up to three days. *Id.* ¶¶ 1, 34. Individuals housed near Cody and Settle realized they had not seen Cody for some time, and matters grew more concerning once those individuals saw Settle wearing Cody's jewelry. *Id.* ¶ 39. Defendants Dunn and Burney were responsible for supervising meal pass and monitoring prisoners in Cody's cellblock on the afternoon of February 3. *Id.* ¶ 39. Neither took any action to check whether Cody

was there or alive until other prisoners urged Defendant Dunn to check on Cody. *Id.* When he and Defendant Burney did, they found Cody's lifeless body under the cell bunk. *Id.* ¶¶ 39-40. When they pulled Cody out, they found him wearing only underwear, his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another piece of cloth was tied around his chest. *Id.* ¶ 40. A piece of a towel had been shoved in Cody's mouth and was saturated with blood. *Id.*

## LEGAL STANDARD

A motion to dismiss must be denied if the plaintiff alleges "sufficient facts to state a claim for relief that is 'plausible on its face.'" *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024)). In ruling on a motion to dismiss, the Court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (second alteration in original) (quoting *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018)). While the defense of qualified immunity may be "raised and considered on a motion to dismiss," it "is typically addressed at the summary judgment stage of a case." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## ARGUMENT

### I.    Defendants Burney, Dunn, and Yates Are Not Entitled to Qualified Immunity

Defendants Burney, Dunn, and Yates argue they are entitled to qualified immunity. Because Plaintiffs squarely allege a clearly established constitutional violation, that argument should be rejected.

Qualified immunity "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory

5

or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003)). After defendants make the initial showing that they were acting in the scope of their discretionary authority, the burden shifts to the plaintiffs to show the defendants' "conduct violated a constitutional right," and (2) that "the right was clearly established."[2] *Bowen*, 826 F.3d at 1319 (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)).

### A. Defendants Burney, Dunn, and Yates Were Deliberately Indifferent to the Threat Settle Posed to Cody

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee" prisoners' safety. *Bowen*, 826 F.3d at 1319 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes protecting "prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 832). To make out a failure to protect claim, a plaintiff must plausibly allege Defendants' deliberate indifference, which "has a subjective and an objective component." *Id.* at 1320. A plaintiff must show both that a defendant (1) actually knew that a prisoner "faced a substantial risk of serious harm" and (2) "that the defendant disregarded that known risk" by failing to respond reasonably. *Id.*

Here, Plaintiffs satisfy both prongs of their failure-to-protect claim. Settle was obviously a substantial threat—to staff and cellmates alike, and by housing him with Cody, Defendants plainly subjected Cody to a substantial risk of harm. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (prisoner "with history of violent outbursts and mental instability" who "was in the midst of

---

[2] The Eleventh Circuit assigns a plaintiff the burden to disprove that the defendants are entitled to qualified immunity. Plaintiffs preserve the right to challenge this Circuit's burden framework, which is not justified by any federal statute, rule of civil procedure, or the common law, and conflicts with the law of other circuits. *See, e.g.*, *Halsey v. Pfeiffer*, 750 F.3d 273, 288 & n.11 (3d Cir. 2014).

a violent schizophrenic outrage" who murdered prisoner in his housing unit posed a substantial risk).

Plaintiffs also sufficiently allege the subjective prong of the deliberate-indifference claim. Indeed, they allege that Defendants Burney, Dunn, and Yates knew about Settle's extensive disciplinary history, his attack on Sergeant Miller, and his violent attack on his prior cellmate, Matthew Flash, mere days before murdering Cody. Compl. ¶¶ 2-3, 30-33, 36, 39, 46, 48-49, 57; *see also Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016) (holding subjective prong satisfied where defendants "knew *specifically* that [assailant] had committed a 'High–Assault' against his previous cellmate and that the assault had precipitated his transfer and segregation in Unit K–3"); *Cottone*, 326 F.3d at 1358 (holding defendants "were aware of the substantial risk of serious harm based on prisoner's "violent, schizophrenic outbursts which occurred prior to the murder").

Defendants make several arguments to avoid this inescapable conclusion, but none of them are persuasive. They argue, for instance, that Plaintiffs' allegations against Yates are insufficient because Plaintiff—at the pleadings stage—cites "no meetings, no briefings, no reports, no communications." Dkt. 27 at 10. If accepted, Defendants' arguments would functionally require a plaintiff to adduce evidence at the pleadings stage. But Plaintiffs "need not prove [their] case on the pleadings" to survive a motion to dismiss. *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). They need only "provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Id.*

Defendants also argue that the allegations about Dunn and Yates's failure to conduct cell checks are insufficient because Plaintiffs do not allege what Dunn "actually observed or failed to observe" and that the allegations against Burney do not show he "had any knowledge of Settle's

prior conduct." Dkt. 27 at 8. But Plaintiffs' allegations are that Dunn could not have observed anything related to Cody and Settle because he had shirked his important duty to conduct cell checks and that Burney—despite knowing about Settle's past and being assigned to monitor Cody and Settle's cellblock, failed to take action to ensure Cody was safe. Compl. ¶¶ 36, 39

Indeed, Plaintiffs have ample allegations about Defendants' knowledge about the danger Settle posed to Cody. *See Turner v. Dunn*, 799 F. Supp. 3d 1208, 1224 (M.D. Ala. 2025) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions"). To reiterate, Plaintiffs allege that (1) Settle's extensive disciplinary history was "well-known" to OCI "correctional staff," Compl. at ¶ 24, (2) that all of the "Defendants knew that Settle had attacked [Sergeant] Miller and stabbed his cellmate" in the days before being placed with Cody, and that (3) "[d]espite this knowledge," Defendant Yates, along with Dunn, decided to cell Cody and Settle together. *Id.* ¶ 32. That is more than sufficient at this stage to establish Defendants' knowledge and disregard of the substantial risk of harm Settle posed to Cody. *Bowen*, 826 F.3d at 1324 (allegations that defendants were "*actually aware* of a substantial and seemingly conspicuous risk posed to Mr. Bowen by allowing him to remain in the small cell with Merkerson" was not a "mere recitation of the legal elements of the administrator's Eighth Amendment claim"). Defendants' suggestion that Plaintiffs must plead the source of any Defendants' knowledge goes beyond what Rule 8 demands.

Defendants also argue that Plaintiffs' allegations about causation are insufficient—and that Plaintiffs fail to plead Defendants' personal participation in the alleged constitutional deprivation. Dkt. 27 at 7-9, 11. Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). To determine whether a defendant

8

caused an Eighth Amendment violation, the Court considers whether: the defendant (1) "'had the means substantially to improve'" the prisoner's safety, (2) "knew that the actions he undertook would be insufficient to provide [the prisoner] with reasonable protection from violence," and (3) had alternative means "available to him which he nevertheless disregarded." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (quoting *LaMarca*, 995 F.2d at 1539).

As explained, each Defendant was aware of Settle's prior conduct. Compl. ¶¶ 2-3, 24, 32, 46-48, 50, 65. Yates, for his part, decided to cell Cody and Settle together, despite Settle's clear risk to any cellmate and the fact that policy mandated Settle be celled alone. *Id.* ¶¶ 30, 31-33, 36; *see also Rodriguez*, 508 F.3d at 623 (plaintiff established causal link where defendant failed to follow protocol of placing threatened prisoner in administrative segregation); *Brown v. Ward*, 2025 WL 1314094, at *5 (M.D. Ga. May 6, 2025 ("[T]he amended complaint alleges that the defendants were the individuals responsible for the classification decision to keep Glenn in Tier I and otherwise allow him to continue sharing a cell after the September 2021 attack"). And equipped with knowledge of Settle's prior acts, Dunn utterly failed to conduct the cell checks that could have alerted him to Settle's brutal murder of Cody. *Id.* ¶ 36. Burney—armed with the same knowledge and responsible for supervising and monitoring prisoners in Cody's cellblock during meal pass— took no action to monitor Cody's cell until it was too late, and he was pulling Cody's body out from under the bunk. *Id.* ¶ 39. *See Cottone*, 326 F.3d at 1358–59 ("According to the plaintiffs' amended complaint, neither [defendant] was monitoring the inmates at all during the time either of Charles's violent schizophrenic outburst prior to the murder."). Like in *Rodriguez, Brown,* and *Cottone*, Plaintiffs' Complaint asserts facts sufficient to establish causation, and Defendants' argument must be rejected.

9

Defendants also argue that, at this early juncture in the litigation, Plaintiffs' allegations in the alternative are somehow impermissible. *See* Dkt. 27 at 7 (asserting that allegations in the alternative "make[] plain that Plaintiffs do not actually know whether Sergeant Yates made the housing decision at all"). That argument is meritless. Rule 8(d)(2) expressly permits Plaintiffs to set out alternative "statements of a claim."

In sum, Plaintiffs have plausibly alleged Defendants failed to protect Cody in violation of the Eighth Amendment.

### B.    It Violates Clearly Established Law When a Correctional Official Knows a Prisoner Poses a Substantial Risk of Serious Harm to Another, Yet Fails to Act

The next question is whether Plaintiffs' allegations amount to a clearly established constitutional violation. To determine "whether a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he [or she] confronted.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (quoting *Cottone*, 326 F.3d at 1359); *see also Foster v. Echols Cnty. Sch. Dist.*, No. 24-12144, __ F.4th __, 2026 WL 759056, at *1 (11th Cir. Mar. 18, 2026) ("Qualified immunity asks whether officials were on notice that their alleged conduct was unlawful—not whether they could be sued for it."). To make that determination, the Court looks to "decisions of the Supreme Court" and "the Eleventh Circuit." *Bowen, v. Warden Baldwin State Prison*, 826 F.3d 1312, 1325 (11th Cir. 2016). "[T]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

In this case, the qualified-immunity analysis begins and ends with binding Eleventh Circuit precedent. For decades now, the Circuit has repeatedly held that it "violates a prisoner's Eighth Amendment right" when a correctional defendant "knows that one prisoner poses a substantial risk

of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell*, 748 F.3d at 1102. That constitutional principle was clearly established, certainly no later than the Circuit's decision in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), reiterated in *Caldwell*, 748 F.3d, and again in *Bowen*, 826 F.3d 1312.

In *Cottone* the court denied qualified immunity when, as here, the defendants were on notice of a "violent" and "mentally unstable" prisoner who "posed an objective serious risk of harm" to an individual housed in his vicinity after he "struck another inmate." 326 F.3d at 1356, 1358. As here, the defendants "did not monitor" the individuals living in the assailant's housing unit. *Id.* at 1356. As here, the victim was found unresponsive "on the floor with ligature marks around his neck" after the assailant had strangled his victim. *Id.* The Eleventh Circuit concluded that plaintiffs sufficiently alleged (1) "an objective, substantial risk of serious harm"; (2) defendants' subjective awareness of that risk; (3) defendants responded to that risk in "an objectively unreasonable manner," and (4) that defendants' "constitutional violation caused [the victim's] death." *Id.* at 1359. The court even identified "at least two factually similar cases, decided prior to the conduct in question, in which a lack of monitoring and supervision of known violent inmates, which led to inmate-on-inmate violence, constituted impermissible unconstitutional conduct." *Id.* at 1359 (first citing *LaMarca v. Turner*, 995 F.2d 1526, 1536–38 (11th Cir. 1993); then citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995)).

The Eleventh Circuit reiterated *Cottone*'s holding in *Caldwell*, 748 F.3d at 1103. As here, the defendants were on notice about a violent prisoner's risk to his cellmate after he "set their shared, locked cell on fire." *Id.* After the fire, "[a]rmed with actual, subjective knowledge of [the prisoner's] prior violence," the fire he had set, and his cellmate's "reported fear of being placed in a small, locked cell" with him, the defendants"—just like Defendants Burney, Dunn, and Yates—

11

"took no action" and the assailant attacked his cellmate, binding his hands and feet with fabric. *Id.* 1095. In denying qualified immunity, the court explained that "as expressed in *Cottone*," it was "clearly established that the defendants' total failure to investigate—or take any other action to mitigate—the substantial risk of serious harm" amounted to an Eighth Amendment violation. *Id.* at 1103.

The Eleventh Circuit reaffirmed *Cottone* and *Caldwell* in *Bowen*. 826 F.3d at 1324 (holding that *Cottone* and *Caldwell* were "dispositive" in deciding the law was clearly established). As here, the defendants were aware of a prisoner's "violent impulses." *Id.* at 1323. Prison officials knew, as alleged here, "that double celling" the assailant with his victim violated prison policy. *Id.* And like in this case, prison officials would find the victim "brutally beaten, and unmoving." *Id.* at 1318. In denying qualified immunity at the pleadings stage, the court ruled that the complaint adequately alleged that the defendants "were *actually aware* of a substantial and seemingly conspicuous risk posed . . . by allowing [the victim] to remain in the small cell" with his killer. *Id.* at 1324.

Put simply, the Eleventh Circuit's trilogy of *Cottone*, *Caldwell*, and *Bowen*—with facts nearly identical to the facts alleged here—gave Defendants "all the notice they needed." *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1298 (11th Cir. 2025). Qualified immunity must be denied.

## II.     Plaintiffs Plausibly Allege a Fourteenth Amendment Substantive Due Process Violation

Defendants incorrectly assert that Plaintiffs fail to sufficiently plead their Fourteenth Amendment substantive due process claim. Dkt. 27 at 14-16. A state actor violates substantive due process when the conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th

Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To clear that bar, a plaintiff must plausibly allege conduct that only falls "within the middle range"—action that exceeds negligence but is "'less than intentional conduct, such as recklessness or 'gross negligence.'" *Lewis*, 523 U.S. at 849 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 n.3 (1986)).

Here, Plaintiffs plausibly allege a substantive due process violation against Defendants Burney, Dunn, and Yates. Armed with the knowledge that Settle had attacked an officer and stabbed his prior cellmate in the face, Defendant Yates and Dunn nevertheless "decided to cell Cody with Settle." Compl. ¶ 32. *Id.* What is more, Defendants Dunn and Burney (who also knew about Settle's violent history) took no action to separate the two—and Dunn and Yates for their part abdicated their basic responsibility to conduct required cell checks that could have prevented Cody's brutal murder. *Id.* ¶ 36. Defendant Burney too, armed with the same knowledge, failed to ensure Cody's presence and safety when he was responsible for monitoring and supervising his cellblock during mealtime on February 3. *Id.* ¶ 39.  In other words, each Defendant had time to "make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. Their failure to do so left Cody dead at Settle's hands—stabbed through the eyes, stripped to his underwear, wrists and ankles bound, with a cloth ligature tight around his neck. *Id.* ¶ 40. That series of events shocks the conscience. Accordingly, Plaintiffs' substantive due process claim should proceed.

III.     **Plaintiffs' Wrongful Death Claim Should Proceed Because Defendants Are Not Entitled to State-Law Immunity**

Defendants argue that Plaintiffs' wrongful death claim fails because they are entitled to immunity under Florida law. Dkt. 27 at 16-17. That argument fails for the same reasons as articulated with respect to Plaintiff's Eighth Amendment failure-to-protect claim. *See supra* pp. 5-10.

Florida protects its officers from suit unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As the Eleventh Circuit has recognized, "[t]he federal standard for deliberate indifference amounts to recklessness, and so does the standard of 'wanton and willful' conduct under Florida law." *Turner v. Phillips*, No. 21-12370, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022) (per curiam). Those standards rise and fall together. Because Plaintiffs have sufficiently alleged Defendants' deliberate indifference, as argued above, their wrongful death claim should also proceed.

## IV.      Plaintiffs' Allegations are Specific and Not a Shotgun Pleading

Defendants argue that Plaintiffs' Complaint is "textbook shotgun pleading." Dkt. 27 at 6. Far from it. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 at 1323 (11th Cir. 2015). Plaintiffs' Complaint is succinct and gives Defendants Burney, Yates, and Dunn ample notice of the claims against them. Fed. R. Civ. P. 8(a)(2) (requiring a complaint that states a claim for relief to contain a short and plain statement of the claim showing that the pleader is entitled to relief").

Defendants first criticize Plaintiffs for incorporating their allegations by reference before introducing their claims. Dkt. 27 at 6. But what the Eleventh Circuit forbids is a complaint styled like a Russian doll—where each count incorporates by reference the allegations of *all* prior counts, "leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Weiland*, 792 F.3d at 1324 (alteration in original). That is simply not what Plaintiffs' Complaint does. Rather, Plaintiffs' Complaint incorporates just the pre-count allegations into each count. That is permitted. *Id.* ("re-alleging of paragraphs 1 through 49

14

at the beginning of each count looks, at first glance, like the most common type of shotgun pleading . . . [b]ut it is not").

Defendants also take issue with Complaint's references to the Defendants as a collective. But again, such pleading is squarely permitted. "The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Unlike the allegations here, the Eleventh Circuit frowns upon allegations "where no specific defendants are named," not ones where "*all* the defendants are explicitly named, and the allegations apply to all of them." *Turner*, 799 F. Supp. 3d at 1224 (emphasis added) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions" as "a dispute over whether the allegations are true, not whether they are comprehensible"). Put differently, Defendants attempt to drum up a "factual dispute" about the knowledge that all three Defendants had "dressed up as a procedural one." *Brown v. Dunn*, 760 F. Supp. 3d 1326, 1344 (M.D. Ala. 2024). The Court should reject that argument.

Defendants also contend that Plaintiffs' Complaint lacks specificity with respect to the misconduct alleged against Burney, Dunn, and Yates. Once again, their argument misses the mark. The allegations against each Defendant are clear. Each knew of Settle's violent history. Compl. ¶¶ 2-3, 24, 32, 46-48, 50, 65. Yates and Dunn decided to house Cody with Settle despite that knowledge and then failed to conduct their cell checks. *Id.* ¶¶ 31-33, 36, 39, 49, 57. And Burney, never attempted to separate Settle and Cody nor check on Cody while he was assigned to supervise and monitor Cody's cellblock on February 3 until another incarcerated individual begged Defendant Dunn to check on Cody. *Id.* ¶¶ 39-40; *see also Bowen*, 826 F.3d at 1323 (reversing

15

dismissal where plaintiff alleged defendant officers "*knew* the troubling details of [prisoner's] severe mental condition; they *knew* of his recent assault against his cellmate; and they *knew* that, under the [prison guidelines], he should have been housed alone").

**V.        Plaintiffs' Claims Against the Unidentified Defendants Should Proceed**

As a final matter, Defendants argue that Plaintiffs' claims against the unidentified Doe Defendants should be dismissed. But Defendants do not have standing to seek dismissal against the defendants whom they do not represent. *See Healthsmart Benefit Sols., Inc. v. Interwest Ins. Servs., Inc.*, No. 2:16-cv-00144, 2016 WL 4096704, at *4 (E.D. Cal. Aug. 1, 2016) ("A defendant has no standing to seek dismissal on the behalf of nonmoving defendants."); *Whittaker v. Morgan State Univ.*, 10-cv-3370, 2011 WL 1099266, at *1 (D. Md. Mar. 21, 2011) (university failed to "explain how it has standing to seek dismissal of other, unrepresented defendants").

But even if Defendants had standing, their arguments on this score should still be rejected. "As a general matter, fictitious-party pleading is not permitted in federal court." *Est. of West v. Smith*, 9 F.4th 1361, 1368 (11th Cir. 2021) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). But the Eleventh Circuit has carved out an exception when a plaintiff's description of the fictitious defendant "is so specific as to be 'at the very worst, surplusage.'" *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992)). As the court explained in *Dean*, "there may be times when, for one reason or another, the plaintiff is . . . unable to use a party's real name." 951 F.2d 1210 at 1215.

At this early stage, Plaintiffs have not yet been able to ascertain the identities of the Doe Defendants. But Plaintiffs understand the role that those individuals played at OCI—as the Complaint alleges, these individuals were charged with the important responsibility of conducting the regular cell checks at the prison during specific shifts. The Does also include the specific

16

individuals scheduled to conduct "Master Roster Rounds," a nightly check that requires "incarcerated individuals to show their identification cards and state their name and identification number." Compl. ¶¶ 37-38. These individuals will be easily identified as soon as staff logs are obtained. In the meantime, as pled, the allegations describing the Doe Defendants' roles at OCI, are sufficient for Plaintiffs to proceed with their claims against them. *See Dean*, 951 F.2d at 1215–16 (providing "the driver of an automobile" and "Chief Deputy of the Jefferson County" as sufficient descriptions of fictitious defendants). The claims against the Doe Defendants should proceed.

## CONCLUSION

Defendants Burney, Dunn, and Yates's motion to dismiss should be denied.

Dated: March 23, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 254-8629

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*