**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

| | |
|---|---|
| CHRISTINNA WHITE, as Personal Representative ) <br> of the Estate of Cody Lee White, and ) <br> CASEY WHITE, individually, ) <br> ) <br>        Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> SERGEANT DISAN HERNANDEZ, SERGEANT ) <br> CLIFTON MCCLAY YATES, CORRECTIONAL ) <br> OFFICER MICHAEL CORRADO, ) <br> CORRECTIONAL OFFICER THOMAS DUNN, ) <br> CAPTAIN WILLIAM HAMILTON, SERGEANT ) <br> ANDRIANA RANKINE, LIEUTENANT DENNIS ) <br> BURNEY, SERGEANT CARTER, JESUS ) <br> CRUZADO, BOYKINS, and DOES 1-11, ) <br> ) <br>        Defendants. ) | Case No. 26-cv-14004-DMM <br><br> **JURY TRIAL DEMANDED** |

**CONSENT AMENDED COMPLAINT[1]**

Plaintiff Christinna White, as Personal Representative of the Estate of Cody Lee White,

and Plaintiff Casey White in his individual capacity, by and through their undersigned attorneys at

Kaplan & Grady LLC and Slater Legal PLLC, complain against Defendants Sergeant Disan

Hernandez, Sergeant Clifton McClay Yates, Correctional Officer Michael Corrado, Correctional

Officer Thomas Dunn, Captain William Hamilton, Sergeant Andriana Rankine, Lieutenant Dennis

Burney, Sergeant Carter, Jesus Cruzado, Boykins, and Does 1-11, and state as follows:

---

[1] Plaintiffs amend their complaint under Federal Rule of Civil Procedure 15(a)(2) pursuant to written consent of counsel appearing for all defendants. (*See* ECF No. 34 ¶ 3).

**INTRODUCTION**

1.     On February 3, 2025, Cody White's body was found wrapped up in a blanket, stuffed below the bunk in his cell at the Okeechobee Correctional Institution ("OCI").  Cody had been brutally murdered by his cellmate, Justin Settle. Correctional staff failed to notice or take action for many hours, or possibly even days. When officers finally discovered Cody's body, they found that his ankles and wrists were bound, strips of cloth were tied tightly around his neck and chest, and a blood-soaked piece of towel was shoved into his mouth. Cody had been so severely beaten that there was a noticeable indentation in his head, and one of his eyes was swollen shut.

2.     Cody's murder was entirely foreseeable and preventable. On January 10, 2025, three weeks before Cody was killed, Settle had violently attacked a correctional officer. On January 27, 2025, just a few days before Cody's murder, Settle used a homemade weapon to stab his prior cellmate, Matthew Flash, multiple times while Flash was sleeping.  Defendants took no action to document, report, or discipline Settle following his attack on Flash.

3.     Despite knowing that Settle was dangerous and violent, Defendants and other Florida Department of Corrections ("FDOC") officials failed to take even basic necessary security precautions that would have protected Cody, such as isolating Settle or having him reclassified to a higher security level. Defendants also did not take any meaningful actions to make sure Settle did not or could not obtain any more weapons, including another bladed weapon, to attack other staff or incarcerated individuals.  Instead, they placed Cody directly in harm's way by moving him into a cell with Settle just a few days after Settle's attack on Flash. As a direct result, Cody died a gruesome death by the hands of a dangerous cellmate due to the indifference of FDOC employees.

4.     Cody's family now seeks accountability for the loss of their son's life.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because this is an action arising under the Constitution and laws of the United States and because Plaintiff's state law claims are part of the same case or controversy as the federal claims over which the Court has original jurisdiction.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because on information and belief one or more Defendants reside in this District and because a substantial portion of the events giving rise to the claims asserted occurred in this District.

**PARTIES**

7.     Plaintiff Christinna White is the wife of Casey White, who is the father of Cody Lee White. Ms. White is the duly appointed Personal Representative of his Estate. The Estate of Cody Lee White was opened in the Probate Division of Osceola County, Florida. Ms. White brings this action in her capacity as Personal Representative on behalf of the Estate and Cody's survivors.

8.     Plaintiff Casey White, Cody's father, in addition to being one of Cody's surviving family members, brings this action in his individual capacity for claims he individually holds outside his capacity as a survivor.

9.     Defendant Sergeant Disan Hernandez was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Hernandez is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Hernandez was acting under the color of law and within the scope of his employment with the FDOC.

10.     Defendant Sergeant Clifton McClay Yates was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Yates is sued in his

individual capacity. At all times relevant to the events at issue in this case, Defendant Yates was acting under the color of law and within the scope of his employment with the FDOC.

11. Defendant Correctional Officer Michael Corrado was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Corrado is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Corrado was acting under the color of law and within the scope of his employment with the FDOC.

12. Defendant Correctional Officer Thomas Dunn was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Dunn is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Dunn was acting under the color of law and within the scope of his employment with the FDOC.

13. Defendant Captain William Hamilton was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Hamilton is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Hamilton was acting under the color of law and within the scope of his employment with the FDOC.

14. Defendant Sergeant Andriana Rankine was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Rankine is sued in her individual capacity. At all times relevant to the events at issue in this case, Defendant Rankine was acting under the color of law and within the scope of her employment with the FDOC.

15. Defendant Lieutenant Dennis Burney was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Burney is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Burney was acting under the color of law and within the scope of his employment with the FDOC.

16. Defendant Sergeant Carter was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Carter is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Carter was acting under the color of law and within the scope of his employment with the FDOC.

17. Defendant Jesus Cruzado was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Cruzado is sued in his individual capacity. At all times relevant to the events at issue in this case, Defendant Cruzado was acting under the color of law and within the scope of his employment with the FDOC.

18. Defendant Boykins was at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendant Boykins is sued in their individual capacity. At all times relevant to the events at issue in this case, Defendant Boykins was acting under the color of law and within the scope of their employment with the FDOC.

19. Does 1-3 were at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendants Does 1-3 are sued in their individual capacities. At all times relevant to the events at issue in this case, Defendants Does 1-3 were acting under the color of law and within the scope of their employment with the FDOC. Does 1-3 are the individual FDOC employees responsible for conducting Master Roster Rounds on January 31, February 1, and February 2, 2025, all of whom failed to account for Cody during their rounds and ensure he was alive and safe.

20. Does 4-11 were at all relevant times employed by the FDOC working at the Okeechobee Correctional Institution. Defendants Does 4-11 are sued in their individual capacities. At all times relevant to the events at issue in this case, Defendants Does 4-11 were acting under the color of law and within the scope of their employment with the FDOC. Doe 4 is the individual

5

FDOC employee responsible for conducting cell checks or cell rounds during third shift on January 31. Doe 5 is the individual FDOC employee responsible for conducting cell checks or cell rounds during first shift on February 1. Doe 6 is the individual FDOC employee responsible for conducting cell checks or cell rounds during second shift on February 1. Doe 7 is the individual FDOC employee responsible for conducting cell checks or cell rounds during third shift on February 1. Doe 8 is the individual FDOC employee responsible for conducting cell checks or cell rounds during first shift on February 2. Doe 9 is the individual FDOC employee responsible for conducting cell checks or cell rounds during second shift on February 2. Doe 10 is the individual FDOC employee responsible for conducting cell checks or cell rounds during third shift on February 2. Doe 11 is the individual FDOC employee responsible for conducting cell checks or cell rounds during first shift on February 3. Does 4-11 failed to conduct cell checks or rounds sufficiently enough to ensure that Cody was safe and alive, and failed to mitigate the damage that Settle caused to Cody.

### ALLEGATIONS

21.    Cody White was just 32 years old when he was murdered at the Okeechobee Correctional Institution. He loved swimming and surfing; fishing for bass, speckled perch, and other freshwater fish with his father; and playing baseball and basketball in his neighborhood. Before he was incarcerated, Cody worked as a day laborer.

22.    While incarcerated, Cody spoke with father and stepmother frequently. Upon his release, Cody planned to move in with his father and stepmother and learn his father's trade of cattle farming.

23.     Cody's family trusted that he would be protected while in FDOC custody and that one day he would come home. FDOC and its employees failed Cody and his family and let him suffer a gruesome, horrific, and completely avoidable murder at the hands of Justin Settle.

24.     Settle was well known to correctional staff at OCI. Over a three-year span, Settle accumulated numerous disciplinary infractions, including for battery, weapons possession, narcotics possession, and disobeying orders, among others.

25.     On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller. Sergeant Miller approached Settle when Settle attempted to sit out of order during afternoon meal. When Sergeant Miller approached Settle, Settle began beating his chest and pushed Sergeant Miller onto the table, then to the floor. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement.

26.     Disciplinary confinement is a form of discipline in which an individual is confined for a specified period of time to an individual cell.[2]  Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash.

27.     On the night of January 27, just seventeen days after his attack on Sergeant Miller, Settle stabbed Flash several times in the head, tricep, and cheek and then bludgeoned him with a food tray. Officers identified the weapon that Settle used to stab Flash as a homemade, 8-inch sharpened blade that Settle had crafted using a piece of steel from the light fixture in his cell.

28.     Defendants Hernandez and Boykins responded to the attack but did not document or otherwise report the incident. They also did not investigate, or discipline Settle for it. In fact, the attack does not show up on Settle's disciplinary record at all except for a few sentences in the

---

[2] FDOC Procedure 601.223.

7

recommendation section for Settle's placement in close management, which Defendant Cruzado wrote *after* he would later murder Cody.

29.     Moreover, although Defendants Hernandez, Boykins, and Cruzado were aware of Settle's attack on Flash, they took no meaningful action to protect Cody and other incarcerated individuals from Settle, such as by housing him alone, having him reclassified to a higher security level, or at minimum, making sure he did not have access to weapons or materials that could easily and foreseeably be used to fashion a weapon.

30.     If Settle's attack on Flash was reported, the Institutional Classification Unit should have evaluated Settle's risk level and recommended a more rigid confinement status, including "administrative confinement," placement in the "administrative management unit," or placement under "close management." [3] Any of these options should have prevented Settle from being housed with—and thus able to attack—another cellmate. At minimum though, Defendants should have kept his disciplinary confinement to an individual cell. Rather than engage in any one of these efforts (or any other effort to protect Cody and others like him from Settle), Defendants did nothing.

31.     Defendant Sergeant Andriana Rankine, Defendant Sergeant Carter, Defendant Captain Hamilton, and/or Defendant Sergeant Yates either oversaw or directly made housing decisions and prisoner placements.

32.     Defendants knew that Settle had attacked Officer Miller and then stabbed his cellmate shortly thereafter. Despite this knowledge, Defendants Rankine, Carter, Hamilton, and/or Yates intentionally or recklessly decided to cell Cody with Settle and/or failed to take any meaningful action to stop others from celling them together. Defendants Corrado and Dunn were

---

[3] FDOC Procedure 601.223.

also aware of the risk Settle posed to Cody (and other prisoners), yet participated in or facilitated Cody's assignment as Settle's cellmate.

33.     Rather than take basic and necessary security precautions to ensure Cody's safety, Defendants intentionally or recklessly ignored an obvious and extreme risk to Cody's safety by moving him into a cell with Settle on or around January 30, just three days after Settle had repeatedly stabbed his cellmate.

34.     Settle's foreseeable pattern of violence continued. Sometime late on January 31 or early on February 1, Settle brutally murdered Cody in his sleep. Settle stabbed Cody through each of his eyes using either the same homemade knife that he had used to attack Flash or a similarly improvised bladed weapon. In the course of killing Cody, Settle also strangled him with a piece of cloth.

35.     After stabbing Cody in the eyes, Settle then tore a sheet into strips and tied Cody's hands and feet together.

36.     FDOC staff tasked with conducting cell checks between January 31 and February 3, including Defendants Yates, Dunn, Hernandez, and Does 1-11, either did not conduct them or conducted them with such indifference that they did not notice or care that Cody was dead and unaccounted for, despite knowing that Cody was celled with Settle, who should have been celled alone based on his recent violent episodes.

37.     Specifically, Defendants Does 1-3 were responsible for conducting Master Roster Rounds between January 31 and February 2. Master Roster Rounds are supposed to occur every day at 10:30pm and require incarcerated individuals to show their identification cards and state their name and identification number. Upon information and belief, these cells also have "face sheets," which assist the guards in identifying which individuals are supposed to be housed there.

Defendants Does 1-3 failed to conduct these rounds, failed to ensure that Cody was alive and safe, failed to be available if Cody sought help, and failed to respond when Cody was not accounted for as part of Defendants' rounds, all despite knowing that Cody was improperly celled there with Settle days after Settle stabbed Flash.

38.     Defendants Does 4-11 were each responsible for conducting regular cell checks during their shifts between January 31 and February 3. They similarly failed to conduct these rounds in a way that accounted for Cody, failed to ensure that Cody was alive and safe, failed to be available if Cody sought help, and failed to respond when Cody was not accounted for as part of Defendants' rounds, all despite knowing that Cody was improperly celled there with Settle days after Settle stabbed Flash.

39.     Individuals housed near Cody grew concerned after they had neither heard nor seen Cody in more than a day, and saw Settle wearing Cody's jewelry. On February 3 at approximately 11:50 a.m., Defendants Dunn and Burney were assigned to supervise and monitor prisoners in Cody's cellblock during afternoon mealtime. Despite their assigned responsibilities, and knowing that Cody and Settle were improperly celled together, neither Defendant Dunn nor Defendant Burney took any meaningful action to ensure that Cody was even alive, much less alive and well. It was only after the individual housed across from Cody begged for Defendant Dunn to check on Cody that Defendants Dunn and Burney finally took action to account for Cody. Defendants Dunn and Burney found Cody's lifeless body stashed facedown underneath the lower bunk of the cell, with blood on the floor.

40.     When FDOC staff, including Defendants Dunn and Burney, pulled Cody out from under the bunk and rolled him onto his back, they saw Cody was wearing only underwear, his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another was

tied around his chest. A piece of a towel had been shoved in Cody's mouth and was saturated with blood. His body and face were beaten to the point that there was significant discoloration on his chest, thighs, and arms. There was also severe swelling on Cody's eye, and a notable indentation in his skull.

41.     Dr. Cary Pigman, the Medical Director at OCI, was called to the scene after Cody's lifeless body was discovered. Dr. Pigman documented that he could not open Cody's left eye to examine Cody's pupil due to soft tissue swelling, and that he could not adequately examine Cody's right pupil because of interference by the cloth that had been shoved in Cody's mouth. Cody's skin was cool, he had no pulse, and was declared dead on the scene, although by that point Cody had been dead for many hours and possibly days.

42.     On information and belief, due to these events, Defendant Hamilton was terminated from his position with FDOC in the aftermath of Cody's murder.

## COUNT I
### 42 U.S.C. § 1983 – Deliberate Indifference (Eighth Amendment)
### By Plaintiff Christinna White Against All Individual Defendants

43.     Paragraphs 1 through 42 of this Complaint is incorporated herein.

44.     Count I is brought by Plaintiff Christinna White as the Personal Representative on behalf of the estate and survivors against all individual Defendants.

45.     Defendants knew there was a substantial risk of serious harm to Cody because they either deliberately placed him in Settle's cell or had direct knowledge of the improper placement and/or of the substantial risk of serious harm Settle posed to Cody, but took no meaningful action to stop it.

46.     Specifically, the Individual Defendants knew that: (a) Settle was violent, dangerous, and paranoid, and thus posed a substantial risk of serious harm to individuals like Cody to whom he had been allowed unfettered access; (b) Settle had recently committed two violent acts, one of

which was not documented or addressed; (c) Settle was on disciplinary confinement and should not have been celled with anyone else; (d) by putting Cody in Settle's cell, Cody was exposed to a risk of serious harm; and (e) by failing to adequately conduct rounds, they knowingly put Cody at further risk by giving Settle freedom to assault Cody.

47.     The deliberate indifference created conditions that were extreme and posed a substantial risk of serious harm to Cody's health and safety.

48.     Each defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Specifically, each defendant knew Settle's violent history and that he should not have had another cellmate.

49.     Each Defendant had sufficient knowledge of the failure to document and address Settle's most recent violent attack and that placement with Settle presented a strong likelihood of injury to Cody.

50.     Despite their knowledge of the substantial risk of serious harm that Cody faced from Settle, Defendants took no meaningful action to address that harm or otherwise ensure that Cody was protected from Settle's known and predictable violence. In this way, Defendants evinced deliberate indifference and/or a conscious disregard of the risk of serious harm that Cody faced.

51.     As a direct and proximate result of the defendants' failure to protect Cody from a substantial risk of serious harm, Cody experienced physical and emotional pain and suffering, and ultimately death.

52.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Cody's rights.

## COUNT II
### 42 U.S.C. § 1983 – Deprivation of Rights (Fourteenth Amendment)
### By Plaintiffs Christinna White and Casey White Against All Individual Defendants

53.     Paragraphs 1 through 42 of this Complaint is incorporated herein.

54. Count II is brought by Plaintiff Christinna White as the Personal Representative on behalf of the estate and survivors and by Plaintiff Casey White, Cody's father, individually, for Defendants' failure to protect his son and the sanctity of his body.

55. Defendants knew there was a substantial risk of serious harm to Cody because they had direct knowledge of Settle's violent history, the improper response, or lack thereof, to Settle's stabbing of Flash, Cody's improper placement into Settle's cell, and Defendants' failure to conduct sufficient cell checks.

56. Defendants each knew that Settle was violent, and posed a serious danger to other prisoners like Cody to whom he had unfettered access; that Settle's stabbing of Flash was not addressed; that Settle should have been reclassified and housed alone; that Cody would be in foreseeable danger when housed with Settle; and that cell checks were insufficient or nonexistent during Cody's time in Settle's cell.

57. Defendants' deliberate indifference created conditions that were extreme and shocked the conscience. Specifically, through their indifference, they allowed Settle to mutilate and desecrate Cody's body and cause his immense suffering and death.

58. Defendants also failed to discover Cody for many hours and possibly days, permitting Cody's body to decay.

59. As a direct and proximate result of these Defendants' failure to protect Cody from a serious and substantial risk of harm, Settle was able to attack, mutilate, and desecrate Cody's body and ultimately cause his death and hide his body for many hours and possibly days.

60. Such failures violated Cody's father's right, resulting in damages as set forth below.

### COUNT III
**Florida Wrongful Death Act, §§ 768.16-27, Florida Statutes**
**By Plaintiff Christinna White Against All Individual Defendants**

61. Paragraphs 1 through 42 of this Complaint is incorporated herein.

62.     Count III is brought by Plaintiff Christinna White as the Personal Representative on behalf of the estate and survivors against the Individual Defendants for the malicious and wanton conduct in celling of Cody with Settle, which resulted in Cody's wrongful death.

63.     The Individual Defendants' acts were committed while acting within the scope and course of their employment.

64.     The Individual Defendants owed Cody a nondelegable duty to use reasonable care to ensure his safety.

65.     The Individual Defendants failed to perform their duty to use reasonable care to ensure Cody's safety, thereby abandoning their duty to him.

66.     The Individual Defendants failed to perform their duty to use reasonable care to ensure Cody's safety and well-being by, including, among other things:

   a.   Failing to maintain and properly monitor the safety and welfare of Cody;

   b.   Failing to prevent an assault and battery on Cody;

   c.   Failing to properly place preventative measures necessary to prevent Cody's death;

   d.   Failing to train FDOC employees regarding FDOC's obligation to secure the safety of prisoners;

   e.   Failing to properly record, document, and address Settle's violent and dangerous assaults and paranoia preceding Cody's murder;

   f.   Failing to accurately adjust Settle's status and keep him away from other incarcerated individuals;

   g.   Failing to protect Cody from being housed with a dangerous individual; and

   h.   Failing to conduct or failing to sufficiently conduct regular cell checks.

14

67. These failures were wanton and malicious.

68. As a direct and proximate result of the Individual Defendants' failure to perform their duty to use reasonable care to ensure Cody's safety and wellbeing, Cody suffered physical and emotional harm and ultimately died.

69. It was reasonably foreseeable that these harms would befall Cody either directly or indirectly as a result of these actions and omissions by the Individual Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White in his individual capacity, hereby respectfully request that this Court enter a judgment in their favor and against Defendants Sergeant Disan Hernandez, Sergeant Clifton McClay Yates, Correctional Officer Corrado, Correctional Officer Thomas Dunn, Captain William Hamilton, Sergeant Andriana Rankine, Lieutenant Dennis Burney, Sergeant Carter, Jesus Cruzado, Boykins, and Does 1-11 awarding compensatory damages, punitive damages, attorney fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and appropriate, for the damages the Plaintiffs have sustained as follows:

a) Christinna White, on behalf of the Estate, has sustained the following damages:

    1) Cody's injuries including but not limited to physical pain and suffering, emotional damages, and death; and

    2) Funeral and burial expenses incurred as a result of the death of Cody.

b) Casey White individually, and Christinna White on behalf of the Estate and Cody's survivors have sustained the following damages:

    1) Mental pain and suffering from the date of injury and continuing for the remainder of their lives;

15

2) Loss of Cody's companionship, instruction, guidance; protection, care, future income, assistance, society, comfort, counsel, and advice; and

3) Destruction/mutilation of Cody's remains.

## JURY DEMAND

Plaintiffs Christinna White and Casey White hereby demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: March 31, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

17