UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:   26-cv-14004-DMM

CHRISTINNA WHITE, as Personal Representative
Of the Estate of Cody Lee White and CASEY
WHITE, individually,

       Plaintiffs,

vs.

SERGEANT DISAN HERNANDEZ, SERGEANT
CLIFTON MCCLAY YATES, CORRECTIONAL
OFFICER MICHAEL CORRADO, CORRECTIONAL
OFFICER THOMAS DUNN, CAPTAIN
WILLIAM HAMILTON, SERGEANT ANDRIANA
RANKINE, LIEUTENANT DENNIS BURNEY,
SERGEANT CARTER, JESUS CRUZADO,
BOYKINS and DOES 1-11,

       Defendants.

_____/

**DEFENDANTS SERGEANT CLIFTON MCCLAY YATES, CORRECTIONAL OFFICER MICHAEL CORRADO, CORRECTIONAL OFFICER THOMAS DUNN, CAPTAIN WILLIAM HAMILTON, SERGEANT ANDRIANA RANKINE, LIEUTENANT DENNIS BURNEY, AND JESUS CRUZADO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, SERGEANT CLIFTON MCCLAY YATES ("Yates"); CORRECTIONAL

OFFICER MICHAEL CORRADO ("Corrado"); CORRECTIONAL OFFICER THOMAS DUNN

("Dunn"); CAPTAIN WILLIAM HAMILTON ("Hamilton"); SERGEANT ANDRIANA

RANKINE ("Rankine"); LIEUTENANT DENNIS BURNEY ("Burney"); and JESUS

CRUZADO ("Cruzado"), (or collectively, "Moving Defendants"), by and through their

undersigned counsel, Whitelock & Associates, P.A., and pursuant to Fed. R. Civ. P. 12(b)(6) and

S.D. Fla. L. R. 7.1, hereby move to dismiss Plaintiffs' Amended Complaint [D.E. 35], and in support thereof state as follows:

## I.   **INTRODUCTION**

This lawsuit arises from the death of Cody Lee White, an inmate at the Okeechobee Correctional Institution ("OCI"), wherein Plaintiffs claim this death was the result of an attack by a fellow inmate, Justin Settle, on or about January 31-February 1, 2025. D.E. 35, ¶¶ 1, 34. Plaintiffs have now filed a Consent Amended Complaint [D.E. 35] ("Amended Complaint" or "D.E. 35") pursuant to Federal Rule of Civil Procedure 15(a)(2). The Amended Complaint now asserts three (3) counts: Count I, a Section 1983 claim for deliberate indifference under the Eighth Amendment; Count II, a Section 1983 claim for deprivation of rights under the Fourteenth Amendment; and Count III, a claim under the Florida Wrongful Death Act, §§ 768.16-27, Florida Statutes. D.E. 35, ¶¶ 43-44, 53-54, 61-62.

While the Amended Complaint nominally corrects certain minor pleading defects, it fails, however, to properly remedy the fundamental deficiencies that warranted dismissal of the original pleading. The Amended Complaint makes no substantive new factual allegations as to any individual Defendant. It additionally continues, again, to improperly lump all named Defendants and eleven (11) fictitious Doe(s) defendants into a single, undifferentiated mass, directing broad collective but vague allegations at "Defendants" and "Individual Defendants" without identifying each defendant's specific conduct, knowledge, or roles. D.E. 35, ¶¶ 29, 31-33, 36, 45-50, 55-56, 63-66.

As aptly set forth *infra*, dismissal is required for the following reasons. First, the Amended Complaint remains an impermissible shotgun pleading. Second, it fails to allege the personal participation of the vast majority of named Defendants as required to impose liability under

Section 1983. Third, all Defendants are nonetheless entitled to qualified immunity because the Amended Complaint does not plausibly allege the violation of any clearly established constitutional right as to each individual defendant. Fourth, the Fourteenth Amendment substantive due process claim in Count II fails as a matter of law because convicted inmates' conditions-of-confinement claims are governed exclusively by the Eighth Amendment. Fifth, the Florida Wrongful Death Act claim in Count III fails because the Amended Complaint does not plausibly allege the bad faith, malicious purpose, or wanton and willful disregard necessary to overcome state-law personal immunity under Section 768.28(9)(a), Florida Statutes. Finally, the claims against fictitious Doe defendants are improper in this Circuit. For all of these reasons, the Amended Complaint should be dismissed in its entirety.

## II.    **PLAINTIFFS' ALLEGATIONS**

On January 5, 2026, Plaintiffs filed a four-count Complaint against ten (10) named correctional personnel and eleven (11) Doe defendants arising from the death of Cody Lee White, a thirty-two-year-old inmate at OCI. *See generally* D.E. 1. On March 31, 2026, Plaintiffs filed the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). *See* D.E. 35, at n.1; D.E. 34, ¶ 3. The Amended Complaint now names ten (10) individual defendants: Sergeant Disan Hernandez, Sergeant Clifton McClay Yates, Correctional Officer Michael Corrado, Correctional Officer Thomas Dunn, Captain William Hamilton, Sergeant Andriana Rankine, Lieutenant Dennis Burney, Jesus Cruzado, Boykins, and Sergeant Carter,[1] as well as eleven (11) Doe defendants.

The factual allegations in the Amended Complaint are substantively identical to those in the original Complaint. Plaintiffs allege that on or around January 30, 2025, Cody White was moved into a cell with Justin Settle at OCI. D.E. 35, ¶ 33. Three (3) days later, on February 3,

---

[1] Multiple other Defendants, including but not limited to "Boykins" and "Sergeant Carter," are not identified by full name, nor can the Moving Defendants identify them.

3

2025, Cody's body was discovered hidden beneath the lower bunk of his cell. *Id.* ¶¶ 1, 39. Plaintiffs allege that Settle had previously attacked a correctional officer on January 10, 2025, and stabbed his then-cellmate Matthew Flash on January 27, 2025. *Id.* ¶¶ 25-27. The Amended Complaint alleges that the January 27 attack "does not show up on Settle's disciplinary record at all." *Id.* ¶ 28.

As to specific Defendants: Cruzado is alleged to have written a classification recommendation that briefly referenced the January 27 Flash incident. D.E. 35, ¶ 28. Rankine, Hamilton, and/or Yates are alleged in the alternative to have 'either oversaw or directly made housing decisions and prisoner placements.' *Id.* ¶ 31. Corrado and Dunn are alleged to have 'participated in or facilitated' the housing assignment in some unspecified way. *Id.* ¶ 32. Burney's only specific appearance in the Amended Complaint is on February 3, 2025, when he was assigned to supervise Cody's cellblock during afternoon mealtime and was present when Cody's body was discovered. *Id.* ¶¶ 39-40. Every other allegation is directed at the collective 'Defendants' or 'Individual Defendants' without any delineation of individual conduct, individual knowledge, or individual role. D.E. 35, ¶¶ 29, 31-33, 36, 38, 45-50, 55-56, 63-66.

## III.   **MEMORANDUM OF LAW**

### A. **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* Allegations that are "merely consistent with" liability stop "short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim.

In evaluating a motion to dismiss, the Court must accept all well-pleaded factual allegations as true, but "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, a court is not required to accept conclusions "couched as" facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). As the Eleventh Circuit has explained, allegations must be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## B. The Amended Complaint Remains an Impermissible Shotgun Pleading

The Eleventh Circuit has repeatedly condemned shotgun pleadings in the strongest terms and directed district courts to dismiss them. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). The Eleventh Circuit has identified several types of impermissible shotgun pleadings, including pleadings that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Such pleadings fail to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*; *see also Automotive Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020).

5

The Amended Complaint is a textbook shotgun pleading. Each of the three (3) counts realleges and incorporates "[p]aragraphs 1 through 42" in their entirety. D.E. 35, ¶¶ 43, 53, 61. All three (3) claims are then directed broadly at "All Individual Defendants," specifically ten (10) named defendants plus eleven (11) Doe defendants, without specifying which individual is responsible for which act. *See, e.g.,* D.E. 35, ¶¶ 45-51, 55-60, 62-68. The Amended Complaint repeatedly references the collective "Defendants" performing acts without attribution to any particular person. *See, e.g.,* D.E. 35, ¶¶ 29, 32, 33, 36, 50.

Lastly, the filing of the Amended Complaint was an opportunity to presumably correct these deficiencies. They did not. The Amended Complaint's failure to allege defendant-specific factual allegations makes it impossible, in part, to assess whether any individual defendant personally and purportedly violated clearly established law or is entitled to qualified immunity, and the Amended Complaint should be dismissed on this basis alone.

## C. The Amended Complaint Fails to Allege Personal Participation by Most Named Defendants

A foundational principle of Section 1983 liability is that it "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993). Each defendant's liability "must be based on his own individual acts." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003). Examined defendant by defendant, the Amended Complaint reveals a lack of sufficient non-conclusory allegations establishing personal participation.

### 1. Sergeant Clifton Yates

The Amended Complaint's specific factual allegations as to Sergeant Yates are confined to two (2) paragraphs. Paragraph 31 states that Sergeant Yates "either oversaw or directly made housing decisions and prisoner placements." D.E. 35, ¶ 31. Paragraph 32 states that Sergeant Yates

6

"intentionally or recklessly decided to cell Cody with Settle and/or failed to take any meaningful action to stop others from celling them together." D.E. 35, ¶ 32. The use of "either…or" language makes plain that Plaintiffs do not actually know whether Sergeant Yates made the housing decision at all. The phrase "failed to take any meaningful action to stop others" is the epitome of a conclusory assertion lacking any supporting factual content. *Iqbal,* 556 U.S. at 678. There are no *Twombly* facts identifying when, and if, Sergeant Yates knew of the Settle-Flash incident, what information Sergeant Yates received about the housing decision, whether he had legal authority over that particular placement, or what he actually did or did not do.

### 2. **Officer Michael Corrado**

The Amended Complaint's only specific allegation concerning Officer Corrado, corrected from the misspelling "Cannado" in the original Complaint, is that he "was also aware of the risk Settle posed to Cody (and other prisoners), yet participated in or facilitated Cody's assignment as Settle's cellmate." D.E. 35, ¶ 32. This is a bare legal conclusion: it asserts knowledge and participation without identifying any fact from which either could be inferred. There is no allegation of how Corrado learned of Settle's history, what his specific role in the housing assignment was, or what act or omission on his part contributed to Cody's placement with Settle.

### 3. **Officer Thomas Dunn**

Officer Dunn is alleged to have "participated in or facilitated" the housing assignment in some unspecified way, to have been among staff tasked with conducting cell checks during the relevant period, and to have been present when Cody was discovered on February 3, 2025. D.E. 35, ¶¶ 32, 36, 39-40. However, the Amended Complaint itself assigns the cell-check failures during the relevant period to Does 1-11, not to Officer Dunn. D.E. 35, ¶¶ 19-20, 37-38. There are no *Twombly* facts as to what Officer Dunn actually observed during any cell check, what information

he had about Settle's prior conduct, whether he had reason to believe anything was amiss in the cell, or which specific shifts he worked. *See* D.E. 35, ¶¶ 12, 32, 36, 39. Critically, the Amended Complaint's own allegations concerning February 3 demonstrate that Officer Dunn ultimately responded to a neighboring inmate's request and located Cody, conduct that is inconsistent with deliberate indifference. D.E. 35, ¶¶ 39-40.

### 4. Lieutenant Dennis Burney

As to Lieutenant Burney, the Amended Complaint's inclusion is equally limited. Lieutenant Burney appears only in connection with the events of February 3, 2025, when he was assigned to supervise Cody's cellblock during afternoon mealtime and was present when Cody was discovered. D.E. 35, ¶¶ 39-40. The Amended Complaint contains no allegation that Lieutenant Burney was involved in any housing decision, had any knowledge of Settle's prior conduct before that afternoon, conducted any cell checks during the relevant period, or held any supervisory responsibility over those who did. *See* D.E. 35, ¶¶ 15, 39. Because Lieutenant Burney's only identified involvement is being present when Cody was found, the Amended Complaint cannot support a plausible inference that he consciously disregarded any known risk. *Farmer v. Brennan,* 511 U.S. 825, 837-38 (1994).

### 5. Sergeant Andriana Rankine

Sergeant Rankine is identified only in the collective allegation that she, along with Hamilton and Yates, "either oversaw or directly made housing decisions and prisoner placements." D.E. 35, ¶ 31. The disjunctive framing is fatal: there is no allegation specifically attributing any act or omission to Rankine, no factual basis for inferring what she knew or did, and no connection drawn between her individual conduct and the decision to place Cody with Settle. *See* D.E. 35, ¶¶ 14, 31-33.

8

### 6. **Captain William Hamilton**

Captain Hamilton is subject to the same collective allegation in paragraph 31 and is further alleged on "information and belief" to have been "terminated from his position with FDOC in the aftermath of Cody's murder." D.E. 35, ¶ 42. While a post-incident termination may create an inference of some institutional responsibility, it does not establish the particularized subjective knowledge or conscious disregard of a specific risk required to sustain a Section 1983 claim. *See Farmer,* 511 U.S. at 836-38. The Amended Complaint identifies no specific act or omission by Hamilton, no communication he received, and no decision he made regarding Cody's placement or monitoring. *See* D.E. 35, ¶¶ 13, 31-33, 42.

### 7. **Jesus Cruzado**

As to Cruzado, the Amended Complaint alleges that he wrote a classification recommendation that briefly referenced the January 27 attack on Flash. D.E. 35, ¶ 28. The Amended Complaint nonetheless fails to allege any affirmative causal link between Cruzado's classification recommendation and Cody White's placement with Settle. The existence of a classification recommendation referencing a prior incident, without more, does not establish that Cruzado made, influenced, or had authority over the subsequent housing decision. *LaMarca,* 995 F.2d at 1538.

### 8. **Supervisory Liability**

To the extent any of the foregoing allegations are read as resting on a supervisory liability theory, that theory fails as a matter of law. "Supervisory officials are not liable under Section 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone,* 326 F.3d at 1360. A supervisor may be liable only if he personally participated in the unconstitutional conduct or if there is an affirmative link between his actions and the alleged

9

deprivation, shown through a custom or policy that caused the violation, a failure to train amounting to deliberate indifference, or direct direction of subordinate misconduct. *Cottone*, 326 F.3d at 1360. The Amended Complaint, however, alleges none of these things as to any supervisory defendant. *See* D.E. 35, ¶¶ 13-14, 31-33.

### D. Plaintiffs Fail to State an Eighth Amendment Failure-to-Protect Claim Against Any Defendant

Count I purports to state a Section 1983 deliberate indifference claim under the Eighth Amendment. D.E. 35, ¶¶ 43-52. The governing standard is set forth in *Farmer v. Brennan,* 511 U.S. 825 (1994), which requires: (1) a substantial risk of serious harm; (2) subjective knowledge by the defendant of that risk; and (3) the defendant's conscious disregard of the risk. *Id.* at 833-38. The Eleventh Circuit has synthesized this as requiring "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cty.,* 601 F.3d 1152, 1158 (11th Cir. 2010). This necessarily requires factual allegations as to each element for each individual defendant.

Critically, the Eighth Amendment is not violated by "ordinary negligence, inadvertence, or error." *Farmer,* 511 U.S. at 835. The deliberate indifference standard requires that the prison official have "actual knowledge" of the risk, not merely constructive notice. *Id.* at 836-38. The subjective knowledge element requires allegations that each individual defendant was personally aware of facts suggesting a substantial risk of serious harm to the specific inmate. *See Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003) (holding that generalized awareness of a cellmate's violent propensity, even with specific complaints from the plaintiff, did not satisfy the subjective awareness requirement); *see also Goodman v. Kimbrough,* 718 F.3d 1325, 1332-34 (11th Cir. 2013) (holding that officers' failure to conduct required cell checks and follow

10

institutional procedures, while potentially negligent, did not establish deliberate indifference absent subjective awareness of a specific risk).

Most tellingly, the Amended Complaint alleges that Settle's January 27 attack on Flash "does not show up on Settle's disciplinary record at all." D.E. 35, ¶ 28. A defendant cannot be charged with subjective awareness of a risk that was never recorded or communicated. *See Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994) (requiring actual knowledge of risk, not merely constructive notice); *see also Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (subjective awareness element not satisfied absent documented, communicated knowledge of a specific risk). Absent specific, documented knowledge of a particularized threat to Cody, the subjective awareness element fails as to Yates, Corrado, Dunn, Burney, Rankine, and Hamilton, none of whom are alleged to have received any specific communication about Settle's January 27 conduct beyond the conclusory assertion that "Defendants knew." *See* D.E. 35, ¶¶ 10-15, 32, 45-46, 48-49, 55-56.

The same is true of Cruzado, whose involvement was limited to responding to the Flash incident and who is not alleged to have played any role in the subsequent housing decision. *See* D.E. 35, ¶¶ 17, 28-29.

Even if subjective knowledge were assumed, the Amended Complaint does not plausibly allege conscious disregard by most Defendants. As to Yates, the "either…or" framing is too equivocal to support a plausible inference of legal disregard. As to Dunn, the allegation of deficient cell checks is unaccompanied by any *Twombly* fact about what he actually observed or failed to observe, and the Amended Complaint critically assigns the cell-check failures during the relevant period to Does 1-11, not Dunn. D.E. 35, ¶¶ 19-20, 37-38. As to Burney, there are simply no relevant pre-February 3 allegations at all. *See id.*, ¶¶ 15, 39. The Eleventh Circuit's decision in *Carter v.*

11

*Galloway* is instructive. There, the plaintiff personally and repeatedly warned prison officials that his cellmate was acting "crazy," roaming the cell like a "caged animal," and had made a statement that plaintiff would help him "one way or another," yet the Court held that this generalized awareness of the cellmate's violent propensity did not satisfy the subjective awareness requirement. 352 F.3d 1346, 1349-50 (11th Cir. 2003). The defendants here, however, had allegedly even *less* notice than the defendants in *Carter*, not more. Here, the Plaintiff still concedes that Settle's January 27 attack on Flash "does not show up on Settle's disciplinary record at all." D.E. 35, ¶ 28. If subjective awareness was not established in *Carter*, where officials received direct, repeated, personal warnings, it cannot be established here, where the very incident forming the foundation of Plaintiffs' theory was never documented or communicated to most of the named Defendants. The Amended Complaint does not approach that threshold as to any Defendant. Here, and again, as in *Goodman*, Plaintiffs' allegations at most describe failures in documentation, classification, or monitoring procedures, which, even if accepted as true, do not establish that any Defendant was subjectively aware of and deliberately disregarded a specific risk to Cody White.

Even assuming *arguendo* that Plaintiffs have sufficiently alleged subjective knowledge, although they have not, dismissal is still required because the Amended Complaint does not plausibly allege that any Defendant's conduct was the moving force behind Cody White's death. To establish causation under Section 1983, a plaintiff must tie the specific harm to the specific risk the defendant consciously disregarded. *LaMarca*, 995 F.2d at 1538. The Amended Complaint's own allegations identify Cruzado as the actor who briefly referenced Settle's prior conduct in a later classification recommendation, yet he is not alleged to have made or influenced the housing decision that placed Cody with Settle. D.E. 35, ¶¶ 25-29, 31. Nor does the Amended Complaint plausibly allege that any other Defendant played a causal role in that decision. Accordingly, the

12

Amended Complaint fails to plausibly allege causation as to any Defendant. The alleged deficiencies of Yates, Corrado, Dunn, Burney, Rankine, Cruzado, and Hamilton are not plausibly connected to the harm that resulted in this pleading, and the claims against them must be dismissed.

### E. All Defendants Are Entitled to Qualified Immunity

Even if the Amended Complaint stated a colorable constitutional claim, and it does not, all Defendants are still nonetheless entitled to qualified immunity. Qualified immunity "protect[s] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The qualified immunity analysis proceeds in two steps: (1) whether the facts alleged make out a violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232.

### 1. All Defendants Were Performing Discretionary Functions

All named Defendants were unquestionably performing discretionary functions. Making or overseeing inmate housing decisions, conducting cell rounds, supervising a cellblock, responding to a report within a correctional facility, documenting incidents, and conducting classification assessments are all classic discretionary acts within the scope of a correctional officer's duties. *See Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004) (explaining that discretionary function inquiry asks whether official was performing legitimate job-related function through authorized means); *see also Cagle v. Sutherland,* 334 F.3d 980, 990 & n.12 (11th Cir. 2003) (holding jailer conducting cell checks acted within discretionary

13

authority). The burden, therefore, shifts to Plaintiffs to demonstrate that immunity does not apply. *Skop v. City of Atlanta,* 485 F.3d 1130, 1136-37 (11th Cir. 2007).

## 2. **Plaintiffs Cannot Demonstrate a Violation of Clearly Established Law**

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). The Supreme Court has repeatedly cautioned that clearly established law may not be defined at a high level of generality and must be particularized to the facts of the case. *White v. Pauly,* 580 U.S. 73, 79 (2017). To carry their burden, Plaintiffs must show that a materially similar case has already been decided, establishing that conduct like each Defendant's was unconstitutional. *Loftus v. Clark-Moore,* 690 F.3d 1200, 1204-05 (11th Cir. 2012).

While it is clearly established in the abstract that prison officials may not be deliberately indifferent to a substantial risk of serious harm, *Farmer,* 511 U.S. at 833, no Eleventh Circuit or Supreme Court case clearly establishes that conduct like that attributed to each individual defendant here violates the Constitution. There is no controlling authority holding that a correctional officer who is one of four officials alleged in the alternative to have been involved in a housing decision (Yates), a correctional officer collectively named among staff conducting cell checks with no shift-specific allegations (Corrado, Dunn), a supervisory official alleged only to have been present when an inmate's body was discovered (Burney), correctional officers identified only in a disjunctive group allegation about housing oversight (Rankine, Hamilton), or a correctional officer whose only alleged involvement was responding to a prior incident without any role in the subsequent housing decision (Cruzado) thereby violates the Constitution. Absent a materially similar case clearly establishing unconstitutionality as to conduct like each defendant's,

14

qualified immunity must be granted. *Franklin v. Curry,* 738 F.3d 1246, 1249-51 (11th Cir. 2013); *Carter v. Galloway,* 352 F.3d at 1350.

### F.  Count II Fails as a Matter of Law

Count II purports to assert a § 1983 claim under the Fourteenth Amendment's substantive due process clause. D.E. 35, ¶¶ 53-60. This claim fails for two independent reasons. First, where a particular constitutional amendment provides an explicit textual source of protection against a particular type of government conduct, that amendment, not the more generalized notion of substantive due process, must guide the analysis. *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). Convicted prisoners' challenges to conditions of confinement, including failure-to-protect claims, are governed exclusively by the Eighth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The conduct alleged in Count II is identical to the conduct alleged in Count I. The Fourteenth Amendment claim is therefore simply a repackaging of the same allegations that fall, if at all, under the Eighth Amendment. *See McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994) *(en banc)*. Count II must be dismissed on this basis alone.

Second, to the extent Count II is asserted on behalf of Plaintiff Casey White, individually, based on alleged desecration of Cody's body, that theory requires a showing that each individual Defendant's conduct shocked the conscience. *Waddell v. Hendry Cty. Sheriff's Office,* 329 F.3d 1300, 1305-06 (11th Cir. 2003). Negligence, even gross negligence, is categorically insufficient; conduct must be so egregious and outrageous that it may fairly be said to shock the contemporary conscience. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998). Sergeant Yates is alleged in the alternative to have been one of several officials involved in a housing decision. *See* D.E. 35, ¶¶ 10, 31-32. Officer Corrado is alleged to have facilitated the housing assignment in some

unspecified way. *See id.*, ¶¶ 11, 32. Lieutenant Burney is alleged only to have been present when Cody was found. *See id.*, ¶¶ 15, 39. Sergeant Rankine and Captain Hamilton are alleged only in a disjunctive group allegation about housing oversight. *See id.*, ¶¶ 13-14, 31-32. Cruzado is alleged only to have responded to the Flash incident without any alleged role in the housing decision that placed Cody with Settle. None of this describes conduct that is brutal, intentional, or deliberately harmful toward Casey White's interest in the sanctity of his son's remains. The conclusory assertion that defendants acted with "deliberate indifference," untethered to any specific act by any of these defendants individually, cannot satisfy a standard that demands something far beyond negligence or even deliberate indifference itself. Count II must be dismissed as to all Defendants.

### G. Count III Fails Under the Florida Wrongful Death Act

Count III asserts a Florida Wrongful Death Act claim against all Individual Defendants. D.E. 35, ¶¶ 61-69. This claim fails for two (2) independent reasons.

First, all Defendants are personally immune from tort liability under Section 768.28(9)(a), Florida Statutes, which shields state officers and employees from personal liability for acts within the scope of their employment unless the conduct was committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Each named Defendant was acting within the scope of employment at all relevant times, including making housing decisions, conducting cell rounds, supervising a cellblock, responding to a report, and conducting classification assessments, which are all acts performed in the course of duties as FDOC correctional officers. Plaintiffs' use of the label "wanton and malicious" in paragraph 67 of the Amended Complaint does not satisfy this standard. A bare conclusory characterization in a pleading is insufficient to overcome Section 768.28(9)(a) immunity. *Iqbal*, 556 U.S. at 678. The Amended Complaint contains no specific factual allegations as to any named

16

Defendant that would support a finding of bad faith, malicious purpose, or wanton and willful disregard. The core wrongful conduct, specifically the failure to document Settle's prior attack, is attributed to unserved defendants, while the decision to cell Cody with Settle is attributed only to the disjunctive group of housing officials. In neither instance does the Amended Complaint allege conduct sufficient to overcome Section 768.28(9)(a) immunity.

Second, even setting aside immunity, Count III fails to state an actionable negligence claim. A plaintiff asserting a claim under the Florida Wrongful Death Act must allege duty, breach, causation, and damages as to each defendant. § 768.19, Fla. Stat. The Amended Complaint's own theory acknowledges that Settle's prior conduct was not fully documented or reported, meaning most of the named Moving Defendants may not have had access to the very information that forms the foundation of Plaintiffs' negligence theory. These gaps in the Amended Complaint's own allegations fatally undermine any plausible negligence claim against the Moving Defendants, and Count III must be dismissed.

## H. The Amended Complaint Improperly Asserts Claims Against Fictitious Doe Defendants

The Amended Complaint names eleven "Doe" defendants (Does 1-11), described generically as FDOC employees responsible for conducting rounds and cell checks on specific dates and shifts. D.E. 35, ¶¶ 19-20. Fictitious-party pleading is not permitted in this Circuit. *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010). The Eleventh Circuit has recognized a limited exception when the plaintiff's description is "so specific as to be 'at the very worst, surplusage,'" meaning the description is detailed enough to allow service of process. *Id.* (quoting *Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992)). A description encompassing many individuals at a large institution does not qualify. *Richardson,* 598 F.3d at 738 (affirming dismissal of Doe described as "Guard, Charlotte Correctional Institute"); *see also Weiland,* 792 F.3d at 1318

n.4. Here, the Doe defendants are described by shift and general function at a large state correctional institution. That description is not specific enough to allow service of process, and the Doe defendants must be dismissed.

## IV.   CONCLUSION

Plaintiffs' Amended Complaint fails to remedy the fundamental deficiencies that warranted dismissal of the original pleading. Despite the opportunity to replead, Plaintiffs have submitted a new pleading that is still an impermissible shotgun pleading; lacks the particularized factual allegations required by *Twombly* and *Iqbal*; fails to allege personal participation by the majority of named Defendants; does not overcome qualified immunity for any Defendant; asserts a Fourteenth Amendment claim foreclosed as a matter of law for convicted inmates; relies on a state-law wrongful death theory that cannot overcome personal immunity; and improperly names fictitious Doe defendants. Based upon the foregoing, Defendants respectfully request that this Court grant their Motion to Dismiss and grant any such other relief as the Court deems just and proper.

Respectfully submitted,

WHITELOCK & ASSOCIATES, P.A.
300 Southeast Thirteenth Street
Fort Lauderdale, Florida 33316
Phone No.: (954) 463-2001
Facsimile No.: (954) 463-0410
Counsel for Defendants, Yates, Corrado, Dunn, Hamilton, Rankine, Burney, and Cruzado

/s/Christopher J. Whitelock
CHRISTOPHER J. WHITELOCK
Florida Bar No. 067539
JESSALYNN R. KANTZAVELOS
Florida Bar No. 117926

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Filing electronically.

s/Christopher J. Whitelock

## SERVICE LIST

James M. Slater, Esq.
Slater Legal, PLLC
9000 Dadeland Blvd., #1500
Miami, FL 33156
e-mail: james@slater.legal

Sarah Grady, Esq.
Matthew Underwood, Esq.
David Schmutzer, Esq.
Amelia Caramadre, Esq.
Kaplan & Grady, LLC
2071 N. Southport Ave., Suite 205
Chicago, IL 60614
Email: david@kaplangrady.com
sarah@kaplangrady.com
amelia@kaplangrady.com
matthew@kaplangrady.com