**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

      Plaintiffs,

    v.

SERGEANT HERNANDEZ, *et al.*,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS YATES, CORRADO, DUNN, HAMILTON, RANKINE, BURNEY, AND CRUZADO'S MOTION TO DISMISS**

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, in his individual capacity, by and through their counsel, respond in opposition to Defendants Clifton Yates, Michael Corrado, Thomas Dunn, William Hamilton, Andriana Rankine, Dennis Burney, and Jesus Cruzado's (together, the "Moving Defendants") Motion to Dismiss Plaintiffs' Amended Complaint as follows:

**INTRODUCTION**

Cody White was found dead, wrapped in a blanket and stuffed under his prison cell bunk. He had been stabbed through each of his eyes and stripped to his underwear. His wrists and ankles were bound, and a ligature was tight around his neck. By the time Defendant Dennis Burney found Cody, he had been dead for as many as three days. Cody's death was not some unforeseeable act of violence. Rather, it was the predictable culmination in a series of attacks by Cody's killer, Justin Settle—a violent, notorious prisoner with an extensive disciplinary history.

Indeed, three weeks before murdering Cody, Settle attacked a correctional officer in the dining hall and was sentenced to disciplinary confinement. Even though prison policy requires prisoners sentenced to disciplinary confinement to be celled alone, Settle was not. Just over two weeks after his attack on the officer, Settle struck again and stabbed his cellmate, Matthew Flash, repeatedly in the face.

Still, Defendants Andriana Rankine, William Hamilton, Clifton Yates, Thomas Dunn, Dennis Burney, Jesus Cruzado and Michael Corrado did not change course. Even though each Defendant knew about (1) Settle's extensive disciplinary history, (2) his attack on the correctional officer, and (3) his attack on Flash, they *still* did not cell Settle alone. Instead, they chose to place Cody with him and failed to monitor them to ensure that Cody was safe. Their disregard for Cody was a death sentence.

Within days or possibly even hours of moved into the cell, Settle killed Cody, likely with the same blade used on Flash, and stuffed him under the bunk. Cody's lifeless, mutilated body remained there until three days later—only at the urging of incarcerated individuals housed near Settle—Defendants Dunn and Burney finally checked the cell and found Cody's corpse.

This grisly sequence of events plainly states an Eighth Amendment claim against all of the Moving Defendants. They seek dismissal anyway, but none of their arguments are persuasive. They argue that Plaintiffs fail to allege each Defendant's conduct with specificity, even though Plaintiffs allege that the Defendants knew about Settle's disciplinary history and his prior attacks, they housed Settle and Cody together anyway, and then failed to monitor them, leaving Cody vulnerable to Settle's inevitable and predictable violence.

Moreover, that Eighth Amendment violation is clearly established. Binding decisions in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), followed by *Caldwell v. Warden, FCI Talladega*,

748 F.3d 1090 (11th Cir. 2014), and reaffirmed by *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), have held for decades that it violates clearly established law when a prison official knows a prisoner poses a substantial risk of harm yet fails to act.

Their remaining arguments fare no better. Plaintiffs' wrongful death claim must proceed because the same allegations amounting to an Eighth Amendment violation eviscerate any immunity Defendants might have enjoyed under state law and obviously exceeds the standard for negligence. Defendants' arguments in support of dismissal of Plaintiffs' substantive due process claim are similarly meritless: the decision to house Cody with Settle—combined with the failure to conduct cell checks—left Cody foreseeably vulnerable to being brutally murdered and mutilated in his sleep. That failure shocks the conscience.

The Court should deny Defendants' motion to dismiss.

### BACKGROUND

Justin Settle was a notorious prisoner at the Okeechobee Correctional Institution ("OCI"), having accumulated numerous disciplinary infractions over a three-year span, including infractions for battery, weapons possession, narcotics possession, and disobeying orders. Dkt. 35, Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 24. His disciplinary history was well-known to correctional staff—including all of the Moving Defendants. *Id*.

On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller, in the dining hall, pushing the officer onto a table, and then to the floor. *Id.* ¶¶ 25-26. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. *Id.* ¶ 25. Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash. *Id.* ¶ 26.

On January 27—just 17 days after Settle's attack on Sergeant Miller—Settle used a blade that he had fashioned from a light fixture in his cell to stab Flash repeatedly in the head, tricep, and cheek before bludgeoning him with a food tray. *Id.* ¶ 27. Despite knowing about Settle's attack on Flash, Defendant Cruzado took no action to protect Cody from Settle. *Id.* ¶ 29. Cruzado failed to ensure Settle was housed alone, failed to reclassify him to a higher security level, or even ensure that Settle did not have access to weapons. *Id.* Similarly, despite the obvious risk Settle posed to anyone unfortunate enough to be housed with him, Defendants Hamilton, Rankine, Yates, Corrado, and Dunn also failed to house Settle alone. *Id.* ¶¶ 30-33. Instead, three days after Settle's attack on Flash, Defendants Hamilton, Yates, Burney, Corrado, Rankine, and Dunn decided to place Settle in a cell with Cody White—failing to even confiscate the weapon Settle had used to attack Flash. *Id.* ¶¶ 29, 31-33.

Defendants Dunn, Burney, and Yates were assigned to conduct cell checks and to monitor prisoners in the unit where Cody and Settle were housed together. *Id.* ¶¶ 36, 39. These Defendants also knew that Settle had attacked Sergeant Miller and that Settle had stabbed his prior cellmate just days earlier. *Id.* ¶ 32. And thus, they knew that Settle was a danger to any individual he was assigned to be housed with—including Cody. *Id.* Yet no one took any action to separate Cody and Settle. *Id.* ¶ 33. To the contrary, charged with conducting cell checks or monitoring to ensure the safety of the incarcerated individuals under their care, Defendants Dunn, Burney, and Yates failed to conduct their cell checks or conducted them with extreme indifference. *Id.* ¶¶ 36, 39.

Sometime between January 31 and February 3, just a few days (or even a single day) after being celled with Cody, the predictable unfolded: Settle brutally murdered Cody in his sleep. *Id.* ¶ 34. Likely with the same weapon he had used just days earlier, Settle stabbed Cody through each of his eyes, strangled him with a piece of cloth, bound Cody's hands and feet, and stuffed him

facedown underneath the lower bunk of his cell. *Id.* ¶¶ 34-35, 40. Cody's body was so badly beaten that there was significant discoloration on his chest, thighs, and arms along with swelling on Cody's eye. *Id.* ¶ 40. There was also a notable indentation in Cody's skull. *Id.*

Cody lay dead underneath his bunk for as many as three days. *Id.* ¶¶ 1, 34. Individuals housed near Cody and Settle realized they had not seen Cody for some time, and matters grew more concerning once those individuals saw Settle wearing Cody's accessories. *Id.* ¶ 39. Defendants Dunn and Burney were responsible for supervising meal pass and monitoring prisoners in Cody's cellblock on the afternoon of February 3. *Id.* ¶ 39. Neither took any action to check whether Cody was there or alive until other prisoners urged Defendant Dunn to check on Cody. *Id.* When he and Defendant Burney did, they found Cody's lifeless body under the cell bunk. *Id.* ¶¶ 39-40. When they pulled Cody out, they found him wearing only underwear; his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another piece of cloth was tied around his chest. *Id.* ¶ 40. A piece of a towel had been shoved in Cody's mouth and was saturated with blood. *Id.* Defendant Hamilton, a captain at OCI, was terminated from his position at OCI following Cody's murder. *Id.* ¶ 42.

## LEGAL STANDARD

A motion to dismiss must be denied if the plaintiff alleges "sufficient facts to state a claim for relief that is 'plausible on its face.'" *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024)). In ruling on a motion to dismiss, the Court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (second alteration in original) (quoting *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018)). While the defense of qualified immunity may be "raised and considered on a motion to

5

dismiss," it "is typically addressed at the summary judgment stage of a case." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## ARGUMENT

**I.      The Moving Defendants Were Deliberately Indifferent to the Threat Settle Posed to Cody**

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee" prisoners' safety. *Bowen*, 826 F.3d at 1319 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes protecting "prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 832). To make out a failure to protect claim, a plaintiff must plausibly allege defendants' deliberate indifference, which "has a subjective and an objective component." *Id.* at 1320. A plaintiff must show both that a defendant (1) actually knew that a prisoner "faced a substantial risk of serious harm" and (2) "that the defendant disregarded that known risk" by failing to respond reasonably. *Id.*

Here, Plaintiffs satisfy both prongs of their failure-to-protect claim. Settle was obviously a substantial threat—to staff and cellmates alike, and by failing to separate Settle from other prisoners, housing him with Cody, and failing to monitor them in the cell, Defendants plainly subjected Cody to a substantial risk of harm. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (prisoner "with history of violent outbursts and mental instability" who "was in the midst of a violent schizophrenic outrage" who murdered prisoner in his housing unit posed a substantial risk, and failing to monitor them was not a reasonable response).

Plaintiffs also sufficiently allege the subjective prong of the deliberate-indifference claim. Indeed, they allege that the Moving Defendants knew about Settle's extensive disciplinary history; his attack on Sergeant Miller; his violent attack on his prior cellmate, Matthew Flash, mere days before murdering Cody; and that Settle was supposed to be celled alone. Am. Compl. ¶¶ 2-3, 30-

6

33, 36, 39, 46, 48-49; *see also Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016) (holding subjective prong satisfied where defendants "knew *specifically* that [assailant] had committed a 'High–Assault' against his previous cellmate"); *Cottone*, 326 F.3d at 1358 (holding defendants "were aware of the substantial risk of serious harm" based on prisoner's "violent, schizophrenic outbursts which occurred prior to the murder"); *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005) (policy violations "provide circumstantial evidence" that a prison official "knew of a substantial risk of serious harm").

The Moving Defendants' suggestions to the contrary fall short. For instance, they argue that because Defendant Cruzado did not document Settle's attack on Flash, the remaining Defendants necessarily lacked subjective awareness of the risk Settle posed. Dkt. 38 (Defendants' Motion to Dismiss) at 11. But that fails to take Plaintiffs' allegations as true and draw all reasonable inferences in their favor. Just because Cruzado (irresponsibly) failed to document Settle's attack on Flash does not mean that the remaining Defendants did not know about the attack. To the contrary, Plaintiffs allege that all of the Moving Defendants knew about Settle's attack on Flash, as well as his prior attack on Officer Miller. Am. Compl. ¶¶ 2-3, 24, 32. What is more, despite that same knowledge, Defendants Hamilton, Rankine, and Yates oversaw housing decisions and placements. *Id.* ¶ 31. It is thus clear from Plaintiffs' allegations that these Defendants were aware of both prior attacks yet decided to put Cody in Settle's cell anyway. Defendants Corrado and Dunn were similarly aware of Settle's attack on Flash given their role in placing Cody as Flash's replacement in Settle's cell. *Id.* ¶ 32. Those allegations are more than sufficient at this stage of the proceedings. *See Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1386 (11th Cir. 2010) (requiring a plaintiff to "provide enough factual material to raise a reasonable inference" of liability and "thus a plausible claim").

Defendants also argue that the allegations against Dunn, Burney, and Yates fail to allege "legal disregard." Dkt. 38 at 11. But again, Plaintiffs have expressly alleged that Dunn and Yates knew about Settle's attacks and that Cody therefore faced a substantial risk of harm by being forced to share a cell with him. Am. Compl. ¶¶ 29, 32. And despite being assigned to monitor Cody and Settle's cell at regular intervals, Dunn and Yates took no action to protect Cody from the inevitable attack that occurred, either by failing to even complete the cell checks they were assigned to conduct or doing nothing when they conducted them. *Id.* ¶¶ 36, 39; *see also Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Similarly, Plaintiffs have alleged that Defendant Burney's assignment on February 3 required him to monitor Cody's housing unit—an assignment which, at the barest minimum, required him to confirm that the prisoners housed on the unit were at least *alive*. Am. Compl. ¶ 39. Yet it is reasonable to infer that Burney let hours go by before, at the urging of other prisoners, he finally went to check on Cody—who by that time was dead. *Id*. That he did not act sooner is plain evidence of deliberate indifference. *See Valderrama v. Rousseau*, 780 F.3d 1108, 1121 (11th Cir. 2015) ("[W]hen officers intentionally delay seeking treatment for a life-threatening injury, they act with deliberate indifference.").

The Moving Defendants also take issue with Plaintiffs' allegations about their collective knowledge. Dkt. 38 at 4, 6. But such allegations are plainly permissible. *See Turner v. Dunn*, 799 F. Supp. 3d 1208, 1224 (M.D. Ala. 2025) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions"). And despite Defendants' conclusory arguments to the contrary, Plaintiffs' allegations about what Defendants knew are highly specific. To reiterate, Plaintiffs allege that (1)

8

Settle's extensive disciplinary history was "well-known" to OCI "correctional staff," Am. Compl. at ¶ 24, (2) that all of the "Defendants knew that Settle had attacked [Sergeant] Miller and stabbed his cellmate" in the days before being placed with Cody, and that (3) "[d]espite this knowledge," Defendants Yates, Dunn, Rankine, Corrado, and Hamilton all actively participated in placing Cody in a cell with Settle. *Id.* ¶¶ 2-3, 30-33. That is more than sufficient at this stage to establish Defendants' knowledge and disregard of the substantial risk of harm Settle posed to Cody. *Bowen*, 826 F.3d at 1324 (allegations that defendants were "*actually aware* of a substantial and seemingly conspicuous risk posed to Mr. Bowen by allowing him to remain in the small cell with Merkerson" was not a "mere recitation of the legal elements of the administrator's Eighth Amendment claim"). Defendants' suggestion that Plaintiffs must plead the *source* of their knowledge goes far beyond what Rule 8 demands. *See, e.g.*, Dkt. 38 at 7 ("There is no allegation of how Corrado learned of Settle's history."). Additionally, despite their knowledge of Settle's recent violent behavior, Defendants Yates, Dunn and Burney abdicated their responsibility in conducting cell checks, leaving Cody vulnerable to Settle's attack and leaving his dead body hidden under his bunk for days. Am. Compl. ¶¶ 36, 39-40; *see Cottone*, 326 F.3d 1358 (finding guards acted unreasonably when they failed to monitor cellmates knowing of one's violence and instability).

Defendants' reliance on *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003) is misplaced. There, the court granted summary judgment (after discovery) where a prisoner was acting in a "generally . . . disorderly manner" and the plaintiff complained to officers that the prisoner was "acting crazy and planned on faking a hanging" "one way or another." *Id.* at 1348. Those facts are in stark contrast to the allegations here—at the pleading stage—involving two violent attacks within a month, including an attack on Flash three days before Cody's murder. Am. Compl. ¶¶ 25, 27, 32-35.

Defendants also argue that Plaintiffs' allegations about causation are insufficient—and that Plaintiffs fail to plead Defendants' personal participation in the alleged constitutional deprivation. Dkt. 38 at 12-13. Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). To determine whether a defendant caused an Eighth Amendment violation, the Court considers whether: the defendant (1) "'had the means substantially to improve'" the prisoner's safety, (2) "knew that the actions he undertook would be insufficient to provide [the prisoner] with reasonable protection from violence," and (3) had alternative means "available to him which he nevertheless disregarded." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (quoting *LaMarca*, 995 F.2d at 1539). It is typically for a factfinder to decide based on the totality of the evidence. *See, e.g.*, *Jackson v. Stevens*, 694 F. Supp. 2d 1334, 1336 (M.D. Ga. 2010) ("The presence of the requisite causation in a case brought under 42 U.S.C. § 1983 is normally a question of fact for the jury.").

Here, Plaintiffs sufficiently allege causation. To start, Defendant Cruzado knew of Settle's attack on Flash yet did not document it—an act that could have triggered Settle to properly be celled alone, thus saving Cody's life. Am. Compl. ¶ 28. Moreover, the remaining Defendants were aware of Settle's prior attacks, yet proceeded to cell Cody and Settle together, despite Settle's clear risk to any cellmate and the fact that policy mandated Settle be celled alone. *Id.* ¶¶ 2-3, 24, 26, 30, 31-33, 36, 46-48, 50, 56; *see also Rodriguez*, 508 F.3d at 623 (plaintiff established causal link where defendant failed to follow protocol of placing threatened prisoner in administrative segregation). And equipped with knowledge of Settle's prior acts, Defendants Dunn and Yates either utterly failed to conduct the cell checks that could have intervened on the attack, or did so with such indifference that they did not realize for days that Cody was dead. *Id.* ¶ 36. Burney—

armed with the same knowledge and responsible for supervising and monitoring prisoners in Cody's cellblock during meal pass—similarly took no action until it was too late, and he was pulling Cody's body out from under the bunk. *Id.* ¶ 39; *see also Cottone*, 326 F.3d at 1358–59 ("According to the plaintiffs' amended complaint, neither [defendant] was monitoring the inmates at all during the time either of Charles's violent schizophrenic outburst prior to the murder."). Like in *Rodriguez* and *Cottone*, Plaintiffs' Amended Complaint asserts facts sufficient to establish causation, and Defendants' argument must be rejected.

The Moving Defendants also argue, in passing, that to the extent Plaintiffs intend to assert supervisory liability claims, those should be dismissed. Dkt. 38 at 9-10. But as they acknowledge, supervisory liability lies "when the supervisor personally participates in the alleged unconstitutional conduct." *Cottone*, 326 F.3d at 1360. Here, as described above, each of the Moving Defendants—including the supervisors—personally participated in failing to protect Cody from Settle. Their argument on this score should be rejected.

Defendants also argue that, at this early juncture in the litigation, Plaintiffs' allegations in the alternative are somehow impermissible. *See* Dkt. 35 at 7 (asserting that allegations in the alternative "make[] plain that Plaintiffs do not actually know whether Sergeant Yates made the housing decision at all"); *id.* at 8 (characterizing Plaintiffs' "disjunctive framing" as "fatal" to their claims). That argument is meritless. Rule 8(d)(2) expressly permits Plaintiffs to set out alternative "statements of a claim." *See, e.g.*, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability.").

In sum, Plaintiffs have plausibly alleged Defendants failed to protect Cody in violation of the Eighth Amendment.

11

II. **It Violates Clearly Established Law When a Correctional Official Knows a Prisoner Poses a Substantial Risk of Serious Harm to Another Yet Fails to Act**

The Moving Defendants argue they are entitled to qualified immunity. Because Plaintiffs squarely allege a clearly established constitutional violation, that argument should be rejected.

Qualified immunity "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003)). After defendants make the initial showing that they were acting in the scope of their discretionary authority, the burden shifts to the plaintiffs to show (1) the defendants' "conduct violated a constitutional right," and (2) that "the right was clearly established."[1] *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)).

To determine if "a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he [or she] confronted.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (quoting *Cottone*, 326 F.3d at 1359); *see also Foster v. Echols Cnty. Sch. Dist.*, No. 24-12144, __ F.4th __, 2026 WL 759056, at *1 (11th Cir. Mar. 18, 2026) ("Qualified immunity asks whether officials were on notice that their alleged conduct was unlawful—not whether they could be sued for it."). To make that determination, the Court looks to "decisions of the Supreme Court" and "the Eleventh

---

[1] The Eleventh Circuit assigns a plaintiff the burden to disprove that the defendants are entitled to qualified immunity. Plaintiffs preserve the right to challenge this Circuit's burden framework, which is not justified by any federal statute, rule of civil procedure, or the common law, and conflicts with the law of other circuits. *See, e.g.*, *Halsey v. Pfeiffer*, 750 F.3d 273, 288 & n.11 (3d Cir. 2014).

Circuit." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1325 (11th Cir. 2016). "[T]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

In this case, the qualified-immunity analysis begins and ends with binding Eleventh Circuit precedent. For decades now, the Circuit has repeatedly held that it "violates a prisoner's Eighth Amendment right" when a correctional defendant "knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell*, 748 F.3d at 1102. That constitutional principle was clearly established, certainly no later than 2003, when the Eleventh Circuit decided *Cottone*, 326 F.3d 1352 (11th Cir. 2003), reiterated in *Caldwell*, 748 F.3d (11th Cir. 2014), and again in *Bowen*, 826 F.3d 1312 (11th Cir. 2016).

In *Cottone,* the court denied qualified immunity when, as here, the defendants were on notice of a "violent" and "mentally unstable" prisoner who "posed an objective serious risk of harm" to an individual housed in his vicinity after he "struck another inmate." 326 F.3d at 1356, 1358. As here, the defendants "did not monitor" the individuals living in the assailant's housing unit. *Id.* at 1356. As here, the victim was found unresponsive "on the floor with ligature marks around his neck" after the assailant had strangled his victim. *Id.* The Eleventh Circuit concluded that plaintiffs sufficiently alleged (1) "an objective, substantial risk of serious harm"; (2) defendants' subjective awareness of that risk; (3) defendants responded to that risk in "an objectively unreasonable manner," and (4) that defendants' "constitutional violation caused [the victim's] death." *Id.* at 1359. The court even identified "at least two factually similar cases, decided prior to the conduct in question, in which a lack of monitoring and supervision of known violent

13

inmates, which led to inmate-on-inmate violence, constituted impermissible unconstitutional conduct." *Id.* at 1359 (first citing *LaMarca v. Turner*, 995 F.2d 1526, 1536–38 (11th Cir. 1993); then citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995)).

The Eleventh Circuit reiterated *Cottone*'s holding 11 years later in *Caldwell*, 748 F.3d at 1103. As here, the defendants were on notice about a violent prisoner's risk to his cellmate after he "set their shared, locked cell on fire." *Id*. After the fire, "[a]rmed with actual, subjective knowledge of [the prisoner's] prior violence," the fire he had set, and his cellmate's "reported fear of being placed in a small, locked cell" with him, the defendants—just like the Moving Defendants here—"took no action" and the assailant attacked his cellmate, binding his hands and feet with fabric. *Id.* 1095. In denying qualified immunity, the court explained that "as expressed in *Cottone*," it was "clearly established that the defendants' total failure to investigate—or take any other action to mitigate—the substantial risk of serious harm" amounted to an Eighth Amendment violation. *Id.* at 1103.

The Eleventh Circuit reaffirmed *Cottone* and *Caldwell* again in 2016. *Bowen*, 826 F.3d at 1324 (holding that *Cottone* and *Caldwell* were "dispositive" in deciding the law was clearly established). As here, the defendants were aware of a prisoner's "violent impulses." *Id.* at 1323. Prison officials knew, as alleged here, "that double celling" the assailant with his victim violated prison policy. *Id.* And like in this case, prison officials would find the victim "brutally beaten, and unmoving." *Id.* at 1318. In denying qualified immunity at the pleadings stage, the court ruled that the complaint adequately alleged that the defendants "were *actually aware* of a substantial and seemingly conspicuous risk posed . . . by allowing [the victim] to remain in the small cell" with his killer. *Id.* at 1324.

14

Put simply, the Eleventh Circuit's trilogy of *Cottone*, *Caldwell*, and *Bowen*—with facts nearly identical to the facts alleged here—gave Defendants "all the notice they needed." *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1298 (11th Cir. 2025). Qualified immunity must be denied.

**III.  Plaintiffs Plausibly Allege a Fourteenth Amendment Substantive Due Process Violation**

Defendants incorrectly assert that Plaintiffs fail to sufficiently plead their Fourteenth Amendment substantive due process claims.[2] Dkt. 38 at 15-16. The Eleventh Circuit has held that a state actor violates an individual's substantive due process rights when the conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To clear that bar, a plaintiff must plausibly allege conduct that only falls "within the middle range"—action that exceeds negligence but is "'less than intentional conduct, such as recklessness or 'gross negligence.'" *Lewis*, 523 U.S. at 849 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 n.3 (1986)).

The Moving Defendants first argue that Plaintiffs' substantive due process claims should be dismissed because the misconduct here is encompassed exclusively by the Eighth Amendment. Dkt. 38 at 15. But that principle only applies when Plaintiffs' claims are entirely "covered by" the Eighth Amendment. *Lewis*, 523 U.S. at 843. Here, unlike with the Eighth Amendment claims (which belong to Cody White's estate), the substantive due process claim is also brought by Cody's

---

[2] Plaintiffs do not address the clearly established prong as to their substantive due process claim because Defendants do not raise qualified immunity as to that claim and thus have waived that argument. *See, e.g.*, *Edwards v. Grubbs*, 169 F.4th 1261, 1275 (11th Cir. 2026) ("Qualified immunity . . . is an affirmative defense that may be waived.").

father, Casey White, individually on his own behalf. Because the claim is not completely covered by the Eighth Amendment, it should not be dismissed on that basis.

Plaintiffs' substantive due process claim is also sufficiently pled on its merits. Armed with the knowledge that Settle had attacked an officer and stabbed his prior cellmate in the face, Defendants Rankine, Hamilton, Yates, Corrado, and Dunn nevertheless "decided to cell Cody with Settle" or "participated in or facilitated Cody's assignment as Settle's cellmate." Am. Compl. ¶ 32. Any one of them could have stopped this placement, but none did. Defendant Cruzado was aware of Settle's attack on Flash and his possession of a homemade weapon and instead of properly documenting it, disciplining Settle, and protecting others from the danger Settle posed, he did nothing. *Id.* ¶ 28. With his knowledge, he could have ensured that Settle would be housed alone and would not have access to another inevitable victim like Cody, yet he only documented the events *after* Cody was murdered. *Id.* at ¶¶ 28-29. Defendants Dunn, Burney, and Yates (all of whom also knew about Settle's violent history) took no action to separate the two or even ensure that Cody was alive in his cell, and abdicated their basic responsibility to conduct required cell checks and monitoring that could have prevented Cody's brutal murder, or at minimum, protected the sanctity of Cody's deceased body by finding it earlier. *Id.* ¶¶ 36, 39.

In other words, each Defendant had time to "make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. Their failure to do so left Cody dead at Settle's hands—stabbed through the eyes, stripped to his underwear, wrists and ankles bound, with a cloth ligature tight around his neck, remaining stuffed under his bunk for days before being discovered. *Id.* ¶¶ 40, 41. That series of events shocks the conscience. Accordingly, Plaintiffs' substantive due process claims should proceed.

16

**IV.     Plaintiffs' Wrongful Death Claim Should Proceed Because Defendants Are Not Entitled to State-Law Immunity**

Defendants argue that Plaintiffs' wrongful death claim fails because they are entitled to immunity under Florida law. Dkt. 38 at 16-17. That argument fails for the same reasons as articulated with respect to Plaintiffs' Eighth Amendment failure-to-protect claim. *See supra* at 6-10.

Florida protects its officers from suit unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As the Eleventh Circuit has recognized, "[t]he federal standard for deliberate indifference amounts to recklessness, and so does the standard of 'wanton and willful' conduct under Florida law." *Turner v. Phillips*, No. 21-12370, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022) (per curiam). Those standards rise and fall together. Because Plaintiffs have sufficiently alleged Defendants' deliberate indifference, their wrongful death claim should also proceed.

**V.     Plaintiffs' Allegations are Specific and Not a Shotgun Pleading**

Defendants argue that Plaintiffs' Amended Complaint is "textbook shotgun pleading." Dkt. 38 at 6. Far from it. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 at 1323 (11th Cir. 2015). Plaintiffs' Amended Complaint is succinct and gives the Moving Defendants ample notice of the claims against them. Fed. R. Civ. P. 8(a)(2) (requiring a complaint that states a claim for relief to contain a short and plain statement of the claim showing that the pleader is entitled to relief").

17

Defendants first criticize Plaintiffs for incorporating their allegations by reference before introducing their claims. Dkt. 38 at 6. But what the Eleventh Circuit forbids is a complaint styled like a Russian doll—where each count incorporates by reference the allegations of *all* prior counts, "leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Weiland*, 792 F.3d at 1324 (alteration in original). That is simply not what Plaintiffs' Amended Complaint does. Rather, Plaintiffs' Amended Complaint incorporates just the pre-count allegations into each count. That is permitted. *Id.* ("re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading . . . [b]ut it is not").

Defendants also take issue with the Amended Complaint's references to the Defendants as a collective. But again, such pleading is squarely permitted. "The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Unlike the allegations here, the Eleventh Circuit frowns upon allegations "where no specific defendants are named," not ones where "*all* the defendants are explicitly named, and the allegations apply to all of them." *Turner*, 799 F. Supp. 3d at 1224 (emphasis added) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions" as "a dispute over whether the allegations are true, not whether they are comprehensible"). Put differently, Defendants attempt to drum up a "factual dispute" about the knowledge that the Moving Defendants had "dressed up as a procedural one." *Brown v. Dunn*, 760 F. Supp. 3d 1326, 1344 (M.D. Ala. 2024). The Court should reject that argument.

Defendants also contend that Plaintiffs' Amended Complaint lacks specificity with respect to the misconduct alleged against the Moving Defendants. Once again, their argument misses the mark. The allegations against each Defendant are clear. Each knew of Settle's violent history. Amended Compl. ¶¶ 2-3, 24, 31, 32, 46-48, 50, 56. Defendants Yates, Dunn, Rankine, Hamilton, and Corrado decided to house Cody with Settle despite that knowledge, and then Defendants Dunn, Yates, and Burney failed to conduct their cell checks and monitoring to ensure his safety and intervene on the deadly coupling. *Id.* ¶¶ 31-33, 36, 39, 49. And Defendant Cruzado was aware of Settle's attack on Flash yet did not document it, did not discipline Settle, nor took any other action to protect Cody and other prisoners from Settle. *Id.* ¶¶ 28-29; *see also Bowen*, 826 F.3d at 1323 (reversing dismissal where plaintiff alleged defendant officers "*knew* the troubling details of [prisoner's] severe mental condition; they *knew* of his recent assault against his cellmate; and they *knew* that, under the [prison guidelines], he should have been housed alone"). Plaintiffs' pleadings satisfy Rule 8 and are sufficient pursuant to this Circuit's standards.

## VI.     Plaintiffs' Claims Against the Unidentified Defendants Should Proceed

As a final matter, Defendants argue that Plaintiffs' claims against the unidentified Doe Defendants should be dismissed. But Defendants do not have standing to seek dismissal against the defendants whom they do not represent. *See Healthsmart Benefit Sols., Inc. v. Interwest Ins. Servs., Inc.*, No. 16-cv-00144, 2016 WL 4096704, at *4 (E.D. Cal. Aug. 1, 2016) ("A defendant has no standing to seek dismissal on the behalf of nonmoving defendants."); *Whittaker v. Morgan State Univ.*, 10-cv-3370, 2011 WL 1099266, at *1 (D. Md. Mar. 21, 2011) (university failed to "explain how it has standing to seek dismissal of other, unrepresented defendants").

Even if Defendants had standing (which they do not), their arguments on this score should still be rejected. "As a general matter, fictitious-party pleading is not permitted in federal court." *Est. of West v. Smith*, 9 F.4th 1361, 1368 (11th Cir. 2021) (quoting *Richardson v. Johnson*, 598

19

F.3d 734, 738 (11th Cir. 2010)). But the Eleventh Circuit has carved out an exception when a plaintiff's description of the fictitious defendant "is so specific as to be 'at the very worst, surplusage.'" *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992)). As the court explained in *Dean*, "there may be times when, for one reason or another, the plaintiff is . . . unable to use a party's real name." 951 F.2d 1210 at 1215.

At this early stage, Plaintiffs have not yet been able to ascertain the identities of the Doe Defendants. But Plaintiffs understand the role that those individuals played at OCI—as the Amended Complaint alleges, these individuals were charged with the important responsibility of conducting the regular cell checks at the prison during specific shifts. The Does also include the specific individuals scheduled to conduct "Master Roster Rounds," a nightly check that requires "incarcerated individuals to show their identification cards and state their name and identification number." Am. Compl. ¶¶ 37-38. These individuals will be easily identified as soon as staff logs are obtained in discovery. In the meantime, as pled, the allegations describing the Doe Defendants' roles at OCI, are sufficient for Plaintiffs to proceed with their claims against them. *See Dean*, 951 F.2d at 1215–16 (providing "the driver of an automobile" and "Chief Deputy of the Jefferson County" as sufficient descriptions of fictitious defendants). The claims against the Doe Defendants should proceed.

## CONCLUSION

The Moving Defendants' motion to dismiss should be denied.

Dated: April 28, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 254-8629

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

21