**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

      Plaintiffs,

    v.

SERGEANT HERNANDEZ, *et al.*,

      Defendants.

_____/

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT CARTER AND HERNANDEZ'S MOTION TO DISMISS BY JOINDER

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, in his individual capacity, by and through their counsel, respond in opposition to Defendant Hernandez's Motion to Dismiss Plaintiffs' Amended Complaint and Defendant Carter's Motion to Dismiss Plaintiffs' Amended Complaint, Dkts. 49-50, as follows:

### INTRODUCTION

Cody White was found dead, wrapped in a blanket and stuffed under his prison cell bunk. Cody's body was mutilated: He had been stabbed through each of his eyes and stripped to his underwear. His wrists and ankles were bound, and a ligature was tight around his neck. Cody's death was not some unforeseeable act of violence. Rather, it was the predictable culmination in a series of attacks by Cody's killer, Justin Settle—a violent, notorious prisoner with an extensive disciplinary history.

Indeed, three weeks before murdering Cody, Settle attacked a correctional officer in the dining hall and was sentenced to disciplinary confinement. Even though prison policy requires

prisoners sentenced to disciplinary confinement to be celled alone, Settle was not. Just over two weeks after his attack on the officer, Settle struck again and stabbed his cellmate, Matthew Flash, repeatedly in the face. Defendant Disan Hernandez responded to that attack. Yet Hernandez took no action to ensure that Cody or any other individual would be safe from being celled with Settle. And Defendant Chandra Carter, who oversaw cell assignments—despite knowing about Settle's recent attacks—placed Cody and Settle together in a cell.

After the two were housed together, Hernandez failed to conduct his required cell checks, leaving Settle free to kill Cody, likely with the same blade Hernandez had failed to confiscate after Settle's attack on Flash. After Cody was killed, Settle stuffed him under the cell bunk. Cody's body laid there for days until he was finally found.

Just as with their co-Defendants, this sequence of events plainly states an Eighth Amendment claim against Carter and Hernandez. Both Carter and Hernandez argue they are entitled to dismissal, even though both knew about Settle's disciplinary history and his prior attacks on Miller and Flash. After responding to that attack, Hernandez failed to take any action or even confiscate the weapon. And after Carter celled Settle and Cody together, Hernandez failed to conduct his required cell checks in the housing unit. That indifference left Cody vulnerable to Settle's inevitable and predictable violence.

Carter and Hernandez's remaining arguments fare no better. Plaintiffs' wrongful death claim must proceed because the same allegations amounting to an Eighth Amendment violation eviscerate any immunity they would be entitled to under state law. And their arguments in support of dismissal of Plaintiffs' substantive due process claim are similarly meritless: Carter and Hernandez's indifference left Cody foreseeably vulnerable to being brutally murdered in his sleep and his body mutilated. As courts have held, such failures shock the conscience.

The Court should deny Defendants Carter and Hernandez's motions to dismiss.

## BACKGROUND[1]

Justin Settle was a notorious prisoner at the Okeechobee Correctional Institution ("OCI"), having accumulated numerous disciplinary infractions over a three-year span, including infractions for battery, weapons possession, narcotics possession, and disobeying orders. Dkt. 35, Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 24. His disciplinary history was well-known to correctional staff—including Defendants Chandra Carter and Disan Hernandez. *Id*.

On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller, in the dining hall, pushing the officer onto a table, and then to the floor. *Id.* ¶ 25. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. *Id.* ¶ 25. Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash. *Id.* ¶ 26.

On January 27—just 17 days after Settle's attack on Sergeant Miller—Settle used a blade that he had fashioned from a light fixture in his cell to stab Flash repeatedly in the head, tricep, and cheek before bludgeoning him with a food tray. *Id.* ¶ 27. Defendant Hernandez responded to the scene of that violent attack but took no action to discipline Settle. *Id.* ¶ 28. He did not ensure Settle would be housed alone, failed to reclassify Settle to a higher security level (even though prison policy required him to be single-celled), or even ensure that Settle did not have access to weapons. *Id.* ¶¶ 28-29. After the attack on Flash, Carter, who knew about the prior attacks and oversaw housing placements, celled Settle and Cody together. *Id.* ¶¶ 31-32. And Hernandez,

---

[1] Plaintiffs incorporate the factual background from their pending motion to dismiss opposition. *See* Dkt. 41 at 3-5.

assigned to conduct cell checks to ensure prisoner safety, outright failed to conduct his cell checks. *Id.* ¶¶ 36, 39.

Left unmonitored, sometime between January 31 and February 3, just a few days (or even a single day) after being celled with Cody, Settle brutally murdered Cody in his sleep. *Id.* ¶ 34. Likely with the same weapon he had used just days earlier, Settle stabbed Cody through each of his eyes, strangled him with a piece of cloth, bound Cody's hands and feet, and stuffed him facedown underneath the lower bunk of his cell. *Id.* ¶¶ 34-35, 40. Cody's body was so badly beaten that there was significant discoloration on his chest, thighs, and arms along with swelling on Cody's eye. *Id.* ¶ 40. There was also a notable indentation in Cody's skull. *Id.*

Cody lay dead underneath his bunk for as many as three days. *Id.* ¶¶ 1, 34. Individuals housed near Cody and Settle realized they had not seen Cody for some time, and matters grew more concerning once those individuals saw Settle wearing Cody's accessories. *Id.* ¶ 39. When Cody's body was found, he was wearing only his underwear; his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another piece of cloth was tied around his chest. *Id.* ¶ 40. A piece of a towel had been shoved in Cody's mouth and was soaked with blood. *Id.*

## LEGAL STANDARD

A motion to dismiss must be denied if the plaintiff alleges "sufficient facts to state a claim for relief that is 'plausible on its face.'" *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024)). In ruling on a motion to dismiss, the Court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (second alteration in original) (quoting *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018)). While the defense of qualified immunity may be "raised and considered on a motion to

4

dismiss," it "is typically addressed at the summary judgment stage of a case." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## ARGUMENT[2]

I.   **Defendants Carter and Hernandez Were Deliberately Indifferent to the Threat Settle Posed to Cody**

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee" prisoners' safety. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1318 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes protecting "prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 832). To make out a failure to protect claim, a plaintiff must plausibly allege defendants' deliberate indifference, which "has a subjective and an objective component." *Id.* at 1320. A plaintiff must show both that a defendant (1) actually knew that a prisoner "faced a substantial risk of serious harm" and (2) "that the defendant disregarded that known risk" by failing to respond reasonably. *Id.*

A.   **Plaintiffs State an Eighth Amendment Claim Against Defendant Carter**

Defendants argue that Plaintiffs have not stated an Eighth Amendment claim against Defendant Carter because—on Defendants' telling—Carter did not know about a substantial risk to Cody. That argument does not withstand scrutiny. Plaintiffs allege that *all* Defendants knew about Settle's attack on Officer Miller and Flash. Am. Compl. ¶¶ 2-3, 29-33, 36, 39, 46, 48-49; *see also Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016) (holding subjective prong satisfied where defendants "knew *specifically* that [assailant] had committed a 'High–Assault' against his previous cellmate"); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir.

---

[2] Plaintiffs incorporate the legal arguments from their pending motion to dismiss opposition. *See* Dkt. 41 at 6-20.

2003) (holding defendants "were aware of the substantial risk of serious harm" based on prisoner's "violent, schizophrenic outbursts which occurred prior to the murder"). Defendants disregard these collective allegations, but as Plaintiffs explained in their pending motion to dismiss opposition, Dkt. 41 at 8, such allegations about defendants' collective knowledge are permissible. *See Turner v. Dunn*, 799 F. Supp. 3d 1208, 1224 (M.D. Ala. 2025) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions").

Defendants go as far as saying that Carter did not know Cody would be celled with Settle. But that ignores the crystal-clear allegations in the complaint that Carter "either oversaw or directly made housing decisions" including about "prisoner placements" and that she decided to place Cody with Settle despite knowing about Settle's recent acts of violence. *Id.* ¶ 32. Indeed, in their motion to dismiss on behalf of Defendant Hernandez, Defendants concede that Carter played a role in housing the two together. *See* Dkt. 49 at 3 ("Every other allegation bearing on Cody's death is directed at other defendants. The housing decision is attributed to Rankine, *Carter*, Hamilton, and/or Yates, and to Corrado and Dunn as facilitators.") (emphasis added). Defendants' attempt to disclaim Carter's involvement should be rejected.

Defendants also recycle their argument that Plaintiffs' allegations in the alternative are somehow impermissible. *See* Dkt. 50 at 4 ("The either/or framing of Paragraphs 31 and 32 is independently fatal to any claim against Carter."). As previously explained, that argument is meritless. Dkt. 41 at 11. Rule 8(d)(2) expressly permits Plaintiffs to set out alternative, even contradictory "statements of a claim." *See, e.g.*, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability.").

Defendants also argue that Plaintiffs fail to allege a causal connection between Carter's misconduct and Cody's death. But as explained, Carter knew about Settle's recent violent history, yet still decided to cell Settle and Cody together. Am. Compl. ¶¶ 1-3, 24, 31-32. *See Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 623 (11th Cir. 2007) (plaintiff established causal link where defendant failed to follow protocol of placing threatened prisoner in administrative segregation). It is hard to fathom a firmer causal link than that.

As a last-ditch effort to support dismissal of Plaintiffs' Eighth Amendment claim, Carter and Hernandez—in a single paragraph each—argue that the alleged Eighth Amendment violation was not clearly established. Plaintiffs refer the Court to their prior argument on this score, showing that the law clearly established. *See* Dkt. 41 at 12-15.

### B.      Plaintiffs State an Eighth Amendment Claim Against Defendant Hernandez

Defendants' arguments as to Defendant Hernandez fare no better. They first argue that Hernandez did not know that Cody and Settle would be celled together. But Hernandez reported to Settle's attack on Flash and took no action in response—including mandatory action to ensure Settle would be celled alone—leaving Settle free to kill Cody. Moreover, Hernandez was among the officers assigned to conduct rounds in Cody's housing unit once the two were celled together. It is thus reasonable to infer that Hernandez would have seen the two celled together. *See Bowen*, 826 F.3d at 1324 (reiterating in the failure-to-protect context that a plaintiff was entitled to all reasonable inferences taken from the "considerable factual matter alleged" in the operative complaint). Hernandez's failure to take any action to separate the two was deliberate indifference—he obviously knew Settle was a threat to Cody based, among other allegations, on the very fact that he had responded to Settle's prior cell after his attack on Flash. *See Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the

7

very fact that the risk was obvious."); *Cottone*, 326 F.3d at 1358. Defendants' argument to the contrary should be rejected.

Defendants also argue that Plaintiffs have not alleged causation as to Hernandez. But Plaintiffs allege that after the attack on Flash, Hernandez failed to take any action in response to ensure that other prisoners, including Cody, were safe from Settle. That failure plainly establishes causation. The complaint alleges that Hernandez was subjectively aware that Settle was a risk to anyone he was celled with. Am. Compl. ¶¶ 28, 29, 32, 45-46, 48-50, 55-56. Particularly in the wake of Settle's attack on Flash, Hernandez's "failure to make any attempt, or take any action" and instead simply permitting Settle to be celled with Cody satisfies causation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1100 (11th Cir. 2014) (holding causation satisfied on highly similar facts at the summary-judgment stage). In short, Plaintiffs' have stated an Eighth Amendment claim against Hernandez.

## II.   Defendant Carter and Hernandez's Remaining Arguments Do Not Warrant Dismissal

Defendants Carter and Hernandez also seek dismissal of Plaintiffs' substantive due process and wrongful death claims, but for the reasons articulated in Plaintiffs' pending motion to dismiss response, those arguments should be rejected. *See* Dkt. 41 at 15-17. First, Plaintiffs' wrongful death claim must proceed for the same reason as their Eighth Amendment claim. *See* Dkt. 41 at 6-10.

Second, Defendants Carter and Hernandez argue that Plaintiffs' due process claim should be dismissed because the allegations are "temporally and causally remote from the desecration of Cody's body." Dkt. 49 at 5; Dkt. 50 at 5. That argument is wrong. Carter and Hernandez's indifference to the substantial risk that Settle posed was precisely what permitted Settle to brutally kill Cody, desecrate his body and leave him dead in the cell, undiscovered for days. Indeed,

"[m]utilation of a deceased family member's body . . . 'shocks the conscience' and 'offend[s] the community's sense of fair play and decency.'" *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) (quoting *Rochin v. Cal.*, 342 U.S. 165, 173 (1952)). That is precisely the kind of misconduct that gives rise to a substantive due process claim. The claim should proceed.

## CONCLUSION

For these reasons and the reasons in Plaintiffs' pending motion to dismiss opposition, Dkt. 41, Defendants Carter and Hernandez's motions to dismiss should be denied.

Dated: June 5, 2026

Respectfully submitted,

*/s/ James M. Slater*

James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 254-8629

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*