**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 26-CV-14004-MIDDLEBROOKS

CHRISTINNA WHITE, as Personal Representative
of the Estate of Cody Lee White, and
CASEY WHITE, individually,

      Plaintiffs,

v.


SERGEANT HERNANDEZ, SERGEANT
CLIFTON MCCLAY YATES, CORRECTIONAL
OFFICER CORRADO, CORRECTIONAL
OFFICER THOMAS DUNN, CAPTAIN
WILLIAM HAMILTON, SERGEANT
ANDRIANA RANKINE, LIEUTENANT DENNIS
BURNEY, SERGEANT CARTER, JESUS
CRUZADO, BOYKINS, and DOES 1-11,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendants' Hernandez, Yates, Corrado, Dunn, Hamilton, Rankine, Burney, Carter, and Cruzado's Motion to Dismiss Plaintiffs' Amended Complaint (DE 35), filed on April 14, 2026. (DE 38). The Motion is fully briefed. (DE 41, DE 48, 56). For the reasons stated, I will deny the Motion.

### I.    BACKGROUND

This matter arises out of the death of Cody White, an inmate held at the Okeechobee Correctional Institution (OCI). (DE 35 at ¶ 1). On February 3, 2025, White's body was found wrapped in a blanket and stuffed below the bunk in his cell. (*Id.*). White had been murdered by his cellmate, Justin Settle. (*Id.*). Officers found White, who had been stabbed through each of his eyes, with his ankles and writs bound, strips of cloth tied around his neck and chest, and a blood-soaked

piece of towel shoved into his mouth. Additionally, White had been so severely beaten that there was a noticeable indentation in his head and one of his eyes was swollen shut. (*Id.*, *Id.* at ¶ 34).

The dispute centers around Plaintiffs' allegation that Defendants failed to take action in the weeks leading up to his death. For example, on January 10, 2025, just three weeks before White was murdered, Settle had violently attacked a correctional officer. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. (*Id.* at ¶ 25). Nevertheless, Settle was celled with another individual, Matthew Flash. (*Id.* at ¶ 26). And only days before the murder, while Settle was meant to be placed in an individual cell, Settle used a homemade weapon to stab Flash multiple times. (*Id.* at ¶ 2). The Amended Complaint alleges that Defendants took no action to document, report, or discipline Settle following this attack. Specifically, Defendants Hernandez and Boykins are alleged to have responded to the attack but did not document or otherwise report the incident. (*Id.* at ¶ 28). But Defendants did not isolate Settle or have him reclassified to a higher security level. Instead, Defendants are alleged to have moved White into Settle's cell. (*Id.* at ¶ 3). The Complaint notes that there were various alternatives that could have adequately controlled for Settle's risk level. The Institutional Classification Unit could have evaluated Settle's risk level and recommended a more rigid confinement status, including "administrative confinement," placement in the "administrative management unit," or placement under "close management" – any of which would have prevented Settle from being housed with another cellmate. (*Id.* at ¶ 30).

Although Plaintiffs allege that White was found on February 3, 2025, they allege that his death occurred earlier, between January 31 and February 3, 2025. (*Id.* at ¶ 36). According to the Amended Complaint, Federal Department of Corrections (FDOC) staff tasked with conducting cell checks between those dates did not record or account for White. (*Id.*). Presently, the Amended

Complaint lists those individuals as Does 1-3 and 4-11. Does 1-3 were responsible for conducting "Master Roster Rounds" between January 31 and February 2, which are meant to occur every day at 10:30pm and require incarcerated individuals to show their identification cards and state their name and identification number. (*Id.* at ¶ 37). Defendants Does 4-11 were each responsible for conducting regular cell checks during their shifts between January 31 and February 3. (*Id.* at ¶ 38). Defendants Dunn and Burney, meanwhile, were assigned to supervise and monitor prisoners in White's cellblock. Plaintiffs allege that these two Defendants took no meaningful action until the individual housed across from White begged them to check on White, upon which they discovered his lifeless body. (*Id.* at ¶ 39).

In light of this harrowing event, Plaintiffs, White's personal representative and White's father, bring this action against the Defendants alleging deliberate indifference and the deprivation of rights under 42 U.S.C. § 1983, and wrongful death under the Florida Wrongful Death Act, §§ 768.16-27.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must … contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. V.*

*Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

### III.    DISCUSSION

#### A.  Qualified Immunity

I begin with a review Defendants' qualified immunity argument and find that a decision as to each Defendant is better adjudicated on a more developed record.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants adequately show, and Plaintiffs do not seem to contest, that they were acting in the scope of their discretionary authority, shifting the burden to Plaintiffs to demonstrate that (1) the Defendants' "conduct violated a constitutional right," and (2) that "the right was clearly established." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016)

4

(quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)). Defendants contend that each Defendant is entitled to qualified immunity because Plaintiffs cannot demonstrate a violation of clearly established law. (DE 38 at 14).

To determine if "a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he [or she] confronted.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (quoting *Cottone*, 326 F.3d at 1359). The law "does not require a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021) (quotation omitted).

Defendant suggests that Plaintiffs cannot demonstrate a violation of clearly established law because "no Eleventh Circuit or Supreme Court case clearly established that conduct like that attributed to each individual defendant here violates the Constitution." (DE 38 at 14). Specifically, Defendants narrow the facts to officials who were involved in housing decisions and oversight, explaining that no decision has found such conduct unconstitutional. (*Id.*). But we need not consider these over-particularized responsibilities of the Defendants. Instead, it is appropriate to begin with what is broadly constitutionally required of the Defendants and whether knowledge can be imputed to each of them.

The Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832, (1994) (quotation marks omitted). Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. The Eleventh Circuit has held that "[a] prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which*

5

*the official is subjectively aware,* exists and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003)) (cleaned up) (emphasis in original). The Eleventh Circuit has also explained that to establish deliberate indifference on a failure-to-protect claim, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id.* (citing *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir.2013)) (internal quotation marks omitted). Disputed here is the "subjective component of the second element," i.e., the Defendant's actual knowledge that White faced a substantial risk of serious harm.

Clearly established law bearing a strong similarity to the facts alleged here plausibly suggest that Defendants had the requisite subjective knowledge. Both Parties recognize *Bowens* as a case with substantially similar facts. In that case, inmate Terrance Bowen was beaten to death by his cellmate, Carl Merkerson, at Baldwin State Prison. Despite knowing that Merkerson was a Level III mental health inmate with severe paranoid schizophrenia, a recent history of assaulting his previous cellmate, and prison guidelines requiring that he be housed alone, prison officials allegedly placed Bowen in the same cell with him, where Merkerson fatally attacked Bowen two days later. The Eleventh Circuit reversed the district court's grant of qualified immunity because it found that the facts of the complaint sufficiently alleged that the plaintiff's Eighth Amendment right was violated. Specifically, the Court held that the defendants' subjective knowledge rose beyond mere awareness of an inmate's generally problematic nature. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016). The Defendants attempt to draw out a distinction by arguing that in *Bowens*, the defendants possessed documented, communicated,

6

individualized knowledge of the assailant's specific and recent violence against a prior cellmate. (DE 48 at 7).

Whether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rodriguez,* 508 F.3d at 617 (quoting *Farmer,* 511 U.S. at 842) (quotation marks omitted) (emphasis in original). "A prison official possesses actual, subjective knowledge of a substantial risk when the official is both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw[s] the inference." *Bowens*, 826 F. 3d at 1320, 21 (quoting *Farmer*, 511 U.S. at 837). In *Bowens*, the Eleventh Circuit highlighted several pertinent facts:

> (1) that Merkerson had been convicted of murder;
> (2) that Merkerson was a severe paranoid schizophrenic who suffered from auditory hallucinations and violent delusions involving his cellmates;
> (3) that Merkerson could become impulsive and dangerous if his mental condition decompensated;
> (4) that Merkerson was designated by the prison as a Level III mental health inmate, meaning he exhibited "a tenuous mental status that is easily overwhelmed by everyday pressures, demands and frustrations resulting in ... impulsive behavior, poor judgment, a deterioration of emotional controls, loosening of associations, delusional thinking and/or hallucinations"[22];
> (5) that, according to the population chart and the cell checklist, Merkerson had been transferred from Unit H–2 to Unit K–3, the segregation unit, for assaulting his previous cellmate;
> (6) that the prison's "Placement Guideline[s]" required mental health inmates who had committed an assault to be housed alone[23];
> (7) that Mr. Bowen was being housed in the cell with Merkerson in contradiction to the Guidelines' requirement;
> (8) that Merkerson was significantly larger than Mr. Bowen; and
> (9) that the cell that the two inmates shared was small, not observable from the outside unless the window flap was lifted, and not equipped with an alarm.

7

*Id.* at 1321.  As alleged here, Plaintiffs first note that "Settle was well known to correctional staff at OCI [and] over a three-year span, Settle accumulated numerous disciplinary infractions" including violent conduct. (DE 35 at ¶ 24). If this were Plaintiffs' sole contention, then it would not amount to more than knowledge of a generally problematic nature. But Plaintiffs offer more facts that place the officers within the requisite scope of knowledge required akin to *Bowen*. Plaintiffs allege that Settle had violently attacked a correctional officer just three weeks before White's murder *and* used a homemade weapon to stab his prior cellmate multiple times. (*Id.* at ¶¶ 25, 27). Settle's attack on correctional officer Sergeant Miller, a Defendant in this case, resulted in Settle being found guilty of battery on a correctional officer and a punishment of 90 days of disciplinary confinement. (*Id.* at ¶ 25). *See Bowen*, 826 F.3d at 1433 ("[S]ubjective knowledge may exist where a risk was 'expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it'") (quoting *Farmer*, 511 U.S. at 842–43). Like in *Bowen*, FDOC policy required Settle to be celled alone, but he was not. (*Id.* at ¶ 26). Together, these two facts suggest documented evidence of Settle's dangerous propensities. Add to this the allegation that just 17 days after his attack on Sergeant Miller, Settle stabbed his roommate using a homemade, 8-inch blade he had crafted using a piece of steel from the light fixture in his cell. (*Id.* at ¶ 27). Plaintiffs allege that Defendants Hernandez, Boykins, and Cruzado were aware of this attack, albeit the attack itself does not show up on Settle's disciplinary record. Plaintiffs do, however, allege that Defendants knew that Settle had attacked Officer Miller and then stabbed his cellmate shortly thereafter. (*Id.* at ¶ 32). This allegation "indicates a degree of specificity in the risk of harm posed" to White. *Bowen*, 826 F. 3d at 1322. Altogether, this creates the inference

8

"knowledge of a particularized threat or fear." *Id.* (quoting *Carter,* 352 F.3d at 1350 (internal citation omitted)).

Ultimately, the facts of the Amended Complaint place each of the Defendants plausibly within the scope of knowledge to suggest that they could have been aware and were able to take actions necessary to prevent his death. Additionally, the "absence of … specific allegations [regarding the exact nature of Defendants' roles] does not diminish the reasonable inferences drawn from the considerable factual matter alleged" in the Amended Complaint. *Bowen*, 826 F. 3d at 1324.

For the foregoing reasons, the motion to dismiss on qualified immunity grounds is denied at this stage. I find that the case should therefore proceed to discovery, at which point the factual record may be developed. It may be that Plaintiffs will ultimately fail to prove their allegations with respect to specific officials, and the facts alleged may be different from the facts before me following discovery. *See, e.g., Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020) (acknowledging the appropriateness of deferring decision on qualified immunity until evidence can be further developed). But for now, the Amended Complaint sufficiently alleges a violation of White's clearly established constitutional rights. Specific determinations as to each Defendant's entitlement to qualified immunity are not appropriate on the limited record before me.

### B.  Sufficiency of the Allegations

Defendants also generally challenge the sufficiency of the allegations in the Amended Complaint, raising several arguments. I address each in turn.

First, Defendants assert that the Amended Complaint improperly lumps all named Defendants and the eleven unidentified Does into a single, undifferentiated mass. (DE 38 at 2). But I find that Amended Complaint sufficiently alleges the scope of involvement necessary to overcome a motion to dismiss. The crux of Defendants' challenge is that the Plaintiffs' allegations assert knowledge

9

and participation without sufficient detail. For example, with respect to Sergeant Clifton Yates, the Amended Complaint alleges that Seargeant Yates "either oversaw or directly made housing decisions and prisoner placements." (DE 35 at ¶ 31). Likewise, Plaintiffs allege that Officer Michael Corrado "was also aware of the risk Settle posed to Cody (and other prisoners), yet participated in or facilitated Cody's assignment as Settle's cellmate." (*Id.* at ¶ 32). Defendants raise similar arguments with respect to Defendants Rankine, Dunn and Corrado. The details surrounding the Defendants' roles are better suited to disposition following discovery, but at present, each of the Defendants is adequately alleged to have had some role in connection with White's death and the nature of the allegations against them is sufficient to put them on notice.

Defendants also argue that Plaintiffs' allegations with respect to Defendant Burney fall short because Burney's involvement was limited only to discovering White. Yet, Plaintiffs' allegations contend that only upon the pleading of a neighboring cellmate did Burney check on White, and that is sufficient for purposes of the motion to dismiss. (DE 41 at 8). Accordingly, I decline to dismiss Plaintiffs' claims against Defendant Burney on this basis.

Next, Defendants challenge the sufficiency of Plaintiffs' factual allegations to state a claim. Defendants first argue that Plaintiffs fail to state an Eighth Amendment Failure-to-Protect Claim. To demonstrate deliberate indifference, Plaintiffs must show that "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cty., 601 F .3d 1152, 1158* (11th Cir. 2010). In a similar fashion to their qualified immunity arguments, Defendants contend that Plaintiffs' claims fail to demonstrate subjective knowledge or conscious disregard. But for the same reasons as discussed earlier, I find this argument unavailing. Instead, such fact-intensive issues are better suited to adjudication following discovery.

Defendants also challenge Plaintiffs' Count II. Plaintiffs' Count II alleges a deprivation of rights under the Fourteenth Amendment and is brought by both the estate and White's father. Defendants first contend that a convicted prisoner's challenge to conditions of confinement, including failure-to-protect claims, are governed exclusively by the Eighth Amendment, and Plaintiffs' allegations are a repackaging of the same allegations under Count I. Here, Plaintiffs suggest that the Eighth Amendment does not cover the entirety of the claim because it is brought by White's father. (DE 41 at 16). Defendants, in turn, suggest that to the extent this claim is asserted on behalf of White's father, individually, it requires a showing that each individual Defendant's conduct shocked the conscience. (DE 38 at 15, 16). Plaintiff Casey White, the decedent's father, brings this claim for Defendants' failure to protect his son and the sanctity of his body. (DE 35 at ¶ 54). Plaintiffs' Count II is appropriately brought by White's father in addition to the estate, and resultantly is not entirely covered by the Eighth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

As for the sufficiency of the evidence, Defendants point to each official's alleged role to suggest that it could not amount to conduct which "shocks the conscience." *See Lewis*, 523 U.S. at 846, 847 (describing the range of conduct that rises to a "cognizable level of executive abuse of power as that which shocks the conscience"). For example, Defendants suggest that Sergeant Yates's involvement in a housing decision or Captain Hamilton's housing oversight does not amount to "brutal, intentional, or harmful" conduct. (DE 38 at 15, 16). This narrow view is insufficient. Taking the facts as true, the alleged failures in handling Settle's violence are egregious. Accordingly, Plaintiffs' Fourteenth Amendment claim is plausible, and I do not find it appropriate to dismiss Plaintiffs' claims where the specific issue of each Defendant's specific conduct may be fully resolved following discovery.

Likewise, Plaintiffs' Count III alleging a claim under the Florida Wrongful Death Act also passes muster at this stage. Defendants' primary argument is that each Defendant is personally immune from tort liability under Section 768.28(9)(a), Florida Statutes, which shields state officers and employees from personal liability for acts within the scope of their employment unless the conduct was committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. (DE 38 at 16). Defendants contend that Plaintiffs have failed to show that each Defendant engaged in bad faith or wanton and willful disregard. "Although the statute does not define 'bad faith,' under section 768.28(9)(a), '[b]ad faith has been equated with the actual malice standard.'" *Parker v. Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998) (quoting *Ford v. Rowland*, 562 So. 2d 731, 734 (Fla. 5th DCA 1990)). Similarly, "malicious purpose" has been construed to mean "ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act." *Bothmann v. Harrington*, 458 So. 2d 1163, 1171 n.11 (Fla. 3d DCA 1984); *see also View more Negative TreatmentsSierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 2d DCA 2003) (explaining that section 768.28(9)(a) requires "conduct that is worse than 'gross negligence'"). Additionally, "wanton and willful conduct" standard has been construed to be the equivalent of reckless conduct. *Bredbenner v. Sullivan*, 716 F. App'x 935, 936 (11th Cir. 2018); *Rogers v. Johnson*, 481 F. Supp. 3d 1239, 1251 (N.D. Fla. 2020), aff'd sub nom. *Rogers v. Santa Rosa Cnty. Sheriff's Office*, 2021 WL 1326938 (11th Cir. April 9, 2021). Accordingly, the wanton and willful conduct standard is at least as high as the standard required to prove § 1983 deliberate indifference claims.

On the facts before me, I find that Plaintiffs have plausibly alleged that Defendants engaged in either reckless or willful disregard of White's rights, resulting in White's death. *See Hale v.*

*Tallapoosa Cnty.*, 50 F.3d 1579 (11th Cir. 1995) (noting that subjective knowledge of generalized, substantial risk of serious harm from inmate violence in conjunction with knowing ways to reduce the harm and declining to act constitutes deliberate indifference); *see also Bowen*, 826 F. 3d at 1322 (finding that officials' knowledge of a "high-assault" against previous cellmate exceeds generalized knowledge and amounts to reckless indifference). Count III therefore survives dismissal.

As it relates to the various Doe Defendants, I find Plaintiffs' pleading sufficient. "As a general matter, fictitious-party pleading is not permitted in federal court." *Est. of West v. Smith*, 9 F.4th 1361, 1368 (11th Cir. 2021) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). Yet, where a plaintiff's description of the fictitious defendant "is so specific as to be 'at the very worst, surplusage'" such pleadings are permissible. *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992)). The Doe defendants are identifiable, as they are limited to specific individuals assigned to Master Rounds and ordinary rounds at particular times on particular dates, who may be easily identified upon review of staff logs. This is as opposed to, for example, the Doe defendants in *Richardson*, where the Eleventh Circuit upheld dismissal of that plaintiff's complaint referring to a Doe simply as "Guard" and explaining that the complaint "was insufficient to identify the defendant among the many guards employed…." *Id.*

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Hernandez, Yates, Corrado, Dunn, Hamilton, Rankine, Burney, Carter, and Cruzado's Motion to Dismiss Plaintiffs' Amended Complaint (DE 38) is **DENIED**.

**SIGNED** in Chambers, at West Palm Beach, Florida this 15th day of July, 2026.

Donald M. Middlebrooks
United States District Judge

14