**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

Plaintiffs,

v.

SERGEANT HERNANDEZ, *et al.*,

Defendants.

_________________________________/

**PLAINTIFFS' RESPONSE TO DEFENDANTS ABICHET, FLORESTAL, AVERILL, FESSL, MORARU, MCCLURE, COVIL, AND SANTOS' MOTION TO DISMISS**

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, in his individual capacity, by and through their counsel, respond in opposition to Defendants Abichet, Florestal, Averill, Fessl, Moraru, McClure, Covil, and Santos' (together, "Cell-Check Defendants") Motion to Dismiss as follows:

## INTRODUCTION

The Cell-Check Defendants' motion to dismiss raises arguments that this Court has already rejected. Dkt. 68 (Order Denying Motion to Dismiss). While the operative complaint that the Cell-Check Defendants move to dismiss (Plaintiffs' Consent Second Amended Complaint, Dkt. 89) ("Compl.")) is an amended version of the complaint that this Court previously allowed to proceed, the factual allegation that the Court credited are the same allegations that are now asserted against the Cell-Check Defendants. Their motion simply rehashes what the Court has already decided. Dkt. 68. The Court should not be persuaded by the Cell-Check Defendants' attempt to repackage the same arguments that it has already denied.

Cody White was found dead, wrapped in a blanket and stuffed under his prison cell bunk. He had been stabbed through each of his eyes and stripped to his underwear. His wrists and ankles were bound, and a ligature was tight around his neck. By the time Cody was found, he had been dead for as many as three days. The Cell-Check Defendants were required to make sure Cody was alive and accounted for, and for the daily Master Roster Rounds, they were required to see Cody hold up his identification card and hear Cody state his identification number and name to them. This means that up to three days of cell checks were either not conducted at all, or conducted with such indifference that they did not notice that Cody was dead, or did notice and did not care.

Cody's death was not some unforeseeable act of violence. Rather, it was the predictable culmination in a series of attacks by Cody's killer, Justin Settle—a violent, notorious prisoner with an extensive disciplinary history. Indeed, three weeks before murdering Cody, Settle attacked a correctional officer in the dining hall and was sentenced to disciplinary confinement. Even though prison policy requires prisoners sentenced to disciplinary confinement to be celled alone, Settle was not. Just over two weeks after his attack on the officer, Settle struck again and stabbed his cellmate, Matthew Flash, repeatedly in the face.

Still, the Cell-Check Defendants, while knowing of Settle's two recent violent attacks and that Settle was to be housed alone, did not check on Cody to make sure he was safe or alive. Their disregard for Cody was a death sentence. Just a short time after being moved into Settle's cell, Settle killed Cody, possibly with the same blade used on Flash, and stuffed him under the bunk. Cody's lifeless, mutilated body remained there for up to three days when, when at the urging of incarcerated individuals housed near Settle, Defendants Dunn and Burney finally checked the cell and found Cody's corpse.

This Court has described the event has "harrowing" when it denied Defendants Hernandez, Yates, Corrado, Dunn, Hamilton, Rankine, Burney, Carter, and Cruzado's motion to dismiss on the same facts and the same counts in July. Dkt. 68. Some of those Defendants whose motion was denied—Dunn, Hernandez, and Yates—were Cell-Check Defendants like the moving Defendants are here. Nothing in the instant motion distinguishes the moving Defendants from those whose motion the Court already denied. As in the previous motion, Defendants argue that Plaintiffs fail to meet the Eighth Amendment standard, fail to state a claim under the Fourteenth Amendment, that the Cell-Check Defendants are entitled to Qualified Immunity, and that they enjoy Sovereign Immunity under the Wrongful Death Act. These arguments fail this time for the same reasons that they failed before.

Consistent with that conclusion, as this Court previously ruled, the Eighth Amendment violations here are clearly established. The Eleventh Circuit's decisions in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), followed by *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014), and reaffirmed by *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), settled this constitutional question decades ago.

The Cell-Check Defendants' remaining arguments fare no better. Plaintiffs' wrongful death claim must proceed because the same allegations amounting to an Eighth Amendment violation eviscerate any immunity Defendants might have enjoyed under state law. Defendants' arguments in support of dismissal of Plaintiffs' substantive due process claim are similarly meritless: the failure to conduct cell checks left Cody foreseeably vulnerable to being brutally murdered and mutilated in his sleep. That failure shocks the conscience. The Defendants violation of Cody's clearly established constitutional rights defeats their qualified immunity argument.

Moreover, these Defendants appear to misunderstand Plaintiffs' allegations and the law. They argue that Plaintiffs must prove their allegations at this stage, demanding more than what Rule 8 requires. They agree that knowledge that Settle attacked Flash supports a finding of subjective awareness, but take the position that Plaintiffs haven't pled the Cell-Check Defendants' awareness, Dkt. 118 (Cell-Check Defendants' Motion to Dismiss) at 6, even though they have. They argue that Plaintiffs allege that the Cell-Check Defendants could or should have rehoused Cody, but actually Plaintiffs only allege that all these Defendants needed to do was conduct adequate cell checks to ensure Cody was safe and alive, which they utterly failed to do. The Court should deny the Cell-Check Defendants' motion to dismiss.

## BACKGROUND

Justin Settle was a notorious prisoner at the Okeechobee Correctional Institution ("OCI"), having accumulated numerous disciplinary infractions over a three-year span, including infractions for battery, weapons possession, narcotics possession, and disobeying orders. Dkt. 89 (Plaintiff's Consent Second Amended Complaint) ("Compl.") ¶ 44. His disciplinary history was well-known to correctional staff—including the Cell-Check Defendants. *Id.* ¶ 44.

On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller, in the dining hall, pushing the officer onto a table, and then to the floor. *Id.* ¶ 45. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. *Id.* Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash. *Id.* ¶ 46.

On January 27—just 17 days after Settle's attack on Sergeant Miller—Settle used a blade that he had fashioned from a light fixture in his cell to stab Flash repeatedly in the head, tricep, and cheek before bludgeoning him with a food tray. *Id.* ¶ 47.

Yet even after Settle's attack on Flash—despite the obvious risk Settle posed to anyone unfortunate enough to be housed with him—Defendants failed to house Settle alone. *Id.* ¶¶ 49-53. Instead, three days after Settle's attack on Flash, Defendants decided to place Settle in a cell with Cody White—failing to even confiscate the weapon Settle had used to attack Flash. *Id.* ¶¶ 51-54.

Defendants Abichet, Florestal, Averill, Fessl, Moraru, McClure, Covil, and Santos were assigned to conduct cell checks in the housing unit where Cody and Settle were housed between January 31 and February 3. *Id.* ¶ 56. All of these Cell-Check Defendants knew that Settle had attacked Sergeant Miller and that Settle had stabbed his prior cellmate just days earlier. *Id.* ¶¶ 52, 58. The Cell-Check Defendants also knew that Settle was supposed to be housed alone. *Id.* ¶ 56. Thus, the Cell-Check Defendants knew that Settle was a danger to anyone he was housed with—including Cody. *Id.* ¶¶ 52, 56, 58. The Cell-Check Defendants were responsible for conducting Master Roster Rounds which are supposed to occur at 10:30pm each night and require incarcerated individuals to show their identification cards and state their names and identification number. *Id.* ¶ 57. In addition to the Master Roster Rounds, the Cell-Check Defendants were required to conduct security checks every 30 minutes to visually confirm that every celled individual was alive and well. *Id.* ¶ 58. Yet, the Cell-Check Defendants failed to conduct these rounds, failed to ensure Cody was alive and safe, failed to be available of Cody sought help, and failed to respond when Cody was not accounted for during the rounds, all despite knowing that Cody was improperly celled there with Settle days after Settle stabbed Flash. *Id.*

Within hours or days after being housed together and just a few days after Settle violently attacked his prior cellmate, the predictable unfolded: Settle brutally murdered Cody in his sleep. *Id.* ¶ 54. With possibly the same knife he had used just days earlier, Settle stabbed Cody through each of his eyes, strangled him with a piece of cloth, bound Cody's hands and feet, and stuffed

him facedown underneath the lower bunk of his cell. *Id.* ¶¶ 54-55, 60. Cody's body was so badly beaten that there was significant discoloration on his chest, thighs, and arms along with swelling on Cody's eye. *Id.* ¶ 60. There was also a notable indentation in Cody's skull. *Id.*

Cody lay dead underneath his bunk for up to three days. *Id.* ¶¶ 1, 54, 59. Individuals housed near Cody and Settle realized they had not seen Cody for some time, and matters grew more concerning once those individuals saw Settle wearing Cody's jewelry. *Id.* ¶ 59. It was not until those individuals begged Defendant Dunn to check on Cody on February 3rd that his body was finally discovered. *Id.* ¶ 59. When Cody was pulled out, he was found wearing only underwear, his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another piece of cloth was tied around his chest. *Id.* ¶ 60. A piece of a towel had been shoved in Cody's mouth and was saturated with blood. *Id.*

This Court already ruled that each of Plaintiffs' claims is sufficient to proceed, including the same claims that the Cell-Check Defendants now seek to dismiss. Dkt. 68. The Court should deny their motion.

## LEGAL STANDARD

A motion to dismiss must be denied if the plaintiff alleges "sufficient facts to state a claim for relief that is 'plausible on its face.'" *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024)). In ruling on a motion to dismiss, the Court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (second alteration in original) (quoting *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018)). While the defense of qualified immunity may be "raised and considered on a

motion to dismiss," it "is typically addressed at the summary judgment stage of a case." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## ARGUMENT

### I. The Cell-Check Defendants Are Not Entitled to Qualified Immunity

The Cell-Check Defendants argue they are entitled to qualified immunity. Because Plaintiffs squarely allege a clearly established constitutional violation, that argument should be rejected.

Qualified immunity "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003)). After defendants make the initial showing that they were acting in the scope of their discretionary authority, the burden shifts to the plaintiffs to show (1) the defendants' "conduct violated a constitutional right," and (2) that "the right was clearly established."[1] *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)).

#### A. The Cell-Check Defendants Were Deliberately Indifferent to the Threat Settle Posed to Cody

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee" prisoners' safety. *Bowen*, 826 F.3d at 1319 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes protecting "prisoners from violence at the hands of other

[1] The Eleventh Circuit assigns a plaintiff the burden to disprove that the defendants are entitled to qualified immunity. Plaintiffs preserve the right to challenge this Circuit's burden framework, which is not justified by any federal statute, rule of civil procedure, or the common law, and conflicts with the law of other circuits. *See, e.g.*, *Halsey v. Pfeiffer*, 750 F.3d 273, 288 & n.11 (3d Cir. 2014).

prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 832). To make out a failure to protect claim, a plaintiff must plausibly allege Defendants' deliberate indifference, which "has a subjective and an objective component." *Id.* at 1320. A plaintiff must show both that a defendant (1) actually knew that a prisoner "faced a substantial risk of serious harm" and (2) "that the defendant disregarded that known risk" by failing to respond reasonably. *Id.*[2]

Here, Plaintiffs satisfy both prongs of their failure-to-protect claim. Settle was obviously a substantial threat—to staff and cellmates alike—and by failing to conduct cell checks and Master Roster Rounds either adequately or at all, Defendants plainly subjected Cody to a substantial risk of harm. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (prisoner "with history of violent outbursts and mental instability" who "was in the midst of a violent schizophrenic outrage" who murdered prisoner in his housing unit posed a substantial risk).

Plaintiffs also sufficiently allege the subjective prong of the deliberate-indifference claim. Indeed, Plaintiffs allege that the Cell-Check Defendants knew about Settle's extensive disciplinary history, his attack on Sergeant Miller, and the stabbing of his prior cellmate, Matthew Flash, mere days before murdering Cody. Compl. ¶¶ 44, 45, 46, 47, 52, 56, 66; *see also Bowen*, 826 F.3d at 1322 (holding subjective prong satisfied where defendants "knew *specifically* that [assailant] had committed a 'High–Assault' against his previous cellmate and that the assault had precipitated his transfer and segregation in Unit K–3"); *Cottone*, 326 F.3d at 1358 (holding defendants "were

[2] Defendants misapply the excessive force malicious and sadistic standard to their deliberate indifference analysis, citing to two excessive force cases: *Johson v. Breeden* 280 F.3rd 1308, 1321 (11th Cir. 2002) and *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Because this is not an excessive force case, the malicious and sadistic standard does not apply here. *See Wilkins*, 559 U.S. 34 ("[T]he core judicial inquiry when a prisoner alleges that *prison officers used excessive force* against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied . . . maliciously and sadistically to cause harm.") (emphasis added).

aware of the substantial risk of serious harm based on prisoner's "violent, schizophrenic outbursts which occurred prior to the murder").

Defendants make several arguments to avoid this inescapable conclusion, but none of them are persuasive. They argue, for instance, that all Plaintiffs' have alleged against the Cell-Check Defendants is that they failed to conduct cell checks which "standing alone, is ordinary negligence." Dkt. 118 at 7. To that end, Defendants cite *Goodman v. Kimbrough*, 718 F.3d 1325 (11th Cir. 2013).

But in *Goodman*, at summary judgment, there was no evidence that the defendants "harbored a subjective awareness that [the plaintiff] was in serious danger while in his cell" on the night he was attacked. 718 F.3d at 1332. By contrast, at the pleadings stage, Plaintiffs have alleged that the Cell-Check Defendants had subjective knowledge of the likelihood of the risk Settle posed to a cellmate. Compl. ¶¶ 44, 45, 46, 47, 52, 56, 66. Yet they failed to conduct the required checks. *Id.* ¶¶ 57, 58, 66. They also argue that Plaintiffs' allegations are "conclusions and unwarranted factual deductions." Dkt. 118 at 6. If Defendants' characterizations of Plaintiffs' allegations are accepted, Defendants' arguments would functionally require a plaintiff to adduce evidence at the pleadings stage. But Plaintiffs "need not prove [their] case on the pleadings" to survive a motion to dismiss. *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). They need only "provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Id.*

Defendants also argue that Plaintiffs may not allege Defendants' collective knowledge. Dkt. 118 at 6 ("There must be more pled than all knew."). But Plaintiffs' ample allegations about Defendants' collective knowledge about the danger Settle posed to Cody are plainly permissible. *See Turner v. Dunn*, 799 F. Supp. 3d 1208, 1224 (M.D. Ala. 2025) (rejecting defendants' argument

that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions"). To reiterate, Plaintiffs allege that (1) Settle's extensive disciplinary history was "well-known" to Okeechobee Correctional Institution "correctional staff," Compl. at ¶ 44, (2) that all Defendants, including the Cell-Check Defendants "knew that Settle had attacked [Sergeant] Miller and stabbed his cellmate" in the days before being placed with Cody, *id.* ¶ 52, that (3) the Cell-Check Defendants knew Cody was improperly celled with Settle days after Settle stabbed Flash, *id.* ¶ 58, and that (4) despite this knowledge, the Cell-Check Defendants failed to conduct rounds, failed to ensure Cody was alive and safe, failed to be available if Cody sought help, and failed to respond when Cody was not accounted for, *id.* That is more than sufficient at this stage to establish Defendants' knowledge and disregard of the substantial risk of harm Settle posed to Cody. *See Bowen*, 826 F.3d at 1324 (allegations that defendants were "*actually aware* of a substantial and seemingly conspicuous risk posed to Mr. Bowen by allowing him to remain in the small cell with Merkerson" was not a "mere recitation of the legal elements of the administrator's Eighth Amendment claim"); *Cottone*, 326 F.3d at 1358 (finding defendants acted objectively unreasonably based on allegations that defendants did not monitor murderer and his cellmate either during murderer's violent schizophrenic outburst that preceded him murdering his cellmate or during the murder itself). The Cell-Check Defendants themselves agree that knowledge that Settle stabbed Flash supports a showing of subjective knowledge that a substantial risk of serious harm existed but they fail to acknowledge that such knowledge has been pled. Dkt. 118 at 6. Defendants' assertion—that because no one formally reported the Flash stabbing, it must mean that they weren't aware of it—runs afoul to the pleadings that plainly allege they were aware. Compl. ¶¶ 44, 52, 58.

As this Court already explained when denying the earlier motion to dismiss, "[w]hether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence." Dkt. 68 at 8 (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citations and quotations omitted) (emphasis in original). The Court, relying on *Bowen*, correctly credited Plaintiffs' allegations that Settle had violently attacked a correctional officer just three weeks before White's murder, was sentenced to disciplinary confinement for that attack, and used a homemade weapon to stab his prior cellmate multiple times following the Miller attack and preceding Cody's placement in his cell as sufficient to establish subjective knowledge at this stage. Dkt. 68 at 8. The Court further held that the allegation that the Defendants knew that Settle attacked Officer Miller and then stabbed his cellmate shortly thereafter "indicates a degree of specificity in the risk of harm posed" to White, all together creating the inference of "knowledge of a particularized threat or fear." Dkt. 68 at 8-9 (first quoting *Bowen,* 826 F. 3d at 1322) (then quoting *Carter,* 352 F.3d at 1350 (internal citation omitted)).

To the extent that Defendants also argue that Plaintiffs' fails to allege causation, that argument fails too. Dkt. 118 at 6-7. Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). To determine whether a defendant caused an Eighth Amendment violation, the Court considers whether: the defendant (1) "'had the means substantially to improve'" the prisoner's safety, (2) "knew that the actions he undertook would be insufficient to provide [the prisoner] with reasonable protection from violence," and (3) had alternative means "available to him which he nevertheless disregarded." *Rodriguez,* 508 F.3d at 611 (quoting *LaMarca*, 995 F.2d at 1539).

The Cell-Check Defendants, armed with the knowledge of risk Settle posed to Cody and responsible for monitoring prisoners in Cody's cellblock, took no action to adequately monitor Cody's cell to ensure his safety. *Id.* ¶¶ 56-59. *See Cottone*, 326 F.3d at 1358–59 ("According to the plaintiffs' amended complaint, neither [defendant] was monitoring the inmates at all during the time either of Charles's violent schizophrenic outburst prior to the murder."). Like in *Cottone*, Plaintiffs' Complaint asserts facts sufficient to establish causation, and Defendants' argument must be rejected.

In sum, Plaintiffs have plausibly alleged Defendants failed to protect Cody in violation of the Eighth Amendment.

### B. It Violates Clearly Established Law When a Correctional Official Knows a Prisoner Poses a Substantial Risk of Serious Harm to Another, Yet Fails to Act

The next question is whether Plaintiffs' allegations amount to a clearly established constitutional violation. To determine "whether a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he [or she] confronted.'" *Caldwell*, 748 F.3d at 1102 (quoting *Cottone*, 326 F.3d at 1359); *see also Foster v. Echols Cnty. Sch. Dist.,* 169 F.4th 1291 (11th Cir. 2026) at *1 ("Qualified immunity asks whether officials were on notice that their alleged conduct was unlawful—not whether they could be sued for it."). To make that determination, the Court looks to "decisions of the Supreme Court" and "the Eleventh Circuit." *Bowen,* 826 F.3d at 1325. "[T]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

In this case, the qualified-immunity analysis begins and ends with binding Eleventh Circuit precedent. For decades now, the Circuit has repeatedly held that it "violates a prisoner's Eighth

Amendment right" when a correctional defendant "knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell*, 748 F.3d at 1102. That constitutional principle was clearly established, certainly no later than the Circuit's decision in *Cottone,* 326 F.3d 1352, reiterated in *Caldwell*, 748 F.3d, and again in *Bowen*, 826 F.3d 1312.

In *Cottone* the court denied qualified immunity when, as here, the defendants were on notice of a "violent" and "mentally unstable" prisoner who "posed an objective serious risk of harm" to an individual housed in his vicinity after he "struck another inmate." 326 F.3d at 1356, 1358. As here, the defendants "did not monitor" the individuals living in the assailant's housing unit. *Id.* at 1356. As here, the victim was found unresponsive "on the floor with ligature marks around his neck" after the assailant had strangled his victim. *Id.* The Eleventh Circuit concluded that plaintiffs sufficiently alleged (1) "an objective, substantial risk of serious harm"; (2) defendants' subjective awareness of that risk; (3) defendants responded to that risk in "an objectively unreasonable manner," and (4) defendants' "constitutional violation caused [the victim's] death." *Id.* at 1359. The court even identified "at least two factually similar cases, decided prior to the conduct in question, in which a lack of monitoring and supervision of known violent inmates, which led to inmate-on-inmate violence, constituted impermissible unconstitutional conduct." *Id.* at 1359 (first citing *LaMarca v. Turner*, 995 F.2d 1526, 1536–38 (11th Cir. 1993); (then citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995)).

The Eleventh Circuit reiterated *Cottone*'s holding in *Caldwell*, 748 F.3d at 1103. As here, the defendants were on notice about a violent prisoner's risk to his cellmate after he "set their shared, locked cell on fire." *Id.* After the fire, "[a]rmed with actual, subjective knowledge of [the prisoner's] prior violence," the fire he had set, and his cellmate's "reported fear of being placed in

a small, locked cell" with him, the defendants"—just like the Cell-Check Defendants—"took no action" and the assailant attacked his cellmate, binding his hands and feet with fabric. *Id.* 1095. In denying qualified immunity, the court explained that "as expressed in *Cottone*," it was "clearly established that the defendants' total failure to investigate—or take any other action to mitigate—the substantial risk of serious harm" amounted to an Eighth Amendment violation. *Id.* at 1103.

The Eleventh Circuit reaffirmed *Cottone* and *Caldwell* in *Bowen*. 826 F.3d at 1324 (holding that *Cottone* and *Caldwell* were "dispositive" in deciding the law was clearly established). As here, the defendants were aware of a prisoner's "violent impulses." *Id.* at 1323. Prison officials knew, as alleged here, "that double celling" the assailant with his victim violated prison policy. *Id.* And like in this case, prison officials would find the victim "brutally beaten, and unmoving." *Id.* at 1318. In denying qualified immunity at the pleadings stage, the court ruled that the complaint adequately alleged that the defendants "were *actually aware* of a substantial and seemingly conspicuous risk posed . . . by allowing [the victim] to remain in the small cell" with his killer. *Id.* at 1324.

Put simply, the Eleventh Circuit's trilogy of *Cottone*, *Caldwell*, and *Bowen*—with facts nearly identical to the facts alleged here—gave Defendants "all the notice they needed." *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1298 (11th Cir. 2025). Qualified immunity must be denied.

This Court found the same allegations that are present in Plaintiffs' Consent Second Amended Complaint sufficient to place "each Defendant plausibly within the scope of knowledge to suggest they could have been aware and were able to take actions necessary to prevent his death." Dkt. 68 at 9.

## II. Plaintiffs Plausibly Allege a Fourteenth Amendment Substantive Due Process Violation

Defendants incorrectly assert that Plaintiffs fail to sufficiently plead their Fourteenth Amendment substantive due process claim. Dkt. 118 at 8-9. A state actor violates substantive due process when the conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To clear that bar, a plaintiff must plausibly allege conduct that only falls "within the middle range"—action that exceeds negligence but is "'less than intentional conduct, such as recklessness or 'gross negligence.'" *Lewis*, 523 U.S. at 849 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 n.3 (1986)).

The Cell-Check Defendants also argue that Plaintiff Casey White, Cody's father, does not have standing to bring this claim individually. This Court has already ruled that Mr. White does have standing to bring this claim against Defendants for their failure to protect his son and the sanctity of his body, and that this claim is therefore not entirely covered by the Eighth Amendment. Dkt. 68 at 11.

Here, Plaintiffs plausibly allege a substantive due process violation against the Cell-Check Defendants. Armed with the knowledge that Settle attacked an officer, stabbed his prior cellmate, and was housed in Disciplinary Confinement where he was supposed to be celled alone, Defendants Abichet, Florestal, Fessl, Covil, Averill, Moraru, and Santos failed to do the bare minimum—ensure Cody's presence and safety during cell checks. *Id.* ¶ 58. For the Cell-Check Defendants responsible for conducting Master Roster Rounds specifically, they failed to ask Cody to show his ID card and state his name and ID number. *Id.* ¶ 57 For up to three days, these Defendants knew of their responsibilities to conduct cell checks and knew of the risk that Settle posed to a cellmate, and each made the decision to ignore their responsibilities and disregard the danger Cody was in. In other words, each Defendant had time to "make unhurried judgments, upon

the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. Their failure to do so left Cody dead at Settle's hands—stabbed through the eyes, stripped to his underwear, wrists and ankles bound, with a cloth ligature tight around his neck. *Id.* ¶ 60. That series of events shocks the conscience. Accordingly, Plaintiffs' substantive due process claim should proceed, as the Court has already ruled for other Cell Checking Defendant, including Defendants Dunn, Yates, and Hernandez, based on the same facts. Dkt. 68 (finding the "alleged failures in handling Settle's violence are egregious" and allowing Plaintiffs' Fourteenth Amendment claims to proceed).

## III. Plaintiffs' Wrongful Death Claim Should Proceed Because Defendants Are Not Entitled to State-Law Immunity

Defendants argue that Plaintiffs' wrongful death claim fails because they are entitled to immunity under Florida law. Dkt. 118 at 13. That argument fails for the same reasons as articulated with respect to Plaintiff's Eighth Amendment failure-to-protect claim. *See supra* pp. 7-11.

Florida protects its officers from suit unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As the Eleventh Circuit has recognized, "[t]he federal standard for deliberate indifference amounts to recklessness, and so does the standard of 'wanton and willful' conduct under Florida law." *Turner v. Phillips*, No. 21-12370, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022) (per curiam). Those standards rise and fall together. Because Plaintiffs have sufficiently alleged Defendants' deliberate indifference, as argued above, their wrongful death claim should also proceed as it did for Defendants Dunn, Yates, and Hernandez. Dkt. 68 at 12.

## CONCLUSION

Defendants Abichet, Florestal, Averill, Fessl, Moraru, McClure, Covil, and Santos' motion to dismiss should be denied.

Dated: November 3, 2026

Respectfully submitted,

*/s/ James M. Slater*

James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
Tel. (305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 254-8629

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*