IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 26-cv-14004 DMM

CHRISTINA WHITE, as
Personal Representative of the Estate of
Cody Lee White and CASEY WHITE,
individually.

Plaintiffs,

v.

CLIFTON MCCLAY YATES, et al.

Defendants.
_______________________________________________/

**REPLY OF EMMANUEL ABICHET, JOCELYN FLORESTAL, DANIEL AVERILL, MICHAEL FESSL, BOGDAN MORARU, LAWRENCE DUGAN MCCLURE, ERIC COVIL, and JAMES SANTOS TO THE RESPONSE OF PLAINTIFFS TO THEIR MOTION TO DISMISS [DE 145] [1]**

Defendants, Emanuel Abichet, Jocelyn Florestal, Daniel Averill, Michael Fessl, Bogdan Moraru, Lawrence Dugan McClure, Eric Covil, and James Santos, collectively hereinafter referred to as "Cell Checkers," pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of this Court, through their undersigned counsel, file this their Reply Memorandum of Law to Plaintiff's Response to their Motion to Dismiss the Second Amended Complaint [DE 144] in further support for the granting of their Motion to Dismiss [DE 118] and say as follows:

1. The instant case arises from the death of Cody Lee White ("Decedent"), who was an inmate at Okeechobee Correctional Institution. The death occurred at the hands of a fellow inmate, Justin Settle ("Settle"). Plaintiffs have sued Cell Checkers, who are described collectively as

[1] All emphasis is ours unless the contrary is indicated.

individuals who had some responsibility to check cells periodically, pursuant to 42 U.S.C. § 1983 and under Florida's Wrongful Death Statute.

2. Cell Checkers moved to dismiss the Second Amended Complaint ("SAC") for the reason Plaintiffs had not pled a plausible claim for relief for their claimed Eighth Amendment and Fourteenth Amendment Rights, and Cell Checkers were entitled to qualified immunity related to the federal claims and sovereign immunity related to the claim under Florida's Wrongful Death Statute. [DE118].

3. Plaintiffs' Response in opposition to the Motion to Dismiss consists of an argument that the Court denied a prior motion to dismiss and so it should do so regarding Cell Checkers' Motion even though their operative complaint had been amended, that Cell Checkers misunderstood their allegations and the law, Cell Checkers are not entitled to qualified or sovereign immunity, because they were deliberately indifferent to the claimed threat Settle posed to Decedent, and that they alleged a Fourteenth Amendment claim. Plaintiffs do not address the argument raised by Cell Checkers related to Casey White's individual Fourteenth Amendment claim except to argue the Court has ruled Casey White had standing related to the Motion to Dismiss filed in response to their Initial Complaint. [DE 68].

4. **MEMORANDUM OF LAW SUPPORTING DISMISSAL.**

**A. INTRODUCTION:** Cell Checkers do no deny Decedent's death was a tragedy. Certainly, it was. However, pursuant to the law they deny the SAC should survive a motion to dismiss. Moreover, they should enjoy qualified and sovereign immunity based on the allegations contained in the SAC. Contrary to the arguments raised by Plaintiffs the SAC should not be denied because the Court previously denied a motion to dismiss that raised some of the same arguments.

The SAC must be judged on what is alleged in it and not what was alleged in the prior Complaint [DE1]. The claims against each individual Defendant deemed a cell checker Defendant, for qualified immunity and sovereign immunity purposes, must be considered only the individual's actions and omissions in which the particular defendant was engaged and not on a collective basis. *Swinford v. Santos*, 121 F. 4th 171, 191 (11th Cir. 2024). Moreover, there are differences between the SAC and initial Complaint. Notably more particularity in the prior complaint they alleged who was a master cell checker and who was to do rounds during certain shifts and days. Those particulars are missing in the SAC, which then denies each Defendant of knowing what the claims are against each one individually. Most respectfully the lumping together of all of the cell checkers into one group ends up with nothing but threadbare recitals of elements of a claim but not a plausible claim as to each Defendant.

**B. Legal Standard Reply.** Regarding the legal standards to be applied by the Court to determine if a complaint can withstand a motion to dismiss, the parties agree regarding what standards are applicable. The parties simply differ only whether the SAC meets the requirements to overcome the dismissal. Plaintiffs believe that they have stated true facts that are sufficient for the Court to draw an inference in their favor. Plaintiffs also believe that the qualified immunity defense is more appropriately raised on a motion for summary judgment. Cell Checkers believe the SAC is replete with allegations that are unwarranted deductions and conclusions which may not be taken as true in order to overcome their Motion to Dismiss. They also believe the decision on the immunities they would be entitled to can be and should be determined based upon the four corners of the SAC. However, there is no doubt the standards are what they are and construing them as they should the motion to dismiss should be granted.

**C. Cell Checkers are Entitled to Qualified Immunity.** Plaintiffs and Defendants also agree on what qualified immunity is intended to do and what must occur before qualified immunity should be denied. Plaintiffs believe the argument raised by Cell Checkers is that they must prove their case on the complaint. They also argue they have shown sufficient deliberate indifference. Cell Checkers are not arguing Plaintiffs must prove their case. They argue the pleading requirements are such that they must plead more than they did plead and that the analysis for qualified immunity must be made on the basis of only the individual's actions and omissions in which the particular defendant was engaged and not on a collective basis that the Plaintiffs have alleged. *Swinford*, *Id.*

Cell Checkers submit Plaintiff's SAC falls short of establishing each acted with the requisite deliberate indifference because in order to arrive at such a conclusion more is required than what was alleged in the SAC. On a collective basis they can't be judged yet that is what Plaintiffs would have the Court do. There are too many variables that apply under the circumstances here. What Plaintiff's did in this case is they obtained information as to what employees were employed at the prison and instead of trying to determine what each may have known and apply it to the issue of the death of Decedent they simply provided thread bare recitals and facts that could be deemed consistent with liability based on the cumulative aspect of the roles that were necessary to try to overcome qualified immunity. However, such stops short of the line between possibility and plausibility.

Most respectfully, what the Plaintiff's did in this case was obtain names of most if not all individuals who worked at the prison as guards and then decided to lump them all together as one and claim all had to be aware of and present on certain days in the area where the Decedent was housed and then conclude they had been deliberately indifferent by not moving the Decedent or in checking on his viability. In doing so they then concluded that because they were guards they all had

to have the obligation of checking cells at any time between January 31 and February 3, which is when they are supposing the death occurred without more. It is not fair or reasonable to put each Cell Checker into a lawsuit based on their conclusions and suppositions and make these Defendants defend themselves when the law provides they are entitled to immunity under certain circumstances. However, Plaintiffs want the Court to do so because based on a prior complaint it was able to analyze the Complaint related to those who were named defendants with the allegations and apply the same standard here. That is not what the law contemplates. In the prior complaint Plaintiffs defined who were Master Round Cell Checkers and they defined who was a cell checker on a certain date. Plaintiffs did not do so here, and they did not define when they should have actively been involved to see there was an issue whether there was a live body when the particular person was present on a certain day and time. Rather than follow Rule 11 standards that they could identify a reasonable factual basis as to each Cell Checker individually, they choose to file a complaint and make each Cell Checker culpable simply by association. That is not how qualified immunity works. *Swinford.* Each Cell Checker must be considered individually and not on the mere supposition they were a guard and hence they were deliberately indifferent because the Decedent was killed by the other cell mate. *Wade v. McDade*, 106 F.4th 1251, 1253,1258 (11th Cir. 2024)

In the instant case the subjective element of the claims for cruel and unusual punishment is what is at issue in the determination of whether Cell Checkers, based on the SAC, are entitled to qualified immunity. Due to lumping all together the Plaintiffs do not make a showing that each Cell Checker knew his conduct put the plaintiff at a substantial risk of harm, which is required. *Wade*, supra; *Farmer v. Brennan*, 511 U.S. 825 (1994). Moreover, by virtue of the lumping of all cell checkers into one category, Plaintiffs fail to demonstrate that the necessary subjective recklessness

was premised on something more than a generalized or abstract knowledge of a danger which must be shown. *McClinton v. Warden Baldwin State Prison,* 172 F.4th 1276 (11th Cir. 2026) (vacated only to delete footnote 6 in 2026 U.S.App. LEXIS 34176( 11 th Cir. Nov. 6). The SAC is devoid of sufficient factual allegations to establish that each **actually**, was aware that his own conduct—his own acts or omissions—caused a substantial risk of serious harm to the plaintiff. *Wade*.

Nothing that Plaintiffs have argued in their Response in opposition to the Motion to Dismiss negates the fact the allegations in the SAC that may be taken as true do not establish the necessary individual subjective recklessness on the part of each and every cell checker. Hence, they should be entitled to qualified immunity.

Plaintiffs also argue that the issue of whether there has been a substantial risk of harm is a fact question. However, the Rules of pleading still require a pleading that sets forth sufficient facts to establish a plausible claim, which the SAC does not. There must be something more than what has been pled to even bring into question whether there is a plausible claim to go forward due to the factual allegations not supposition that because they are in the prison there was collective knowledge. It is pure supposition to believe that.

**D. Fourteenth Amendment Claims.** Plaintiffs argue Cell Checkers misunderstood what they pled factually and what the law is. Most respectfully when it comes to the claimed Fourteenth Amendment cause of action the Plaintiffs are the ones who have a mistaken belief. They argue Cell Checkers incorrectly assert they failed to sufficiently plead their Fourteenth Amendment substantive due process claim. They then argue the standard to be applied is whether the conduct was arbitrary or conscience shocking in the constitutional sense and they did so in the Complaint based upon the allegations of the gruesome details of what occurred at the hands of the other inmate.

Plaintiffs do not address, however, the fact that the Supreme Court has made it clear that the use of the Fourteenth substantive due process clause is not to be used where there is another applicable constitutional provision. *United State v. Lanier,* 520 U.S. 259, 272, fn. 7 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The Fourteenth Amendment analysis and the applicable shock the conscience standard is only applicable where there are no other available provisions such in *Lewis*, where the claim arose due to a high-speed chase and there was no governmental custodial relationship.

The instant case is a custody case and is to be judged by the Eighth Amendment. Plaintiffs do not and cannot deny this fact. Hence, the claim for relief under the Fourteenth is not an appropriate basis for seeking relief in this case. Therefore, Count II should be dismissed for the reason it is a duplicate of Count I.

Plaintiffs' argument relating to Casey White's claim was not meaningfully addressed by Plaintiffs in their Response. They did not address the argument made by the Cell Checkers at all. They merely claimed that this Court ruled on that issue based on the prior motions to dismiss filed in relationship to the initial Complaint. However, the issues raised by Cell Checkers in their Motion related to the fact a parent does not have a right to a liberty interest in an adult child. which was not raised before in order to be considered by the Court. This Circuit has held that there is no liberty interest in an adult child as set forth in *Robertson v. Hecksel,* 420 F.3d 1254 (11th Cir. 2005). Plaintiffs have no argument to dispute this is the law. Therefore, Casey White's individual Fourteenth Amendment claim must be dismissed because he has no independent claim.

**E. Cell Checkers Are Entitled to Sovereign Immunity under Florida Law For Count III.** Plaintiffs premise their argument why sovereign immunity is not applicable in this case to the

claims against Cell Checkers for the same reasons they are not entitled to qualified immunity. The Plaintiffs argue the same reasons apply based on the case of *Turner v. Phillips,* No. 21-12370, 2022 WL 458238, at page 11 (11th Cir. 2022). *Turner* was decided prior to *Wade*, which requires the pleadings to be sufficient regarding each individual's acts, and the SAC is not. However, in *Turner,* the District Court supports the necessity of establishing requisite actual knowledge and that each must be judged on their own. In *Turner,* a number of jail staff were granted qualified and sovereign immunity. *Turner v. Phillips,* 547 F. Supp. 3d 1188 (N.D. Fla. 2021). The appeal was brought by two of the officers who were not granted immunity. These two officers had placed Turner in a cell where he had access to an extra pair of pants and bed sheets, although hours before he had tried to hang himself with a pair of pants. The District Court denied them qualified immunity because these two officers had essentially done nothing to prevent the harm even after witnessing the attempted suicide. However, other officers and a nurse claimed to have some culpability where it had been alleged they had knowledge of the dangerous propensities on the part of Turner were granted qualified immunity and sovereign immunity. The District Court made it clear quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir 2005) that absent actual knowledge of the suicidal tendencies the failure to prevent a suicide did not nor had it ever been equated with deliberate indifference. The District Court made it clear each individual had to be judged separately on the basis of what that person knows. *Turner* at 1202 footnote 19 (quoting from *Burnette v. Taylor,* 533 F.3d 1325, 1331 (11th Cir. 2008). Two of the guards were on duty when Turner committed suicide, however, the Court determined there was no evidence from which a jury could find they had actual knowledge because they had no interactions with the inmate. On appeal the Eleventh Circuit noted the statute's language might have differed from relevant federal standards but in this case of the two officers who had

knowledge made the statement that the federal standards for deliberate indifference amounted to recklessness and so then did the standard of wanton and willful conduct under Florida law quoting *Farmer.* The terms willful and wanton have been defined in Florida. Willful means intentionally, knowingly, and purposefully and wanton means with a conscious and intentional indifference to consequences and with knowledge damage is likely to be done to persons or property. *Smith v State,* 218 So. 3d 996, 998 (Fla. 2nd DCA 2017). Looking at the SAC there are no factual allegations related to Cell Checkers other than the deductions of the Plaintiff that Cell Checkers acted with the recklessness necessary to strip them of their sovereign immunity.

Applying the *Wade,* decision knowledge of an underlying risk alone does not establish deliberate indifference and that is at best all that Plaintiffs have alleged. Therefore, sovereign immunity should be accorded to them. There are no facts establishing which if any of the Cell Checkers had any interaction with the Decedent. It is not enough to claim they were cell checkers and that is what cell checkers do. It is not enough to say it was common knowledge in the prison that the perpetrating inmate was known to be a problem and claim that is sufficient to strip these officers of qualified immunity. Is a jail rumor sufficient? The answer is no based on the analysis of the District Court in *Turner*. Plaintiffs are merely concluding that there must have been knowledge of each Cell Checker because they all worked for the jail. That is not a basis for stripping the Cell Checkers from either of their immunities. It is a conclusion or unwarranted deduction to make a claim all collectively were on notice and drew the requisite inference of a serious risk of harm. Moreover, Cell Checkers did not place the two inmates together and the SAC is devoid of any factual content to establish they did or they had the power to move the two inmates.

In short, the allegations of the SAC are insufficient to establish a plausible claim for relief

to begin with, and devoid of any substantive allegations to establish the defense of sovereign immunity and qualified immunity are not available.

## CONCLUSION

It is respectfully submitted that the Plaintiffs Response in Opposition to Cell Checker's Motion to Dismiss based upon the foregoing argument and citations of law does not support a determination that their Motion to Dismiss should be denied.

Therefore, the Court should grant Cell Checkers' Motion to Dismiss.

**RESPECTFULLY SUBMITTED:**
**DUTTON LAW GROUP, P.A.**
1725 ½ E. 7th Ave.
Ybor City, Fla. 33605
(786) 871-7971
sweissenborn@duttonlawgroup.com
Service.skw@duttonlawgroup.com
By:/s/Sheridan Weissenborn
**Sheridan Weissenborn**
Fla. Bar. No: 165960

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of October, November 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served upon; James M. Slater, Esq., Slater Legal, PLLC, 9000 Dadeland Blvd. Ste. 1500, Miami, Fla. 33156 at the designated email address james@slater.legal,; to Sarah Grady Esq., Matthew Underwood, Esq. David Schmutzer, Esq., and Amelia Caramadre, Esq.,. Kaplan &Grady, LLC, 2071 N. Southport Ave, Ste. 205 Chicago, Ill 60614, at the email addresses david@kaplangrady.com sarah@kaplangrady.com, amelia@kaplangrady.com and matthew@kaplangrady.com; to Lourdes E. Wydler, Esq., Wydler Law, 1550 Madruga Ave. Ste. 400,

Coral Gables, Fla. 33146 at email address, email:lew@wydlerlaw.com and guertty@wydlerlaw.com to Christopher J. Whitelock, Esq., Jessalynn R. Kantzavelos, Esq., and David Frank, Esq., Whitelock & Associates, 300 Southeast Thirteenth Street. Fort Lauderdale, Fla. 33316, email addresses: cjw@whitelocklegal.com, jrk@whiteloclegal.com, davidfrank@whitelocklegal.com and ark@whitelocklegal.com and to to Broderick Taylor, Esq. Office of the Attorney General, Civil Litigation Division, 1300 Riverplace Blvd., Ste. 405, Jacksonville, Fla. 32207 at the email address Broderick.Taylor@myFloridalegal.com.

**RESPECTFULLY SUBMITTED:**
**DUTTON LAW GROUP, P.A.**
1725 ½ E. 7th Ave.
Ybor City, Fla. 33605
(786) 871-7971
sweissenborn@duttonlawgroup.com
Service.skw@duttonlawgroup.com
By:/s/Sheridan Weissenborn
**Sheridan Weissenborn**
Fla. Bar. No: 165960