**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

Plaintiffs,

v.

CLIFTON MCCLAY YATES, *et al.*,

Defendants.

_______________________________________/

**PLAINTIFFS' MOTION TO RECONSIDER**
**THE COURT'S DENIAL OF PLAINTIFFS' MOTION TO COMPEL**

## INTRODUCTION

On October 9, 2026, Plaintiffs moved to compel the Florida Department of Corrections ("FDC") to complete its production in response to Plaintiffs' subpoena. FDC responded to that motion, made a production, and then filed a Notice of Compliance with the Court asserting that it had fully complied with Plaintiffs' subpoena. Dkt. 130. That filing was a blatant misrepresentation to this Court. This Court denied Plaintiffs' motion to compel the next business day.

This Court's order denying Plaintiffs' motion to compel warrants reconsideration for three primary reasons. First, it is outright false that FDC's production was complete, and thus, Plaintiffs' motion was not moot. Far from it. Centrally responsive documents remain outstanding—among them, the housing-placement assessment for Cody and Settle, records sufficient to identify the officers responsible for rounds in Cody's dorm, and the witness statements referenced in FDC's own incident reports. And much of what FDC did produce is redacted or obstructed to the point of being unintelligible, including a 3,512-page document that is entirely blacked out. Ex. 1 (3,512-

Page Fully Redacted Production). In denying Plaintiffs' motion to compel, the Court ruled prematurely—while Plaintiffs' time to file a reply brief was still pending. *See* Local Rule 7.1(c)(1).

Second, the Court's factual finding—that Plaintiffs and FDC did not meet and confer—is clearly contradicted by the record. Plaintiffs conferred with FDC on July 9, July 23, August 6, and October 8, 2026. This last conferral occurred the day before Plaintiffs filed their motion to compel. FDC's response to Plaintiffs' motion to compel does not even dispute that those conferrals occurred or that they addressed the deficiencies in FDC's production that Plaintiffs raised in their motion to compel.

Third, this Court's order did not address Plaintiffs' argument in their motion to compel—that FDC's existing redactions are entirely unjustified. FDC's redactions obstruct relevant information that is plainly protected by the confidentiality and HIPAA-Qualified Protective Order that this Court entered. *See* Dkts. 54, 57, 58. Despite Plaintiffs' request, FDC never supported its redactions with a privilege log. And FDC concedes any objections were waived long ago. FDC's redactions have only become more extreme: FDC's most recent production contains a sea of black—3,512 pages of completely redacted documents. Ex. 1.

For these reasons, this Court's ruling denying Plaintiffs' motion to compel warrants reconsideration.

## BACKGROUND

### I. Plaintiffs' Serve a Subpoena on FDC, Repeatedly Confer, and Move to Compel

On April 23, 2026, Plaintiffs served a subpoena on FDC. Dkt. 107-1. The subpoena seeks documents central to Plaintiffs' claims, including relevant policies and protocols related to housing decisions; investigations and records related to Settle's attack on Matthew Flash, Cody's death, and Settle's propensity for violence; and Defendant personnel files, duty rosters, and other

documents sufficient to identify unnamed defendants and named Defendants' specific roles and histories. *Id.* The mandated return date of May 7, as identified in the subpoena, passed without any response from FDC. The 14-day deadline to object passed without a word, too. *See* Fed. R. Civ. P. 45(d)(2)(B) (providing that objections to subpoena must be served "earlier of the time specified for compliance or 14 days after the subpoena is served").

On June 15, the Court entered a confidentiality order, as well as a HIPAA-qualified protective order that extended to protecting third-party medical records. Dkts. 57-58. Around this time, Plaintiffs followed up with FDC regarding the status of the subpoena. FDC indicated that it did not need to provide responsive documents because Defendants had moved to stay discovery, pending the resolution of their motion to dismiss. Despite Plaintiffs' explanation that a pending motion to stay discovery does not stay discovery, FDC moved for a protective order and joined Defendants' pending motion to stay. Dkts. 66-67.

On July 16, the Court ruled both motions moot after denying Defendants' motions to dismiss. Dkt. 70. On the same day, Plaintiffs reached out to FDC and asked it to agree to produce responsive documents within a week of the dismissal order—with the production to occur on July 23. On July 17, *nearly three months* after service of the subpoena, FDC responded with a demand for a conferral to limit some of the discovery requests. This was the first time FDC hinted at any objection to the subpoena.

Plaintiffs and counsel for FDC conferred about FDC's response to the subpoena on four occasions before Plaintiffs moved to compel: on July 9, July 23, August 6, 2026; and October 8, 2026. These conferences took place by telephone or videoconference with FDC's counsel, Amber Kourofsky and sometimes also Kristen Lonergan. During these conferences, the parties discussed the specific requests in the subpoena, the scope and timeframe of certain requests, which

documents FDC had produced, which documents remained outstanding, and when FDC would complete its production. The purpose of each conference was to resolve FDC's failure to respond to the subpoena without Court intervention. Plaintiffs repeatedly followed up with FDC in writing between the conferences about its outstanding production, including on August 12, 14, 18, 21, and 28 and September 2, 2026. Ex. 2 (Declaration of D. Schmutzer) ¶ 9.

Plaintiffs also told FDC, in meet and confers and in writing, that they would seek Court intervention if FDC did not complete its production. On August 14, 2026, Plaintiffs wrote to FDC's counsel: "Next week, we are going to file a motion with the Court asking it to order FDOC to complete its production by 8/31." Dkt. 107-4 at 22. On September 2, Plaintiffs again wrote to FDC that if Plaintiffs did not receive "these documents by Monday 9/7, we may need to raise this issue with the court," and asked FDC for its availability to confer. *Id.* at 2.

On September 23, Plaintiffs emailed FDC to inform them that if they don't complete their production by September 30, Plaintiffs would be forced to move to compel. Plaintiffs asked FDC to confer in three separate emails on September 23, but FDC refused. FDC took the unjustifiable position that it may help itself to another few months to respond to the subpoena, stating (incorrectly) that "[d]iscovery is open until December 14, 2026 under the new order." Dkt. 107-3 at 2.

On October 8, FDC agreed to confer—for the fourth and final time. Ex. 2 ¶ 12. Plaintiffs and FDC discussed multiple requests that remained incomplete. At that time, notably, the Office of the Inspector General's report on the investigation into Cody's death—a central document in the case—had still not been produced.[1] Plaintiffs and FDC weren't able to reach resolution related

---

[1] FDC charged Plaintiffs $850 to produce the report, which Plaintiffs paid on August 17 and FDC insisted that it "could be produced upon receipt of payment." Dkt. 107-4 at 21. The

to the documents that remained outstanding during that October 8 conference, Plaintiffs moved to compel the next day. Dkt. 107.

### II. FDC Makes Two Additional, Incomplete Productions and Files a Notice Falsely Stating That Its Response to Plaintiffs' Subpoena Is Complete

On October 14, after the Parties conferred and after Plaintiffs filed their motion, FDC made an additional production of documents. But even with that production, FDC had not produced documents in response to several requests. On October 16, Plaintiffs sent FDC a letter that detailed precisely what documents remained outstanding from FDC's productions. Ex. 3 (Oct. 16, 2026 Ltr. from D. Schmutzer to A. Kourofsky). FDC has not responded to the letter.

On October 21, FDC finally produced the OIG report. Then, on October 30, FDC made an additional production consisting almost entirely of fully redacted documents then filed an inaccurate notice with the Court, asserting that "[a]ll documents and items responsive have been produced to Plaintiff's counsel." Dkt. 133.

### III. The Court Prematurely Denies Plaintiffs' Motion to Compel

The Court denied Plaintiffs' motion to compel as moot on November 2. Dkt. 142. Plaintiffs' reply to their motion to compel was due on November 3. S.D. Fla. LR. 7.1(c)(1). Plaintiffs reply would have informed the Court about the inaccuracy of FDC's Notice. The reply would also have informed the Court that FDC's other arguments, including its representation about Plaintiffs' apparent failure to confer, were also inaccurate. As Plaintiffs were preparing their reply, the Court, based on the FDC's representations in its response and notice, denied Plaintiffs' motion as moot. Dkt. 142.

---

report was not produced until two months later—after Plaintiffs' motion to compel had been filed.

## IV. Plaintiffs Promptly Confers with FDC About This Reconsideration Motion

On the same day, Plaintiffs asked Counsel for FDC to confer about Plaintiffs' intention to seek reconsideration of the Court's order. The next day, having heard nothing, counsel for Plaintiffs called Ms. Kourofsky and conferred. Ex. 4 (Nov. 3, 2026 Memorialization Email from A. Caramadre to A. Kourofsky). Plaintiffs informed Ms. Kourofsky, this time by phone, of Plaintiffs' intention to seek reconsideration. *Id.* Plaintiffs explained that there were still outstanding documents, as outlined in the October 16 letter. *Id.* Counsel for FDC stated she hadn't reviewed Plaintiffs' letter. *Id.* Plaintiffs further expressed concern that the FDC's most recent production—the one FDC claimed completed its obligation to respond to the subpoena—included heavily redacted pages, including thousands of pages that were entirely redacted. *Id.* FDC counsel stated that she applied the redactions because she believed that Plaintiffs' Requests were irrelevant and overbroad and since she waived her objections and needed to produce the documents, her solution was to produce them as fully redacted. *Id.* Ms. Kourofsky further stated she agreed with the Court's order denying Plaintiffs' motion to compel and understood Plaintiffs intended to seek reconsideration. *Id.*

This motion follows.

## LEGAL STANDARD

A party seeking reconsideration must establish two things: First, the party "must demonstrate some reason why the court should reconsider its prior decision." Second, the party "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Boulos v. Dir., U.S. DHS ICE ERO Miami Field Off.*, 832 F. Supp. 3d 1290, 1295 (S.D. Fla. 2026). Courts have identified three major bases that justify reconsideration: "(1) an

intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Id.*

## ARGUMENT

Reconsideration is warranted here for three primary reasons. First, the Court denied Plaintiffs' motion to compel without a complete understanding of the factual record, including the documents that remained outstanding, as well as the parties' extensive conferral history. *See Rolls v. Celebration Cruise Operator, Inc.*, 2015 WL 12549166, at *1 (S.D. Fla. Mar. 2, 2015) ("Defendant argues that the Court committed clear error by failing to consider facts not in dispute. The Court agrees, and must grant reconsideration."); *Haralson v. Fed. Home Loan Bank Bd.*, 678 F. Supp. 925, 926 (D.D.C. 1987) (granting reconsideration where moving party asserting that facts not previously before the Court" resulted in a ruling based on "an incomplete and inaccurate factual record"). The Court relied on FDC's notice to the Court that it had fully complied with Plaintiffs' subpoena. But that notice is a flagrant misrepresentation to the Court. The Court also ruled before Plaintiffs had the opportunity to file their reply brief and surface these issues for the Court. *See* Local Rule 7.1(c)(1) ("The movant may, within seven (7) days after service of an opposing memorandum of law, file and serve a reply memorandum in support of the motion."); *Fonteneaux v. Shell Oil Co.*, 2007 WL 7210407, at *1 (S.D. Tex. Oct. 2, 2007) (granting reconsideration where the court recognized that the plaintiff deserved a fulsome adjudication of its claim where it was "not fully briefed by either side").

Second, the Court's factual finding that the parties did not confer before Plaintiffs filed their motion is contradicted by the record. *See Pure Pools, Inc. v. Oxygen Pools, LLC*, 2020 WL 6603116, at *2 (S.D. Fla. Sept. 11, 2020) (granting reconsideration to "correct[] a factual error in" prior order).

Third, the Court failed to address arguments raised by Plaintiffs' motion—including FDC's improper redactions of its collective document productions, which has now culminated in a 3,512 page-production that was fully redacted.

**I. FDC's Notice Is a Misrepresentation to the Court**

On October 30, FDC made an additional production of documents and then filed a stunning notice with the Court, asserting that "[a]ll documents and items responsive have been produced to Plaintiff's counsel." Dkt. 133. That notice was flagrantly inaccurate. The Court proceeded to deny Plaintiffs' motion the next business day without permitting them the opportunity to address the arguments in FDC's response or FDC's inaccurate notice.

Indeed, prior to FDC's October 30 production, on October 16, Plaintiffs sent FDC's counsel a deficiency letter, cataloging the numerous outstanding responsive documents. Ex. 3. FDC has not responded to this letter.[2] The letter details numerous centrally responsive documents that remain outstanding.

For instance, FDC has not produced the housing-placement assessment conducted for Cody and Settle. That document would show what a housing-placement officer would see when deciding to place two prisoners in a cell together.[3] It shows important compatibility characteristics, including a prisoner's race, body build, the size difference between the two, whether the prisoners have violent felony convictions, and whether they have gang affiliations. It follows naturally that what the Cody-Settle assessment showed goes directly to that placement officer's subjective intent. That information is essential to Plaintiffs' failure-to-protect claim. *See, e.g.*, *Lane v. Philbin*, 835

[2] Counsel for FDC acknowledged in the meet-and-confer on this reconsideration motion on November 3 that she has not yet even reviewed the letter.

[3] Notably, Plaintiffs have received the housing assessment and placement sheet for Settle and Flash—the cellmate Settle repeatedly stabbed just days before he killed Cody. But Plaintiffs have not received the equivalent document for Settle and Cody.

F.3d 1302, 1308 (11th Cir. 2016) (explaining what prison officials "actually knew" about plaintiff's "substantial risk of injury" is essential to deliberate indifference's subjective prong).

As a second example, FDC has also not produced sufficient documents to identify the correctional officers responsible for conducting the rounds in Cody's dorm from January 31 through February 2. The failure to properly conduct rounds—and the individuals responsible for that failure—is vital to Plaintiffs' allegations in this case. They must be produced.

As a third example, FDC produced incident reports related to Cody's death. The reports indicate that there are witness statements that should be attached to the reports. Those obviously relevant statements have not been produced.

These are just a few notable examples. As indicated in the deficiency letter, there are many more responsive documents that have not been produced. Ex. 3. FDC did not cure any of these deficiencies with its October 30 production. And FDC cannot wave away its obligations to provide complete (and readable) responses to Plaintiffs' subpoena by merely declaring to the Court that it has done so. The Court should reject that notice and grant reconsideration of Plaintiffs' motion to compel because that motion was simply not moot, despite FDC's say-so to the contrary.

Yet even setting aside the glaring omissions that remain from FDC's subpoena response, the tranche of documents it produced late last week contain numerous impermissible redactions. For example, one of the productions is a 3,512-page document that is *entirely* blacked out. *See* Ex. 1.[4] Most of their last production, which FDC claims completes its response, effectively amounts to nothing at all due to the rampant redactions. FDC claims that the redactions are pursuant to confidentiality generally or HIPAA but has not elaborated on the particulars of those claims any

[4] Other productions include pages that are rendered unintelligible by the redactions or include screenshots with windows that block the view of the document. Those redactions and obstructions make it difficult or impossible to understand what the produced document is.

further despite Plaintiffs' requests for explanation and reminder that documents should be unredacted pursuant to the two protective orders that FDC itself helped draft and for which it jointly moved. *See* Dkt. 54 (Joint Motion for Confidentiality Order), Dkt. 55 (Joint Motion for HIPAA-Qualified Protective Order). These orders render the redactions unnecessary and improper since they preclude the parties from freely disclosing the protected documents to the public. *Id.* FDC also stated that the most recent batch of total redactions is because it believes Plaintiffs' requests are overbroad or irrelevant but has conceded that it is too late to raise those objections, so it has produced them in a way that that they cannot be deciphered. Ex. 4. FDC's redactions fly in the face of an important aspect of Plaintiffs' motion to compel—Plaintiffs' request that FDC stop redacting documents it produces.

Additionally, in its response to the motion to compel, FDC confirmed that its production was incomplete when Plaintiffs moved to compel. By FDC's own account, it produced responses to Request Nos. 3, 5, and 27 on October 14; responded to Request No. 37 only "partially" on October 21; sent videos on October 26; and produced a batch of emails on October 27, with a second batch still outstanding. Dkt. 129 at 4 n.1, 5. Each of these productions came after Plaintiffs filed their motion on October 9, and the production still didn't offer a complete response. FDC's claim that it "has never not complied with the subpoena" is at odds with its own chronology since FDC knows its production was incomplete whilst the motion was pending. *Id.* at 5.

FDC's excuses in its response to the motion to compel do not change the calculus. The subpoena was served on April 27, 2026 with a response date of May 7. Dkt. 107 at 1. The explosion in Tallahassee that FDC cites occurred on October 6—three days before Plaintiffs filed their

motion to compel.[5] By then, FDC's compliance was already more than five months overdue. Staffing changes, vacations, and computer issues, are not grounds for disregarding a federal subpoena for many months—and FDC never sought relief from the Court on any of them. Indeed, it bears reminding that FDC unilaterally granted itself a discovery stay while Defendants' motions to dismiss were pending, even though the Court never ordered a stay in the case. Dkt. 107 at 2.

Moreover, FDC faults Plaintiffs for not paying for the OIG records until August 17. Dkt. 129 at 3-4. But FDC had no right to condition compliance with a federal subpoena on payment. Rule 45 provides one mechanism for a nonparty to shift costs: a timely objection, followed by a court order protecting the nonparty from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). FDC admits it never objected, and accordingly, no such order was entered. Plaintiffs nonetheless agreed to pay $850 to FDC, for efficiency's sake, and Plaintiffs did so the next business day. Dkt. 107-4 at 16-21. FDC represented that the records would be "produced upon receipt of payment." Id. at 21. Yet FDC did not produce the OIG report until October 21, 2026—more than *two months* after payment, and only after Plaintiffs moved to compel.[6] FDC's delay in producing the most important document responsive to the subpoena cannot be attributed to Plaintiffs.

## II. Plaintiffs Satisfied the Conferral Requirement

This Court denied Plaintiffs' motion as moot, finding that Plaintiffs failed to confer. That finding is plainly contradicted by the record. Plaintiffs *repeatedly* conferred with FDC's counsel

---

[5] *Build Up of 'Combustible Gases' Caused Downtown Tallahassee Explosion, City Report Shows*, WCTV (Oct. 12, 2026), https://www.wctv.tv/2026/10/12/build-up-combustible-gases-caused-downtown-tallahassee-explosion-city-report-shows/.

[6] In the context of a discovery dispute between parties, producing discovery only after forcing a motion to compel, as FDC has done here, would trigger a mandatory assessment of attorneys' fees. *See* Fed. R. Civ. P. 37(a)(5)(A) (requiring assessment of attorneys' fees when "requested discovery is provided after [a motion to compel] was filed").

about the subpoena—both about the inadequacy and tardiness of its response. Plaintiffs did so on July 9, July 23, August 6, and October 8, 2026—the last of which occurred the day before Plaintiffs filed their motion. Ex. 2.

FDC does not dispute that these conferrals occurred. In fact, FDC concedes that Plaintiffs "requested several conferrals on the subpoena and their production requests," and that those conferrals addressed "what Plaintiff was requesting, what was pending," and the scope of Plaintiffs' subpoena. Dkt. 129 at 1-2. That is consistent with this Court's Local Rules, which requires good-faith effort "to resolve the issues to be raised in the motion." L.R. 7.1(a)(3). The issue raised in the motion to compel *is* FDC's failure to complete its production, and that is the issue the parties conferred about—on multiple occasions. FDC's position that the parties were required to confer about the motion itself, rather than the underlying dispute, finds no support in the local rules and FDC cites no authority for that position. Nor does any rule require a movant to share a draft motion before filing it, as FDC suggested in its response.

FDC also asserts that none of the emails attached as exhibits to Plaintiffs' motion say "anything about a motion to compel." Dkt. 129 at 2. But FDC's response quotes Plaintiffs' August 14 email stating that Plaintiffs had "no choice but to seek judicial intervention," and that same email states that "[n]ext week, we are going to file a motion with the Court." Dkt. 107-4 at 23. On September 2, Plaintiffs again explained that they "may need to raise this issue with the [C]ourt" and asked to confer. *Id.* at 3. These statements were not "leverage" or a "veiled threat." Dkt. 129 at 2. They were genuine explanations that Plaintiffs would seek enforcement of their subpoena if FDC did not comply with its obligations. That is exactly the type of good-faith communication the conferral rules contemplate. Plaintiffs held off filing for nearly two more months to give FDC every opportunity to complete its production. It did not, so Plaintiffs brought their motion, just as

they told FDC they would. The Court's finding that Plaintiffs did not confer warrants reconsideration.

### III. FDC's Production, Without Redactions, Is Needed Because the Current Discovery Schedule is Short

Reconsideration is also warranted because the Court's order did not address the fact that FDC's productions to date contain impermissible redactions. *Catlin Syndicated Ltd. v. Ramuji, LLC*, WL 886284, at *3 (N.D. Ala. Feb. 24, 2020) (granting reconsideration where court did not address party's argument in the first instance). FDC stated that its redactions protect documents that are generally confidential (without elaborating further or acknowledging that Dkt. 54 protects their documents without needing redactions), HIPAA protected, or are overbroad or irrelevant. FDC has refused to particularize which documents are redacted for which reason, will not identify what the documents that are fully redacted actually are, and refuses to produce a privilege log.

As one example, FDC defended its redactions of records about Settle's attack on Officer Miller on the ground that they are third-party medical records unrelated to Cody's death. Dkt. 129 at 6-7.[7] That is wrong. Settle's propensity for violence—and the notice Defendants had due to the attack on Miller—is central to Plaintiffs' failure-to-protect claims. Dkt. 107 at 1-2. The redactions appear to conceal the extent of the injuries Miller suffered when Settle attacked him. Such records are plainly covered by the joint third-party HIPAA-Qualified Protective Order that governs production of protected health information in this case. Dkt. 58 at 2 (covering "[r]ecords related to injuries to any other person as a result of the matter sued upon and any related examination and treatment of the injuries or investigation of the underlying events"); *id.* ("Other records that may be material to the claims or defenses of any Party that are deemed to include [protected health information].").

---

[7] As explained above, FDC has continued to produce documents with extensive redactions.

These records, and the other records Plaintiffs have requested, are relevant and squarely covered by the protective orders in this case. Dkts. 54, 58. Moreover, as FDC conceded, it never served an objection or a privilege log supporting its redactions, despite Plaintiffs' request for one. Dkt. 107-4 at 3. Indeed, FDC's October 30 production shows that it is taking its practice of impermissible redaction to the extreme either as a way to backdoor their objections to the productions or as an application of improper redactions. Exs. 1, 4. FDC should be ordered to reproduce documents without redaction and make the remainder of the outstanding productions without redactions.

**CONCLUSION**

Plaintiffs respectfully request that the Court reconsider its order, denying Plaintiffs' motion to compel.

## CERTIFICATE OF GOOD-FAITH CONFERENCE

Per Rule 37(a)(1) and Local Rule 7.1(a)(3), Plaintiffs certify that they have conferred with counsel for FDC and made a good-faith effort to resolve the discovery issues raised by this motion for reconsideration but have been unable to do so.

Specifically, on November 3, 2026, Plaintiffs' counsel, Amelia Caramadre, spoke with FDC counsel Amber Kourofsky on the phone and stated that Plaintiffs disagreed that FDC's production was complete and pointed to Plaintiffs' October 16 letter that specified multiple documents that remained outstanding. FDC counsel stated that she did not review that letter but nevertheless believed their production was complete. FDC counsel also stated that the widespread redactions were because they believed that the requests were HIPAA protected, generally confidential, or overbroad or irrelevant, but it was too late to issue objections, so producing them with redactions was their solution. FDC counsel refused to produce a privilege log to inform Plaintiffs of the purpose of each redaction is and what the document redacted is. FDC counsel stated she agreed with the Court's order, believed her assertions were correct, and understood that Plaintiffs would move for reconsideration. No resolution was reached. Plaintiffs' counsel sent an email memorializing that conferral. Ex. 4.

Dated: November 10, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater

James M. Slater (FBN 111779)
**SLATER LEGAL PLLC**
9000 Dadeland Blvd. #1500
Miami, Florida 33156
(305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
matthew@kaplangrady.com
david@kaplangrady.com
amelia@kaplangrady.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all attorneys, including counsel for FDC Amber Kourofsky who has filed an appearance in this matter, of record in the above case via CM/ECF System on November 10, 2026. The undersigned further certifies that counsel for FDC was additionally served via electronic mail on November 10, 2026 at:

Amber Kourofsky, Amber.Kourofsky@fdc.myflorida.com
Kristen Lonergan, Kristen.Lonergan@fdc.myflorida.com
Brittney Davis, Brittney.Davis@fdc.myflorida.com
Kelly Forren, Kelly.Forren@fdc.myflorida.com
Office of the General Counsel
Florida Department of Corrections
501 South Calhoun Street
Tallahassee, Florida 32399
Office: 850-717-3605

Nicholas J.P. Meros, NMeros@shutts.com
Shutts & Bowen LLP
215 South Monroe Street, Ste. 804,
Tallahassee, FL 32301
Tel: (850) 241-1728

*/s/ James Slater*