**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

Plaintiffs,

v.

CLIFTON MCCLAY YATES, *et al.*,

Defendants.

_______________________________________/

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO RECONSIDER**

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, by and through their counsel, reply in support of their Motion to Reconsider, Dkt. 150, as follows:

## INTRODUCTION

Cody White was brutally murdered by his cellmate while in the custody of the Florida Department of Corrections ("FDC"). To obtain documents related to the circumstances of Cody's death, Plaintiffs served a subpoena on FDC seven months ago. After months of conferrals, central documents remained unproduced. Faced with a motion to compel and a letter from Plaintiffs' counsel pointing out the deficiencies that remained, FDC made one final slapdash production, including, among additional improperly redacted documents, a 3,512-page document that was *entirely* redacted. It then filed a notice with the Court declaring its production complete. Dkt. 133.

Now represented by outside counsel, FDC sings a different tune. FDC does not meaningfully dispute that it failed to comply with Plaintiffs' subpoena. It does not dispute that the

documents identified in Plaintiffs' October 16 deficiency letter remain unproduced. It does not claim—in its response, in a declaration, or anywhere else—that any of those documents do not exist. In fact, it does not even dispute that FDC's in-house counsel admitted to Plaintiffs that she had not even reviewed Plaintiffs' deficiency letter before she told this Court that FDC's production was complete. And FDC now abandons its prior assertion that Plaintiffs did not satisfy their conferral obligation under this Court's local rules.

Instead, FDC now asks the Court to presume that its in-house counsel acted in "good faith" and to treat Plaintiffs' accusation that documents remain outstanding as a mere "hunch." Dkt. 157 at 6. But as FDC concedes, the presumption FDC invokes is rebuttable, and it is rebutted here—by FDC's own documents, which refer to the very records FDC has not produced, and by FDC's counsel's own admissions.

Regarding its sea of redactions, FDC does not breathe a word about the 3,512-page document it produced with every page blacked out. FDC offers only an eleventh-hour promise, made the afternoon before it filed its response, to remove redactions of protected health information ("PHI"). Ex. 1 (Email from N. Meros to A. Caramadre). That promise does not say which of the 3,512 pages will be unredacted, and it says nothing about redactions FDC applied for reasons other than PHI in earlier productions—including redactions FDC's counsel admitted she applied because, in her sole judgment, Plaintiffs' requests were irrelevant and overbroad. Yet FDC concedes it waived any objections long ago. The Court denied Plaintiffs' motion to compel as moot because FDC told the Court it had produced everything and that the parties had not conferred. Dkt. 142 at 3. That representation was not accurate. The dispute is not moot, and reconsideration should be granted.

## ARGUMENT

### I. Reconsideration Is the Appropriate Remedy Given FDC's Inaccurate Representation That It Had Fully Complied with Plaintiffs' Subpoena

FDC argues that common sense, not a rigid set of rules, should govern whether reconsideration is warranted. Common sense strongly favors reconsideration here. Plaintiffs are not "rehash[ing] arguments already considered and rejected." Dkt. 157 at 3. Far from it. The Court never considered whether FDC's production was in fact complete; it accepted FDC's one-sentence notice that "[a]ll documents and items responsive have been produced," Dkt. 133, and denied the motion as moot on that basis, Dkt. 142 at 3. Nor does "finality" militate against reconsideration. The interests of "stability and predictability," Dkt. 157 at 3–4, are not served by leaving in place an order that rests on representations that are plainly contradicted by the record. Dkt. 142 at 1.

Moreover, FDC's quarrel with *Fonteneaux* misses the mark. Dkt. 157 at 6–7. Plaintiffs do not claim a freestanding right to a reply. The point is that the Court ruled—based on FDC's response—before Plaintiffs had any opportunity to explain to the Court that the notice was inaccurate. That is precisely why the Court lacked a complete factual record, and why reconsideration is warranted to correct that clear error. Dkt. 150 at 7.

### II. FDC Has Not Complied with Plaintiffs' Subpoena, and Plaintiffs' Contention to the Contrary Is Not "Speculation"

A nonparty that receives a subpoena to produce documents must either lodge a meritorious objection or conduct a reasonable search for the requested materials and promptly produce them. *Talentscale, Inc. v. Aery Aviation, LLC*, 351 F.R.D. 58, 61 (N.D. Fla. 2026). A party asserting "that an entity is withholding discoverable materials bears the burden of establishing the probability of this assertion." *Id.* Here, Plaintiffs easily meet their burden of showing that FDC has not conducted a reasonable search, as the law requires.

### A. FDC's Production to Date and Its Counsel's Admissions Rebut Any Presumption of Good Faith.

FDC's lead argument is that counsel is entitled to a "rebuttable presumption" of good faith, which Plaintiffs can overcome only by showing that responsive documents are being withheld rather than by "speculation that there is more."[1] Dkt. 157 at 5-6.

But here, Plaintiffs are not guessing at what documents are missing. On October 16, *before* FDC's notice to the Court certifying its production was complete, Plaintiffs sent FDC a deficiency letter identifying, request by request, what FDC had not produced, often explaining precisely why Plaintiffs knew the unproduced materials existed. Dkt. 150-3. FDC has admitted—after it filed its notice of compliance—that it had not read that letter. Dkt. 150-3 at 1 (memorializing conferral call with FDC's counsel where counsel admitted she had not "reviewed the October 16 letter").

Indeed, in many instances, the evidence that missing documents exist comes from FDC's own production. *See Talentscale*, 351 F.R.D. at 62 (observing that, in determining whether the rebuttable presumption has been overcome, courts consider "anomalous search results that suggest a lack of full compliance"). For example, in Plaintiffs' memorialization letter, they outlined these specific items that had not been produced, as well as the reason Plaintiffs believed they existed. Dkt. 150-3.

- **Witness statements (Request No. 10).** Incident reports FDC produced concerning Cody's death indicate that "DC6-112C witness statements" should have been attached. They were not. Dkt. 150-3 at 3.

- **Cody's housing-placement assessment (Request Nos. 27, 29).** FDC produced the "Housing Integrated Assessment & Placement System" display page for Justin Settle (as

[1] FDC entirely abandons the argument that it advanced in opposition to Plaintiffs' motion to compel that the parties did not adequately confer before Plaintiffs brought that motion.

to his placement with Matthew Flash, his prior cellmate he had stabbed days earlier), but not the equivalent page for Cody. Notably, FDC's counsel said on October 8 that some of these documents were "in boxes" and would take a week or two to produce, then declared the request complete on October 14 without producing anything further. Dkt. 150-3 at 3; Dkt. 150 at 8 & n.3. This is obviously a central document in the case.

- **Records identifying who conducted rounds in Cody and Settle's dorm on all days he was celled with Settle (Request Nos. 18–26).** FDC produced housing unit logs for February 3, 2025. But Settle and Cody were celled together on January 30, and so four days of logs remain unproduced. Dkt. 150-3 at 3-4.

- **Footage and evidence of Settle's attack on Officer Miller (Request No. 34).** FDC's own documents state that Settle's attack on Officer Miller was "video taped" and that bodycam, wing footage, and physical evidence were recovered. FDC has produced some wing footage but has not produced footage of Settle's attack on Miller, including any body-worn camera footage. FDC itself labeled its response a "[p]artial production" before later declaring it complete without producing anything further. *Id.* at 4.

- **Discipline for missed cell checks (Request No. 40).** FDC produced a document stating that there were missed checks related to Cody and that this fact would be forwarded to HR for possible discipline. No documents related to discipline for Cody's death have been produced. *Id.* at 5.

- **Records FDC produced only in part (Request Nos. 15, 38, 41).** FDC produced Settle's medical and mental-health records for 2024-26 only; staffing records beginning January 26, 2025 rather than January 20 as requested; and, for prior cellmate-on-cellmate

homicides, a link to a public website that does not identify the relevant information—information FDC necessarily possesses. *Id.* at 3–5.

- **Settle's prior violence and communications about it (Request Nos. 33, 37).** FDC agreed on October 8 that both were incomplete; it then declared No. 33 complete without producing anything more, and it conceded No. 37 was incomplete. *Id.* at 4.

FDC's failures here give far more than "a whiff of nondisclosure." *Talentscale*, 351 F.R.D. at 61. Rather, they demonstrate that FDC has failed to produce basic, routinely generated records of any death in custody and any housing decision in prisons nationwide. Indeed, Plaintiffs' counsel litigates prisoners'-rights cases regularly, including in Florida, and knows these records exist because prisons, including FDC, produce them in case after case.

But here, Plaintiffs need not even rely on that experience: again, FDC's own documents *refer* to the missing records time and again. The documents' existence is a far cry from a "guess or mere suspicion." Dkt. 157 at 6. The Federal Rules of Civil Procedure required FDC "to act reasonably" when responding to Plaintiffs' subpoena. *Talentscale*, 351 F.R.D. at 61. It has fallen woefully short of that mark.

### B. FDC Has Never Said That, After Conducting a Reasonable Search, the Missing Documents Do Not Exist.

What is most telling is what FDC's response does not say. FDC has had Plaintiffs' deficiency letter since October 16. It has never responded to it. Dkt. 150 at 5. It has never told Plaintiffs that it searched for *any* of the documents identified in that letter and found that they do not exist. Similarly, FDC's response does not identify a *single* document listed in the letter and state that it was searched for and not found. It does not describe who searched, where, or for what. And it still offers no declaration from anyone with knowledge—only new counsel's unsworn assertion that prior counsel "properly supervised the searches" and "followed up repeatedly." Dkt.

157 at 5. Attorney argument in a brief is not evidence, and it cannot substitute an affidavit or declaration explaining the particularities of FDC's search. *See Bank of Mongolia v. M & P Global Financial Services, Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (granting motion to compel where plaintiffs identified responsive documents and defendants "did not provide an affidavit or other specific evidence" explaining their efforts to search for documents); *Talentscale*, 351 F.R.D. at 62 ("[I]n assessing whether an entity reasonably complied with a subpoena or request for production, a court may rely on a sufficiently detailed affidavit from an attorney, a custodian of records, or other appropriate person."); *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 671 (N.D. Fla. 2010) (granting motion to compel where affidavit failed to "clarify the precise nature" of the search performed, thus did not "permit the court to ascertain whether any additional search(es) would be fruitful or non-fruitful and unnecessarily burdensome").

FDC correctly notes that it was required to conduct a reasonable search. It is clear that it has not. On November 3, when Plaintiffs conferred about this reconsideration motion, FDC's counsel *admitted* that she had still not reviewed Plaintiffs' October 16 letter. Dkt. 150-4 at 1; Dkt. 150 at 6 & 8 n.2. An attorney cannot reasonably certify that "[a]ll documents and items responsive have been produced," Dkt. 133, as it did in its October 30 notice to this Court, without reading the letter that identifies the deficiencies in the production, item by item. Nor can FDC credibly claim reasonable diligence where, by its own counsel's account, it declared Request Nos. 29, 33, and 34 complete on October 14 without producing a single additional document after agreeing on October 8 that each remained outstanding. Dkt. 150-3 at 4. Any presumption FDC was entitled to has been eviscerated.[2]

[2] FDC's halfhearted complaint that the subpoena is overbroad, Dkt. 157 at 1, comes too late. FDC served no objections within the time Rule 45(d)(2)(B) allows, Dkt. 150-2 ¶ 4, and it has conceded that its objections are waived, Dkt. 150 at 2, 10. The breadth of requests FDC chose not

## III. The Redaction Dispute Is Not Moot

FDC devotes a single paragraph to redactions and argues that the issue is moot because FDC has "agreed to remove redactions in its production(s) for PHI that is covered by this Court's HIPAA protective order" and "intends to re-produce these documents by November 20, 2026." Dkt. 157 at 8. That offer was made late yesterday afternoon, hours before FDC filed its response. Ex. 1 (Email from N. Meros to A. Caramadre). It does not moot this issue, for at least three reasons.

First, FDC does not breathe a word about the 3,512-page document it produced with every page entirely blacked out. Dkt. 150-1. Although not the only impermissible redaction at issue in this dispute, this was one of the most extreme and egregious examples. Dkt. 150-1. FDC's response does not address it, does not say what information is redacted, and does not say whether any of it will be unredacted.

Second, FDC's offer to remove redactions is limited to PHI. Dkt. 157. But by its own admission, PHI is not the only reason FDC has been redacting: FDC's counsel told Plaintiffs on November 3 that redactions were also applied, at FDC's sole judgment, over documents deemed irrelevant, overbroad, and otherwise protected or confidential, even while conceding FDC's objections had been waived. Dkt. 150-4 at 2. To be sure, unilaterally redacting documents FDC believed to be irrelevant is inappropriate. *See Bonnell v. Carnival Corp.*, 2014 WL 10979823, at *3 (S.D. Fla. Jan. 31, 2014) ("Unilaterally redacting produced documents is also inconsistent with Federal Rule of Civil Procedure 26's overarching purpose of permitting broad discovery.").

But making matters worse, FDC did so as an end-run around its conceded waiver, admitting its solution was to produce them as fully redacted. Dkt. 150-4 at 2; *see also* Dkt. 129 at 4 n.2 (conceding "FDOC missed the objection deadline"); *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D.

---

to challenge is no excuse for leaving them unanswered. And in any event, despite FDC's waiver, Plaintiffs did agree to narrow responses to certain requests when conferring with FDC's counsel.

662, 668 (N.D. Fla. 2010) (observing that entity's failure to object to subpoena request warranted grant of motion to compel "on that basis alone"). And FDC's redactions for general "confidentiality" are unnecessary given the Confidentiality Order FDC jointly sought. Dkts. 54, 57. FDC's response does not commit to removing any of those redactions. It should be required to do so.

Third, FDC's offer is unspecified and unverifiable. It does not say which documents or what portion of its productions will be re-produced. FDC has never provided a privilege or redaction log identifying what was redacted and why, despite Plaintiffs' request that it provide one. Dkt. 150 at 13-14. Without one, neither Plaintiffs nor the Court can tell whether a re-production would be complete. And a promise of future voluntary compliance, offered to defeat a motion, is no substitute for an order—especially from a non-party whose last representation of full compliance proved inaccurate.

**IV. The Court Should Order FDC to Comply with Specificity**

Given FDC's approach to its subpoena response, Plaintiffs respectfully request that the Court grant reconsideration, vacate its order denying the motion to compel as moot, and order FDC to comply, within 14 days, in accordance with the proposed order attached to Plaintiffs' reconsideration motion. Dkt. 150-5.

In particular, FDC should be ordered to: (1) produce all documents identified in Plaintiffs' October 16, 2026 letter; (2) for any such document FDC contends does not exist, serve a sworn declaration from a person with knowledge describing the search conducted and its results; (3) re-produce all redacted documents, including the 3,512-page document produced on October 30, without redactions; and (4) for any redaction FDC maintains on the basis of privilege, serve a privilege log that complies with Rule 45(e)(2)(A).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to reconsider and specifically order the relief outlined *supra* at IV.

Dated: November 17, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater

James M. Slater (FBN 111779)
**SLATER LEGAL PLLC**
9000 Dadeland Blvd. #1500
Miami, Florida 33156
(305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
matthew@kaplangrady.com
david@kaplangrady.com
amelia@kaplangrady.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all attorneys, including counsel for FDC Amber Kourofsky and Nick Meros who have filed appearances in this matter, of record in the above case via CM/ECF System on November 17, 2026. The undersigned further certifies that counsel for FDC was additionally served via electronic mail on November 17, 2026 at:

Amber Kourofsky, Amber.Kourofsky@fdc.myflorida.com
Kristen Lonergan, Kristen.Lonergan@fdc.myflorida.com
Brittney Davis, Brittney.Davis@fdc.myflorida.com
Kelly Forren, Kelly.Forren@fdc.myflorida.com

Office of the General Counsel
Florida Department of Corrections
501 South Calhoun Street
Tallahassee, Florida 32399

Nick Meros, NMeros@shutts.com

Shutts & Bowen LLP
215 South Monroe Street, Ste 804
Tallahassee, Florida 32301

*/s/ James M. Slater*