**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

Case No. 2:26-cv-14004-DMM

CHRISTINNA WHITE, *et ano.*,

Plaintiffs,

v.

CLIFTON MCCLAY YATES, *et al.*,

Defendants.

_______________________________________/

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS LUCKETT, ANDERSON, MCBRIDE, SCHROCK, DINIUS-MAST, DENNIS, HASLEM, AND RICHARDS'S MOTIONS TO DISMISS**

Plaintiffs Christinna White, as Personal Representative of the Estate of Cody Lee White, and Casey White, in his individual capacity, by and through their counsel, respond in opposition to Defendants Anderson, McBride, Schrock, Dinius-Mast, Dennis, Haslem, Richards, and Luckett's Motions to Dismiss, Dkts. 145, 148, and 163, as follows:

## INTRODUCTION

Defendant Luckett is a "Cell-Check" Defendant—the group of Defendants charged with monitoring Cody and Settle's cell to ensure Cody's safety. Defendants Anderson, McBride, Schrock, Dinius-Mast, Dennis, Haslem, and Richards[1] (together, the "Housing Defendants") are some of the Defendants responsible for overseeing or directly making housing decisions at

[1] Given that Housing Defendant Richards's motion to dismiss (Dkt. 163), filed today, is nearly identical, in substance, to her Housing co-Defendants' motion, Plaintiffs respond to her motion here as well. *See* Dkt. 156 (permitting Plaintiffs to file a consolidated response to Dkts. 145 and 148).

Okeechobee Correctional Institution ("OCI"). Defendant Luckett and the Housing Defendants (together, the "Moving Defendants") each raise the same arguments in their motions—the same arguments that their co-Defendants have already raised and lost. *See* Dkt. 38 (Motion to Dismiss); Dkt. 68 (Order Denying Motion to Dismiss).

While the operative Complaint that the Defendants move to dismiss (Plaintiffs' Consent Second Amended Complaint, Dkt. 89) ("Compl.") is an amended version of the complaint that this Court previously allowed to proceed, the factual allegations that the Court credited are the same allegations that are now asserted against Defendant Luckett and the Housing Defendants. Their motions simply rehash what the Court has already decided. Dkt. 68. The Court should not be persuaded by Defendant Luckett's and the Housing Defendants' attempts to repackage the same arguments that it has already denied.

Cody White was found dead, wrapped in a blanket and stuffed under his prison cell bunk. He had been stabbed through each of his eyes and stripped to his underwear. His wrists and ankles were bound, and a ligature was tight around his neck. By the time Cody was found, he had been dead for as many as three days. Defendant Luckett was required to make sure Cody was alive and accounted for through cell checks or daily Master Roster Rounds. For up to three days, Luckett failed to conduct his required cell checks or rounds, or conducted them with such indifference that he did not notice that Cody was dead, or did notice and did not care.

Cody's death was not some unforeseeable act of violence. Rather, it was the predictable culmination of a series of attacks by Cody's killer, Justin Settle—a known violent, notorious prisoner with an extensive disciplinary history. Indeed, three weeks before murdering Cody, Settle attacked a correctional officer in the dining hall and was sentenced to disciplinary confinement. Even though prison policy requires prisoners sentenced to disciplinary confinement to be celled

alone, the Housing Defendants allowed him to have cellmates. Just over two weeks after his attack on the officer, Settle struck again and stabbed his cellmate, Matthew Flash, repeatedly in the face.

The Housing Defendants were responsible for overseeing or directly making housing decisions and prisoner placements. Each of them knew that Settle attacked Officer Miller then stabbed his cellmate shortly thereafter yet still allowed Cody to be placed into Settle's cell despite Settle's sentence to disciplinary confinement where he was supposed to be celled alone.

And still, Luckett, while knowing of Settle's two recent violent attacks and that Settle was to be housed alone, did not check on Cody to make sure he was safe or alive. Defendant Luckett's and the Housing Defendants' disregard for Cody was a death sentence. Just a short time after being moved into Settle's cell, Settle killed Cody, possibly with the same blade used on Flash, and stuffed him under the bunk. Cody's lifeless, mutilated body remained there for up to three days when, at the urging of incarcerated individuals housed near Settle, Defendants Dunn and Burney finally checked the cell and found Cody's corpse.

This Court described the events as "harrowing" when it denied Defendants Hernandez, Yates, Corrado, Dunn, Hamilton, Rankine, Burney, Carter, and Cruzado's motion to dismiss on the same facts and the same counts as are at issue here. Dkt. 68. Some of those Defendants whose motion was denied—Dunn, Hernandez, and Yates—were Cell-Check Defendants like Defendant Luckett is here. The other Defendants whose motion was denied—Rankine, Hamilton, Yates, and Cruzado—were Housing Defendants like Anderson, McBride, Schrock, Dinius-Mast, Dennis, Haslem, and Richards are here. Nothing in this motion changes that calculus. As in the previous motion, the Moving Defendants argue that Plaintiffs fail to meet the Eighth Amendment standard, fail to state a claim under the Fourteenth Amendment, that the Defendants are entitled to qualified

immunity, and that they enjoy sovereign immunity under the Wrongful Death Act. These arguments fail this time for the same reasons that they failed before.

Consistent with that conclusion, as this Court previously ruled, the Eighth Amendment violations here are clearly established. The Eleventh Circuit's decisions in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), followed by *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014), and reaffirmed by *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), settled this constitutional question decades ago.

The Moving Defendants' remaining arguments fare no better. Plaintiffs' wrongful death claim must proceed because the same allegations amounting to an Eighth Amendment violation eviscerate any immunity Defendants might have enjoyed under state law. Defendants' arguments in support of dismissal of Plaintiffs' substantive due process claim are similarly meritless: the decision to house Cody and Settle together and the failure to conduct cell checks left Cody foreseeably vulnerable to being brutally murdered and mutilated. That failure shocks the conscience. The Defendants' violation of Cody's clearly established constitutional rights defeats their qualified immunity argument.

Moreover, the Moving Defendants appear to misunderstand Plaintiffs' allegations and the law. They argue that Plaintiffs must all but prove their allegations at this stage, demanding more than what Rule 8 requires. Defendant Luckett concedes that knowledge about Settle's attack on Flash supports a finding of subjective awareness that Settle posed a risk, but takes issue with Plaintiffs' allegations about collective awareness. Dkt. 148 (Defendant Luckett's Motion to Dismiss) at 6. But pleading collective knowledge is plainly permissible. He argues that Plaintiffs allege that the Cell-Check Defendants could or should have rehoused Cody, but actually Plaintiffs only allege that all he needed to do was conduct adequate cell checks to ensure Cody was safe and

alive, which he utterly failed to do. On the other hand, the Housing Defendants dispute that knowledge of the Miller and Flash attacks is enough to create subjective awareness of risk. Dkt. 145 (Housing Defendants' Motion to Dismiss) at 8. This argument is easily dispelled by their own co-Defendants' concession, by case law, and by this Court's earlier opinion. Dkt. 68. The Court should deny the Moving Defendants' motions to dismiss.

## BACKGROUND

Justin Settle was a notorious prisoner at OCI, having accumulated numerous disciplinary infractions over a three-year span, including infractions for battery, weapons possession, narcotics possession, and disobeying orders. Dkt. 89 (Plaintiffs' Consent Second Amended Complaint) ("Compl.") ¶ 44. His disciplinary history was well-known to correctional staff—including the Cell-Check Defendants. *Id.*

On January 10, 2025, Settle attacked a correctional officer, Sergeant Miller, in the dining hall, pushing the officer onto a table, and then to the floor. *Id.* ¶ 45. Settle was found guilty of battery on a correctional officer and was punished with 90 days of disciplinary confinement. *Id.* Despite FDOC policy requiring an individual in disciplinary confinement to be celled alone, Settle was celled with Matthew Flash. *Id.* ¶ 46.

On January 27—just 17 days after Settle's attack on Sergeant Miller—Settle used a blade that he had fashioned from a light fixture in his cell to stab Flash repeatedly in the head, tricep, and cheek before bludgeoning him with a food tray. *Id.* ¶ 47. Yet even after Settle's attack on Flash—despite the obvious risk Settle posed to anyone unfortunate enough to be housed with him—Defendants failed to house Settle alone. *Id.* ¶¶ 49-53, 66, 76, 86. The Housing Defendants, responsible for overseeing or directly making housing decisions and prisoner placements, knew of Settle's attacks on Officer Miller and Flash, and either actively allowed Cody to be placed into

Settle's cell or failed to stop them from being housed together, leaving Cody directly in the way of foreseeable harm. *Id.* ¶¶ 51-53.

Defendant Luckett was assigned to conduct cell checks in the housing unit where Cody and Settle were housed between January 31 and February 3. *Id.* ¶ 56. All of the Cell-Check Defendants, including Luckett, knew that Settle had attacked Sergeant Miller and that Settle had stabbed his prior cellmate just days earlier. *Id.* ¶¶ 52, 58. Defendant Luckett also knew that Settle was supposed to be housed alone. *Id.* ¶ 56. Thus, Defendant Luckett knew that Settle was a danger to anyone he was housed with—including Cody. *Id.* ¶¶ 52, 56, 58. The Cell-Check Defendants were responsible for conducting Master Roster Rounds which are supposed to occur at 10:30 p.m. each night and require incarcerated individuals to show their identification cards and state their names and identification number. *Id.* ¶ 57. In addition to the Master Roster Rounds, the Cell-Check Defendants were required to conduct security checks every 30 minutes to visually confirm that every celled individual was alive and well. *Id.* ¶ 58. Yet, Defendant Luckett failed to conduct these rounds, failed to ensure Cody was alive and safe, failed to be available if Cody sought help, and failed to respond when Cody was not accounted for during the rounds, all despite knowing that Cody was improperly celled there with Settle days after Settle stabbed Flash. *Id.*

The Housing Defendants, for their part, knew that Settle attacked Sergeant Miller and was sentenced to disciplinary confinement, and knew that after his sentence, he was improperly housed with and stabbed Flash. *Id.* ¶¶ 45-47, 51-53, 76, 86. The Housing Defendants knew the risk Settle posed to anyone housed with him. *Id.* Despite this knowledge, the Housing Defendants chose to house Cody with Settle anyway. *Id.*

Within hours or days after the Housing Defendants inappropriately housed Cody with Settle, and just a few days after Settle violently attacked his prior cellmate, the predictable

unfolded: Settle brutally murdered Cody in his sleep. *Id.* ¶ 54. With possibly the same knife he had used just days earlier, Settle stabbed Cody through each of his eyes, strangled him with a piece of cloth, bound Cody's hands and feet, and stuffed him facedown underneath the lower bunk of his cell. *Id.* ¶¶ 54-55, 60. Cody's body was so badly beaten that there was significant discoloration on his chest, thighs, and arms along with swelling on Cody's eye. *Id.* ¶ 60. There was also a notable indentation in Cody's skull. *Id.*

Cody lay dead underneath his bunk for up to three days. *Id.* ¶¶ 1, 54, 59. Individuals housed near Cody and Settle realized they had not seen Cody for some time, and matters grew more concerning once those individuals saw Settle wearing Cody's jewelry. *Id.* ¶ 59. It was not until those individuals begged Defendant Dunn to check on Cody on February 3 that his body was finally discovered. *Id.* ¶ 59. When Cody was pulled out, he was found wearing only underwear, his wrists and ankles were bound, a cloth ligature was tightly tied around his neck, and another piece of cloth was tied around his chest. *Id.* ¶ 60. A piece of a towel had been shoved in Cody's mouth and was saturated with blood. *Id.*

This Court already ruled that each of Plaintiffs' claims is sufficient to proceed, including the same claims that Defendant Luckett and the Housing Defendants now seek to dismiss. Dkt. 68. The Court should deny their motions.

## LEGAL STANDARD

A motion to dismiss must be denied if the plaintiff alleges "sufficient facts to state a claim for relief that is 'plausible on its face.'" *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1291 (11th Cir. 2025) (quoting *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024)). In ruling on a motion to dismiss, the Court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Est. of Cummings v.* Davenport, 906 F.3d 934, 937 (11th Cir.

2018) (quoting *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016)). While the defense of qualified immunity may be "raised and considered on a motion to dismiss," it "is typically addressed at the summary judgment stage of a case." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## ARGUMENT

### I. The Moving Defendants Are Not Entitled to Qualified Immunity

The Moving Defendants argue they are entitled to qualified immunity. Consistent with the Court's prior order addressing this issue, because Plaintiffs squarely allege a clearly established constitutional violation, that argument should be rejected.

Qualified immunity "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003)). After defendants make the initial showing that they were acting in the scope of their discretionary authority, the burden shifts to the plaintiffs to show (1) the defendants' "conduct violated a constitutional right," and (2) that "the right was clearly established."[2] *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)).

[2] The Eleventh Circuit assigns a plaintiff the burden to disprove that the defendants are entitled to qualified immunity. Plaintiffs preserve the right to challenge this Circuit's burden framework, which is not justified by any federal statute, rule of civil procedure, or the common law, and conflicts with the law of other circuits. *See, e.g.*, *Halsey v. Pfeiffer*, 750 F.3d 273, 288 & n.11 (3d Cir. 2014).

### A. The Moving Defendants Were Deliberately Indifferent to the Threat Settle Posed to Cody

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee" prisoners' safety. *Bowen*, 826 F.3d at 1319 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty includes protecting "prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 832). To make out a failure-to-protect claim, a plaintiff must plausibly allege Defendants' deliberate indifference, which "has a subjective and an objective component." *Id.* at 1320. A plaintiff must show both that a defendant (1) actually knew that a prisoner "faced a substantial risk of serious harm" and (2) "that the defendant disregarded that known risk" by failing to respond reasonably. *Id.*[3]

Here, Plaintiffs satisfy both prongs of their failure-to-protect claim. Settle was obviously a substantial threat—to staff and cellmates alike—and by housing Cody and Settle together, and then by failing to conduct cell checks or Master Roster Rounds either adequately or at all, the Moving Defendants plainly subjected Cody to a substantial risk of harm. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (prisoner "with history of violent outbursts and mental instability" who "was in the midst of a violent schizophrenic outrage" who murdered prisoner in his housing unit posed a substantial risk). Indeed, the Housing Defendants concede that the "murder and battery upon the decedent Cody White was an objectively serious deprivation[.]" Dkt. 145 at 7.

[3] Defendant Luckett misapplies the excessive force malicious and sadistic standard to his deliberate indifference analysis, citing to two excessive force cases: *Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002) and *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Because this is not an excessive force case, the malicious and sadistic standard does not apply here. *See Wilkins*, 559 U.S. 34 ("[T]he core judicial inquiry when a prisoner alleges that *prison officers used excessive force* against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied . . . maliciously and sadistically to cause harm.") (emphasis added).

Plaintiffs also sufficiently allege the subjective prong of the deliberate-indifference claim. Indeed, Plaintiffs allege that Defendant Luckett knew about Settle's extensive disciplinary history, his attack on Sergeant Miller, and the stabbing of his prior cellmate, Matthew Flash, mere days before murdering Cody. Compl. ¶¶ 44, 45, 46, 47, 52, 56, 66; *see also Bowen*, 826 F.3d at 1322 (holding subjective prong satisfied where defendants "knew *specifically* that [assailant] had committed a 'High–Assault' against his previous cellmate and that the assault had precipitated his transfer and segregation in Unit K–3"); *Cottone*, 326 F.3d at 1358 (holding defendants "were aware of the substantial risk of serious harm" based on prisoner's "violent, schizophrenic outbursts which occurred prior to the murder" and acted unreasonably when they failed to monitor cellmates knowing of one's violence and instability). And the Housing Defendants knew that Settle was sentenced to disciplinary confinement after he attacked Miller, which, by policy, required him to be housed alone. Compl. ¶¶ 46, 50-53. They also knew that after improperly placing Flash with Settle, Settle stabbed Flash multiple times. *Id.* The Housing Defendants continued to know Settle was required by policy to be housed alone and that the risk that he would attack another cellmate was obvious, yet the Housing Defendants still either actively placed Cody in a cell with Settle, or knew about the improper placement and did nothing to stop it. *Id.* That is more than sufficient at this stage to establish Defendants' knowledge and disregard of the substantial risk of harm Settle posed to Cody. *See Bowen*, 826 F.3d at 1324 (allegations that defendants were "*actually aware* of a substantial and seemingly conspicuous risk posed to Mr. Bowen by allowing him to remain in the small cell with Merkerson" were not a "mere recitation of the legal elements of the administrator's Eighth Amendment claim").

Defendant Luckett concedes that Plaintiffs have pled facts "consistent with liability." Dkt. 148 at 4. And the Housing Defendants concede that at minimum, the idea to house Settle and Cody

together was "not the best idea." Dkt. 145 at 8; Dkt. 163 at 8. At the same time, they attempt several arguments to avoid this inescapable conclusion that their actions amount to deliberate indifference, but none are persuasive. Defendant Luckett argues that because Plaintiffs make collective knowledge allegations, do not state which days or shifts Luckett worked, and do not state how he received the knowledge in light of the Flash stabbing not being formally reported, they ask the Court to infer that Luckett had knowledge about the risk Cody was in. Dkt. 148 at 6-7. But at the pleadings stage, Plaintiffs' ample allegations about Defendants' knowledge about the danger Settle posed to Cody are plainly permissible and defeat those concerns. *See Turner v. Dunn*, 799 F. Supp. 3d 1208, 1224 (M.D. Ala. 2025) (rejecting defendants' argument that complaint impermissibly asserted that "all the named defendants shared the same knowledge and took the same actions")*;* Dkt. 68 at 9 ("the 'absence of … specific allegations [regarding the exact nature of Defendants' roles] does not diminish the reasonable inferences drawn from the considerable factual matter alleged' in the Amended Complaint.") (quoting *Bowen*, 826 F.3d at 1324).

Indeed, to reiterate, (1) Settle's extensive disciplinary history was "well-known" to OCI "correctional staff," Compl. ¶ 44, (2) all Defendants, including the Cell-Check Defendants "knew that Settle had attacked [Sergeant] Miller and stabbed his cellmate" in the days before being placed with Cody, *id.* ¶ 52, (3) the Cell-Check Defendants knew Cody was improperly celled with Settle days after Settle stabbed Flash, *id.* ¶ 58, and (4) despite this knowledge, the Cell-Check Defendants failed to conduct rounds, failed to ensure Cody was alive and safe, failed to be available if Cody sought help, and failed to respond when Cody was not accounted for, *id.* That is more than sufficient at this stage to establish Defendants' knowledge and disregard of the substantial risk of harm Settle posed to Cody. *See Bowen*, 826 F.3d at 1324 (allegations that defendants were "*actually aware* of a substantial and seemingly conspicuous risk posed to Mr. Bowen by allowing

him to remain in the small cell with Merkerson" were not a "mere recitation of the legal elements of the administrator's Eighth Amendment claim"); *Cottone*, 326 F.3d at 1358 (finding defendants acted objectively unreasonably based on allegations that defendants did not monitor murderer and his cellmate either during murderer's violent schizophrenic outburst that preceded him murdering his cellmate or during the murder itself).

Defendant Luckett also argues that Plaintiffs' allegations are "conclusions and unwarranted factual deductions." Dkt. 148 at 11. But this Court previously recognized that Plaintiffs have adduced "considerable factual matter." Dkt. 68 at 9. And if Defendant Luckett's characterizations of Plaintiffs' allegations are accepted, his arguments would functionally require a plaintiff to present evidence at the pleadings stage. But Plaintiffs "need not prove [their] case on the pleadings" to survive a motion to dismiss. *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). They need only "provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Id.* They have done so here.

Luckett also argues, for instance, that all Plaintiffs have alleged against him is that he failed to conduct cell checks which "standing alone, is ordinary negligence." Dkt. 148 at 7. To that end, Luckett cites *Goodman v. Kimbrough*, 718 F.3d 1325 (11th Cir. 2013). But in *Goodman*, at summary judgment, there was no evidence that the defendants "harbored a subjective awareness that [the plaintiff] was in serious danger while in his cell" on the night he was attacked. 718 F.3d at 1332. By contrast, at the pleadings stage, Plaintiffs have alleged that the Cell-Check Defendants had subjective knowledge of the likelihood of the risk Settle posed to a cellmate, given his prior attack on Officer Miller and his prior cellmate, Flash. Compl. ¶¶ 44, 45, 46, 47, 52, 56, 66. Yet they failed to conduct the required checks. *Id.* ¶¶ 57, 58, 66.

As for the Housing Defendants, in a single sentence they accept that they were aware of Settle's attack on Miller, his stabbing of Flash, and that housing Cody in Settle's cell "may not have been the best idea," but nevertheless argue that all of that knowledge does not amount to a "mental attitude that sought to inflict punishment on Cody." Dkt. 145 at 8; Dkt. 163 at 8. But to establish their claim, Plaintiffs must allege that a defendant "consciously disregard[ed] a substantial risk of serious harm." *Farmer*, 511 U.S. at 839 (internal quotation marks and citations omitted). That is exactly what Plaintiffs allege occurred. *See* Compl. ¶¶ 46, 52 (pleading that despite the Housing Defendants' knowledge of Settle's attacks on Miller and Flash, they still either decided to cell Cody with Settle or knew of the placement and failed to stop it even though he was supposed to be celled alone per his sentence of disciplinary confinement).

This Court has already correctly credited Plaintiffs' allegations that Settle had violently attacked a correctional officer just three weeks before Cody's murder, was sentenced to disciplinary confinement for that attack, and used a homemade weapon to stab his prior cellmate multiple times following the Miller attack and preceding Cody's placement in his cell as sufficient to establish subjective knowledge at this stage. Dkt. 68 at 8. The Court further held that the allegation that the Defendants knew that Settle attacked Officer Miller and then stabbed his cellmate shortly thereafter "indicates a degree of specificity in the risk of harm posed" to Cody, all together creating the inference of "knowledge of a particularized threat or fear." Dkt. 68 at 8-9 (first quoting *Bowen,* 826 F.3d at 1322) (then quoting *Carter,* 352 F.3d at 1350 (internal citation omitted)). That same logic applies here. The Housing Defendants' argument that knowledge of these events did not rise to a sufficiently culpable state of mind should be rejected.

Defendant Richards, unlike her Housing co-Defendants, cites *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003), to support dismissal of Plaintiffs' Eighth Amendment claim. Dkt. 163 at 8-

9. There, the court found that plaintiff's complaints that his cellmate was "acting crazy" and said plaintiff would help him fake his own hanging "one way or another," were not enough to establish subjective awareness that plaintiff would be stabbed. 352 F.3d at 1350. That case is easily distinguishable because Defendants here were aware of the risk of violence Settle posed to a cellmate, based on his attack on Officer Miller and his stabbing of his prior cellmate, Flash, just days prior to Cody's placement in his cell. That knowledge is enough to establish their subjective knowledge of risk and to place these facts far afield from *Carter*. *See* Dkt. 68 at 8-9; *Bowen*, 826 F.3d at 1324; *Cottone*, 326 F.3d at 1358.

To the extent that the Moving Defendants also argue that Plaintiffs fail to allege causation, that argument fails too. Dkt. 148 at 6-7; Dkt. 145 at 5. Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). To determine whether a defendant caused an Eighth Amendment violation, the Court considers whether: the defendant (1) "'had the means substantially to improve'" the prisoner's safety, (2) "knew that the actions he undertook would be insufficient to provide [the prisoner] with reasonable protection from violence," and (3) had alternative means "available to him which he nevertheless disregarded." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (quoting LaMarca, 995 F.2d at 1539). Y'y

The Moving Defendants, armed with the knowledge of risk Settle posed to Cody, that Settle was supposed to be housed alone, and responsible for monitoring prisoners in Cody's cellblock or making housing placements, took no action to adequately monitor Cody's cell to ensure Cody's safety or ensure that Settle was celled alone. Compl. ¶¶ 46, 51-59. *See Cottone*, 326 F.3d at 1358–59 ("According to the plaintiffs' amended complaint, neither [defendant] was monitoring the

inmates at all during the time either of Charles's violent schizophrenic outburst prior to the murder."); *Bowen*, 826 F.3d at 1322 (finding allegations sufficient to state an Eighth Amendment claim where plaintiff pled that despite knowing that Merkerson was a Level III mental health inmate with severe paranoid schizophrenia, a recent history of assaulting his previous cellmate, and prison guidelines requiring that he be housed alone, prison officials allegedly placed Bowen in the same cell with him, where Merkerson fatally attacked Bowen two days later). Like in *Cottone* and *Bowen*, Plaintiffs' Complaint asserts facts sufficient to establish causation, and Defendants' argument must be rejected. In sum, Plaintiffs have plausibly alleged the Moving Defendants failed to protect Cody in violation of the Eighth Amendment.

**B. It Violates Clearly Established Law When a Correctional Official Knows a Prisoner Poses a Substantial Risk of Serious Harm to Another, Yet Fails to Act**

The next question is whether Plaintiffs' allegations amount to a clearly established constitutional violation. To determine "whether a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he [or she] confronted.'" *Caldwell*, 748 F.3d at 1102 (quoting *Cottone*, 326 F.3d at 1359); *see also Foster v. Echols Cnty. Sch. Dist.*, 169 F.4th 1291, 1294 (11th Cir. 2026) ("Qualified immunity asks whether officials were on notice that their alleged conduct was unlawful—not whether they could be sued for it."). To make that determination, the Court looks to "decisions of the Supreme Court" and "the Eleventh Circuit." *Bowen,* 826 F.3d at 1325. "[T]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

In this case, the qualified-immunity analysis begins and ends with binding Eleventh Circuit precedent. For decades now, the Circuit has repeatedly held that it "violates a prisoner's Eighth

Amendment right" when a correctional defendant "knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell*, 748 F.3d at 1102. That constitutional principle was clearly established, certainly no later than the Circuit's decision in *Cottone,* 326 F.3d 1352, reiterated in *Caldwell*, 748 F.3d 1090, and again in *Bowen*, 826 F.3d 1312.

In *Cottone,* the court denied qualified immunity when, as here, the defendants were on notice of a "violent" and "mentally unstable" prisoner who "posed an objective serious risk of harm" to an individual housed in his vicinity after he "struck another inmate." 326 F.3d at 1356, 1358. As here, the defendants "did not monitor" the individuals living in the assailant's housing unit. *Id.* at 1356. As here, the victim was found unresponsive "on the floor with ligature marks around his neck" after the assailant had strangled his victim. *Id.* The Eleventh Circuit concluded that plaintiffs sufficiently alleged (1) "an objective, substantial risk of serious harm"; (2) defendants' subjective awareness of that risk; (3) defendants responded to that risk in "an objectively unreasonable manner," and (4) defendants' "constitutional violation caused [the victim's] death." *Id.* at 1359. The court even identified "at least two factually similar cases, decided prior to the conduct in question, in which a lack of monitoring and supervision of known violent inmates, which led to inmate-on-inmate violence, constituted impermissible unconstitutional conduct." *Id.* (first citing *LaMarca*, 995 F.2d at 1536–38; then citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995)).

The Eleventh Circuit reiterated *Cottone*'s holding in *Caldwell*, 748 F.3d at 1103. As here, the defendants were on notice about a violent prisoner's risk to his cellmate after he "set their shared, locked cell on fire." *Id.* After the fire, "[a]rmed with actual, subjective knowledge of [the prisoner's] prior violence," the fire he had set, and his cellmate's "reported fear of being placed in

a small, locked cell" with him, the defendants—just like the Cell-Check Defendants—"took no action" and the assailant attacked his cellmate, binding his hands and feet with fabric. *Id.* at 1095. In denying qualified immunity, the court explained that "as expressed in *Cottone*," it was "clearly established that the defendants' total failure to investigate—or take any other action to mitigate—the substantial risk of serious harm" amounted to an Eighth Amendment violation. *Id.* at 1103.

The Eleventh Circuit reaffirmed *Cottone* and *Caldwell* in *Bowen*. *See Bowen*, 826 F.3d at 1324 (holding that *Cottone* and *Caldwell* were "dispositive" in deciding the law was clearly established). As here, the defendants were aware of a prisoner's "violent impulses." *Id.* at 1323. Prison officials knew, as alleged here, "that double celling" the assailant with his victim violated prison policy. *Id.* And like in this case, prison officials would find the victim "brutally beaten, and unmoving." *Id.* at 1318. In denying qualified immunity at the pleadings stage, the court ruled that the complaint adequately alleged that the defendants "were *actually aware* of a substantial and seemingly conspicuous risk posed . . . by allowing [the victim] to remain in the small cell" with his killer. *Id.* at 1324.

Put simply, the Eleventh Circuit's trilogy of *Cottone*, *Caldwell*, and *Bowen*—with facts nearly identical to the facts alleged here—gave Defendants "all the notice they needed." *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1298 (11th Cir. 2025). Qualified immunity must be denied.

This Court previously concluded that the same allegations in Plaintiffs' Consent Second Amended Complaint sufficiently placed "each Defendant plausibly within the scope of knowledge to suggest they could have been aware and were able to take actions necessary to prevent his death." Dkt. 68 at 9.

## II. Plaintiffs Plausibly Allege a Fourteenth Amendment Substantive Due Process Violation

Defendants incorrectly assert that Plaintiffs fail to sufficiently plead their Fourteenth Amendment substantive due process claim.[4] Dkt. 145 at 11; Dkt. 148 at 9. A state actor violates substantive due process when the conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). To clear that bar, a plaintiff must plausibly allege conduct that only falls "within the middle range"—action that exceeds negligence but is "'less than intentional conduct, such as recklessness or 'gross negligence.'" *Lewis*, 523 U.S. at 849 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 n.3 (1986)).

Defendant Luckett also argues that Plaintiff Casey White, Cody's father, does not have standing to bring this claim individually. This Court has already ruled that Mr. White does have standing to bring this claim against Defendants for their failure to protect his son and the sanctity of his body, and that this claim is therefore not entirely covered by the Eighth Amendment. Dkt. 68 at 11.

Further, here, Plaintiffs plausibly allege a substantive due process violation against the Housing Defendants. Knowing that Settle attacked an officer, stabbed his prior cellmate, and was housed in disciplinary confinement where he was supposed to be celled alone, the Housing Defendants nevertheless "decided to cell Cody with Settle" or "participated in or facilitated Cody's assignment as Settle's cellmate." Compl. ¶ 52. Any one of them could have stopped this placement,

[4] Plaintiffs do not address the clearly established prong as to their substantive due process claim because Defendants do not raise qualified immunity as to that claim and thus have waived that argument. *See, e.g.*, *Edwards v. Grubbs*, 169 F.4th 1261, 1275 (11th Cir. 2026) ("Qualified immunity . . . is an affirmative defense that may be waived.").

but none did. The Housing Defendants failed to do the bare minimum—ensuring Cody was not placed in a death trap. Luckett failed to do the bare minimum as well—ensure Cody's presence and safety during cell checks. *Id.* ¶ 58. Defendant Luckett, who knew about Settle's violent history, took no action to ensure that Cody was alive in his cell, and abdicated his basic responsibility to conduct required cell checks, rounds, and monitoring that could have prevented Cody's brutal murder, or at minimum, protected the sanctity of Cody's deceased body by finding it earlier. *Id.* ¶¶ 56, 59. In other words, each Defendant had time to "make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. Their failure to do so left Cody dead at Settle's hands—stabbed through the eyes, stripped to his underwear, wrists and ankles bound, with a cloth ligature tight around his neck. *Id.* ¶ 60. That series of events shocks the conscience. Accordingly, Plaintiffs' substantive due process claim should proceed, as the Court has already ruled for other Cell-Check and Housing Defendants based on the same facts. Dkt. 68 (finding the "alleged failures in handling Settle's violence are egregious" and allowing Plaintiffs' Fourteenth Amendment claims to proceed).

## III. Plaintiffs' Wrongful Death Claim Should Proceed Because Defendants Are Not Entitled to State-Law Immunity

Defendants argue that Plaintiffs' wrongful death claim fails because they are entitled to immunity under Florida law. Dkt. 148 at 13; Dkt. 145 at 12. That argument fails for the same reasons as articulated with respect to Plaintiffs' Eighth Amendment failure-to-protect claim. *See supra* pp. 8-17.

Florida protects its officers from suit unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As the Eleventh Circuit has recognized, "[t]he federal standard for deliberate indifference amounts to recklessness, and so does the standard of 'wanton and

willful' conduct under Florida law." *Turner v. Phillips*, No. 21-12370, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022) (per curiam). Those standards rise and fall together. Because Plaintiffs have sufficiently alleged Defendants' deliberate indifference, as argued above, their wrongful death claim should also proceed as it did for the original Defendants. Dkt. 68 at 12.

**CONCLUSION**

Defendants Anderson, McBride, Schrock, Dinius-Mast, Dennis, Haslem, Richards, and Luckett's motions to dismiss should be denied.

Dated: November 23, 2026

Respectfully submitted,

*/s/ James M. Slater*

James M. Slater (FBN 111779)
**SLATER LEGAL PLLC**
9000 Dadeland Blvd. #1500
Miami, Florida 33156
(305) 523-9023
james@slater.legal

Sarah Grady*
Matthew Underwood*
David Schmutzer*
Amelia Caramadre*
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com
matthew@kaplangrady.com
david@kaplangrady.com
amelia@kaplangrady.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*